UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

    v.

INDIGENOUS GLOBAL DEVELOPMENT CORPORATION, ET AL.,

        Defendants.
_____/

No. C-06-5600 JCS

**ORDER DENYING MOTIONS TO DISMISS [Docket Nos. 11, 12]**

## I.    INTRODUCTION

On September 13, 2006, Plaintiff Securities and Exchange Commission ("SEC") filed this action against Indigenous Global Development Corporation ("IGDC") and its chief executive officer, Deni Leonard ("Leonard"), asserting violations of several sections of the Securities Act of 1933 ("the Securities Act") and the Securities Exchange Act of 1934 ("the Exchange Act") based on alleged false and misleading statements regarding IGDC's business and funding. IGDC failed to retain counsel and default was entered against it on January 11, 2007. Leonard responded to the complaint by filing a motion to dismiss on November 3, 2007 ("the First Motion to Dismiss"). On November 27, 2007, Leonard filed an additional pleading entitled "Emergency Order to Dismiss," which the Court also construes as a motion to dismiss ("the Second Motion to Dismiss"). For the reasons stated below, both motions are DENIED.[1]

---

[1] Defendant Leonard purports to bring these motions on behalf of himself and IGDC. *See* First Motion to Dismiss at 1 (asserting that the SEC did not have adequate information to support its allegations "with regard to *defendants*") (emphasis added); Second Motion to Dismiss at 1 (stating above the signature line "By: Mr. Deni Leonard and Indigenous Global Development Corporation"). Under Civil Local Rule 3-9(b), a corporation may appear only through an attorney. For this reason –

**II.   BACKGROUND**

    **A.   The Complaint**

In the complaint, the SEC alleges that "[s]ince at least 2003, IGDC and Leonard have made numerous materially false and misleading statements and omissions in press releases, marketing materials, and SEC filings thereby falsely leading reasonable investors to believe it was poised to reap millions either from natural gas contracts or from outside financiers." Complaint at 5. In particular, the complaint alleges that Defendant made the following false statements:

1. In a May 2003 press release, IGDC falsely announced a $5 million investment in IGDC by Native America, FLC, even though only a letter of intent had been signed and no funds were ever provided. Complaint at 5-6.

2. In a March 2004 press release, IGDC and Leonard misrepresented the terms of a preliminary agreement between IGDC, Cree Energy and First Indigenous Depositor Company ("FIDC") – a limited liability company of which 98.5 % is owned by Leonard, falsely stating that the agreement would provide IGDC with expected natural gas revenues of $32 million per quarter even though none of the three companies had any natural gas and no agreement had been signed by any of the entities to acquire natural gas from a natural gas supplier. Complaint at 6-9.

3. In IGDC's annual report, filed October 14, 2004, IGDC and Leonard continued to misrepresent the terms of FIDC's agreement with Cree Energy in October of 2004. Complaint at 9-11.

4. In a November 2004 press release, IGDC and Leonard falsely claimed IGDC was purchasing natural gas from a Canadian supplier when in fact, there was no agreement to purchase natural gas. Complaint at 11-12.

5. In its annual report, filed October 14, 2004, and in amended annual reports filed December 7, 2004 and April 25, 2005, IGDC and Leonard stated that it maintained its "existing agreements with its valued partners such as . . . Chevron Energy Solutions," even though IGDC had only signed a memorandum of understanding with Chevron Energy Solutions, which expired November 2004, and Chevron never provided services of any kind to IGDC. Complaint at 12-13.

6. In a brochure entitled "Indigenous Exonomic Sovereignty," IGDC repeated the representation, discussed above, that Native America, FCL, had invested $5 million in IGDC. The brochure also stated that investors could "rest assured that [their] money [would] produce profits and generate excellent returns," even though IGDC had never earned a profit or generated any returns for investors. Complaint at 13-14.

---

and because the default of IGDC has already been entered –  the motions are denied as to IGDC.

2

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

7. In a March 2005 press release, IGDC and Leonard stated that agreements had been reached for the purchase of "up to 30,000 MMB[TU]s a day" of natural gas, generating annual revenues of between $9 million and $15 million. In fact, although preliminary agreements had been signed, no agreement had been reached under which any specific quantity of natural gas would be sold to IGDC; nor had a specific price been negotiated. Complaint at 15-17.

8. In a quarterly report form for the first quarter of 2005, filed May 27, 2005, IGDC and Leonard represented that IGDC had access to a $12 million line of credit from Magellan Group Investments, even though Magellan had already declared IGDC in default with respect to the line of credit and had sued IGDC for breach of contract. Complaint at 17-18.

9. In a September 2005 press release, IGDC and Leonard represented that an "Asian Investment Energy Group" had invested $100 million dollars in IGDC even though no such investment had been made or prmised. Rather, a Chinese company had issued a letter of intent stating it might be interested in purchasing products from IGDC and that it had access to $100 million. The Chinese company never agreed to purchase products from IGDC. Complaint at 18-19.

On the basis of these allegations, the SEC asserts five claims: 1) violations of Section 17 (a) of the Securities Act (IGDC and Leonard); 2) violations of Section 10 (b) of the Exchange Act and Rule 10b-5 (IGDC and Leonard); 3) violations of Sections 13 (a) of the Exchange Act and Rules 12b-20, 13a-1 and 13a-13 (IGDC only); 4) aiding and abetting violations of Sections 13(a) of the Exchange Act and Rules 12b-20, 13a-1, 13a-13 (Leonard only); and 5) Violations of Rule 13a-14 under the Exchange Act (Leonard only).

**B. The First Motion to Dismiss**

On November 3, 2006, Leonard filed a Motion to Dismiss in which he asserted that "[t]he Securities and Exchange Commission did not possess adequate information to make [its] allegations with regard to the defendants." Motion to Dismiss at 1. Leonard further asserted that the "allegations by the SEC misrepresent the truth . . . ." *Id.* Leonard went on to argue that, as a factual matter, members of IGDC's staff were at fault, asserting that:

> IGDC perso[nnel] were involved in a long term campaign to sabotage IGDC and to use the regulations of the SEC to remove the management and therefore obtain the assets of the company. These former staff members planned to take over the company by non-compliance to (sic) federal regulations and to, themselves, abuse these very same regulations.

*Id.* In his Reply brief, Leonard stated that his motion to dismiss was brought pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

### C. The Second Motion to Dismiss

On November 27, 2006, Leonard filed an "Emergency Order to Dismiss" which included a copy of a *San Francisco Chronicle* article dated November 26, 2006, entitled "High flier falls to earth: Deni Leonard told investors they could build wealth by helping indigenous people, but SEC calls that a tall tale." In his pleading, Leonard states:

> The Securities and Exchange Commission has provided the San Francisco Chronicle Newspaper with opinions that create a circumstance in which I can get no fair trial. . . . This action by the Securities and Exchange Commission to purposely sway public opinion against both Indigenous Global Development Corporation and Mr. Deni Leonard violates the 5th Amendment protection. Because of the serious nature of this violation of the 5th Amendment, we request an Emergency Order to Dismiss [the case].

Second Motion to Dismiss at 1.

### III. ANALYSIS

#### A. The First Motion to Dismiss

Leonard seeks dismissal of the claims against him under Rule 12(b)(1) (dismissal for lack of subject matter jurisdiction) and Rule 12(b)(6) (dismissal for failure to state a claim). Because Leonard attacks the factual basis of the claims rather than the adequacy of the pleadings, the motion fails to the extent it is based on Rule 12(b)(6). Further, to the extent the challenge is based on 12(b)(1), the Court concludes that Leonard's factual assertions are so intertwined with the merits that dismissal on this basis would be inappropriate.

##### 1. Rule 12(b)(6)

"The purpose of a motion to dismiss under rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." In complaints alleging fraud, the Plaintiff is required to provide more detailed allegations under Rule 9(b) of the Federal

4

1  Rules of Civil Procedure: "In all averments of fraud or mistake, the circumstances constituting
2  fraud or mistake shall be stated with particularity." The Ninth Circuit has held that "[a] pleading is
3  sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can
4  prepare an adequate answer from the allegations. . . . While statements of the time, place and nature
5  of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are
6  insufficient." *Moore v. Kayport Package Express*, 885 F.2d 531, 540 (9th Cir. 1988) (internal
7  citation omitted).

8  In ruling on a motion to dismiss, the court analyzes the complaint and takes "all allegations
9  of material fact as true and construe(s) them in the light most favorable to the non-moving party."
10 *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). "Dismissal can be based on the
11 lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal
12 theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) (internal citation
13 omitted); *see also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (footnote omitted) (finding dismissal
14 proper under Rule 12(b)(6) only when "it appears beyond doubt that the plaintiff can prove no set of
15 facts in support of his claim which would entitle him to relief.")

16 Here, Leonard does not identify any specific deficiency in the SEC's allegations. Rather, he
17 challenges the factual basis for the SEC's allegations. While such a challenge may be appropriate
18 on summary judgment, it does not provide a basis for dismissal under Rule 12(b)(6).

19 **2.     Rule 12(b)(1)**

20 Rule 12(b)(1) authorizes a defendant to seek dismissal based on lack of subject matter
21 jurisdiction. A party seeking dismissal for lack of subject matter jurisdiction may bring a facial
22 challenge or a factual challenge. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A facial
23 challenge asserts that the pleadings are insufficient on their face. *Safe Air for Everyone v. Meyer*,
24 373 F.3d 1035, 1039 (9th Cir. 2004). In evaluating such a challenge, the court accepts the factual
25 allegations in the complaint as true. *Miranda v. Reno*, 238 F.3d 1156, 1157 n.1 (9th Cir. 2001). In
26 contrast, where a defendant challenges the factual basis underlying the allegations, as does
27 Defendant Leonard here, the court need not accept the allegations as true and may make factual
28 determinations. *White*, 227 F.3d at 1242. However, dismissal for lack of subject matter jurisdiction

5

is rare and should only be granted where "the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial or frivolous." *Bell v. Hood*, 327 U.S. 678, 682-83 (1946). Further, dismissal on this basis is inappropriate where "the jurisdictional issue and the substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits . . . ." *Augustine v. U.S.*, 704 F.2d 1074, 1077 (9th Cir. 1983). In that case, resolution of the factual dispute should be deferred until a determination on the merits is made, either on summary judgment or at trial. *Id*.

Leonard's challenge is based on disputed facts that go to the heart of the SEC's claims. As such, the Court concludes that dismissal for lack of subject matter jurisdiction is inappropriate at this stage of the case.

### B.   The Second Motion to Dismiss

In his Second Motion to Dismiss, Leonard argues that publicity from a *San Francisco Chronicle* article, which includes statements by an SEC attorney about this case, precludes him from receiving a fair trial and therefore, the action should be dismissed. The Court denies this motion on the basis that it is premature.

Under some circumstances, pretrial publicity may be so pervasive that a defendant's right to an impartial jury – and thus, to due process – may be threatened. *See Sheppard v. Maxwell*, 384 U.S. 333, 362 (1966). Under such circumstances, the court may determine that transfer to another venue under 28 U.S.C. § 1404(a) is necessary to guarantee a fair trial. *Wash. Pub. Utils. Group v. U.S. Dist. Court for W. Dist.*, 843 F.2d 319, 321 (9th Cir. 1988). The Ninth Circuit has held, however that "the effect of pretrial publicity can be better determined after the voir dire examination of the jurors." *Narten v. Eyman*, 460 F.2d 184, 187 (9th Cir. 1969) (internal quotations and citations omitted). Therefore, the Court denies the Motion without prejudice to Leonard seeking a transfer of venue at a later stage of the case.

**IV.   CONCLUSION**

The Motions are DENIED.

IT IS SO ORDERED.

Dated: April 2, 2007

JOSEPH C. SPERO
United States Magistrate Judge