# EXHIBIT 7

**PENNALUNA & COMPANY**
421 Sherman Avenue – Suite 203 • Coeur d'Alene, Idaho 83814
(800) 535-5329 (208) 667-7472

# TRANSACTION CONFIRMATION

# SELL

| Brokerage Account Registration | Brokerage Account Information |
|---|---|
| 6DA 00092150 000175 00000156 001/001 00000098<br>UNITED NATIVE DEPOSITORY CORP<br>ATTN DENI LEONARD CEO<br>100 BUSH ST STE #600<br>SAN FRANCISCO CA 94104 | Account #: [redacted]8132 Office: 6DA<br>Rep: 1657<br>MARK DILLON REDACTED |

## BROKERAGE ACCOUNT TRANSACTION DETAIL

**You sold 21000 shares of INDIGENOUS GLOBAL DEVELOPMENT CORPORATION BB at a trade reported price of $ 0.29 per share.**

| TRADE AMOUNT | COMMISSION | ST. TAX/INTEREST | SEC FEE | MISC. FEE | PST\HDL | NET AMOUNT |
|---|---|---|---|---|---|---|
| 6,090.00 | | | .15 | | | 6,089.85 |

| Trade Date: 09/02/2004 | Settle Date: 09/08/2004 | Transaction #: 00069798 |
|---|---|---|

Additional Comments: MARK UP/DOWN 0.01

Sufficient shares to cover this sale must be in your brokerage account by settlement date.
This sale will be settled in accordance with your account instructions.

This sell:
* The MARKET in which the transaction was executed: Over The Counter/Multiple Markets
* The CAPACITY in which customer's IB or FSI is acting: As principal and/or making a market in this security, may have received a profit on this transaction.
  a. An officer of the IB or FSI may be affiliated with the issuer of the security shown herein.
  b. Commissions may be allocated among various corporate and or individual affiliates of the IB or FSI, including registered broker/dealer and registered investment advisor.
* Was unsolicited.

This security:
* Has an assigned industry standard identification number of 45567W109 .
* Has a standard trading symbol of IGDC .

Additional Information:
* NON-RECOMMENDED
* BID SHRS 5000 ASK SHRS 5000
* We make a market in this security.

Special Instructions:

**IT IS AGREED BETWEEN THE CUSTOMER ("CUSTOMER"), HIS/HER/ITS INTRODUCING BROKER ("IB") AND THE IB'S CLEARING FIRM ("NF CLEARING, INC." OR "NFC"):**

1. All transactions are subject to the rules, regulations, customs and usages of the exchange or market (and the clearing agency, if any) where executed and to any association whose rules and regulations govern transactions in that market and your account agreements with the IB and/or NFC. We will furnish, upon written request, the date and time when this transaction took place and the name of the other party to this transaction.

2. Any transaction executed in the over-the-counter market is subject to the Uniform Practice Code of the National Association of Securities Dealers, Inc. The name of the other broker or party and the time of execution will be furnished upon request.

3. Securities purchased on a cash or margin basis are or may be hypothecated under circumstances which will permit the commingling thereof with securities carried for other customers, but such securities, if hypothecated, will be withdrawn from hypothecation as soon as practicable after receipt of payment therefore.

4. If this transaction is a purchase by you in a cash account and sufficient funds are not already in your account with us, it is agreed that you will make full payment for the securities described on the face hereof promptly and not later than settlement date in accordance with the terms of this transaction and that you do not contemplate the sale of such securities prior to making such payment. If this transaction is a sale by you in a cash account and the securities described on the face herof are not already held in your account with us, we are acting upon your representation that you or your principals own such securities, and it is agreed that you will promptly and not later than the settlement date deposit such securities with us. If full payment for the securities purchased by you in the transaction is not received or if the securities sold by you are not delivered in proper form on or after the first trading day after settlement date, we may at our option cancel or otherwise liquidate this transaction without notice to you, and you will be liable for any resulting loss, including without limitation, all expenses, attorney's fees and other costs and interest incurred thereon.

5. If this transaction is a purchase by you in a margin account it is agreed that sufficient cash or acceptable collateral will be deposited on or before settlement date to satisfy applicable margin requirements.

6. Provision of agreements and contracts shall inure to the benefit of your IB, NFC, or to any successor to your IB or NFC.

7. The execution price for this security may reflect an odd-lot differential if the number of shares transacted is less than a round lot or if all of the shares transacted cannot be executed in round lot increments.

8. Call features may exist for bonds, which could affect yield. Complete information will be provided upon written request.

9. If this transaction involves an asset-backed security that represents an interest in, or is secured by a pool of receivables or other financial assets that are subject continuously to prepayment, then the actual yield of such security may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning the factors that affect yield (including at a minimum estimated yield, weighted average life, and the prepayment assumptions of underlying yield) will be furnished upon your written request.

10. Zero coupon, Compound Interest and Multiplier Securities are callable below maturity value without notice by mail to holder unless registered.

11. If so noted on the front of the confirmation statement, our affiliate makes a market in this security, i.e., buying or selling for its own account on a continuous basis, and acted as principal in buying from or selling to you. NFC affiliate acting as market maker may discontinue the maintenance of such market at any time without notice. Your IB (if any) acted as your agent, charging you a commission for its service. Where this transaction is listed as executed by an NFC affiliate or a market maker, NFC or its affiliate acted in the capacity of specialist or market maker and filled the order at the inside market without mark-up or down. If average price transaction is indicated on the front of this confirmation statement, your IB or NFC may have acted as principal, agent or both on one or more exchanges, Details available through your IB.

12. NFC or IB receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. Such remuneration is considered compensation for NFC, and the source and amount of any compensation received by NFC in connection with your transaction will be disclosed upon request. Please contact your IB for a break down of any fees listed on this confirmation.

13. If this transaction is not entirely in accordance with Customer's understanding and directions, Customer must report any error or discrepancy within ten (10) days of receipt of this trade acknowledgement (confirmation) by forwarding a copy of this trade acknowledgement to the Compliance Officer at Customer's IB with the error noted. Otherwise, the transaction as stated on this trade acknowledgement shall be forever deemed to be correct and accepted by Customer.

14. Where your IB acted as agent or principal, NFC acted as clearing agent only.

PENNALUNA & COMPANY
421 Sherman Avenue – Suite 203 • Coeur d'Alene, Idaho 83814
(800) 535-5329 (208) 667-7472

# TRANSACTION CONFIRMATION

# SELL

| Brokerage Account Registration | Brokerage Account Information |
|---|---|
| 6DA 00094975 000249 00000220 001/001 00000121<br>UNITED NATIVE DEPOSITORY CORP<br>ATTN DENI LEONARD CEO<br>100 BUSH ST STE #600<br>SAN FRANCISCO CA 94104 | Account #: [redacted]8132 Office: 6DA<br>Rep: 1657<br>MARK DILLON REDACTED |

**BROKERAGE ACCOUNT TRANSACTION DETAIL**

You sold 23000 shares of INDIGENOUS GLOBAL DEVELOPMENT CORPORATION BB at a trade reported price of $ 0.285 per share.

| TRADE AMOUNT | COMMISSION | ST. TAX/INTEREST | FEE | MISC. FEE | PST/HDL | NET AMOUNT |
|---|---|---|---|---|---|---|
| 6,555.00 | | | .16 | | | 6,554.84 |

Trade Date: 09/08/2004 | Settle Date: 09/13/2004 | Transaction #: 00068827

Additional Comments: MARK UP/DOWN 0.015

Sufficient shares to cover this sale must be in your brokerage account by settlement date.
This sale will be settled in accordance with your account instructions.

This sell:
* The MARKET in which the transaction was executed: Over The Counter/Multiple Markets
* The CAPACITY in which customer's IB or FSI is acting: As principal and/or making a market in this security, may have received a profit on this transaction.
  a. An officer of the IB or FSI may be affiliated with the issuer of the security shown herein.
  b. Commissions may be allocated among various corporate and or individual affiliates of the IB or FSI, including registered broker/dealer and registered investment advisor.
* Was unsolicited.

This security:
* Has an assigned industry standard identification number of 45567W109.
* Has a standard trading symbol of IGDC.

Additional Information:
* NON-RECOMMENDED
* BID SHRS 5000 ASK SHRS 5000
* We make a market in this security.

Special Instructions:

**IT IS AGREED BETWEEN THE CUSTOMER ("CUSTOMER"), HIS/HER/ITS INTRODUCING BROKER ("IB") AND THE IB'S CLEARING FIRM ("NF CLEARING, INC." OR "NFC"):**

1. All transactions are subject to the rules, regulations, customs and usages of the exchange or market (and the clearing agency, if any) where executed and to any association whose rules and regulations govern transactions in that market and your account agreements with the IB and/or NFC. We will furnish, upon written request, the date and time when this transaction took place and the name of the other party to this transaction.

2. Any transaction executed in the over-the-counter market is subject to the Uniform Practice Code of the National Association of Securities Dealers, Inc. The name of the other broker or party and the time of execution will be furnished upon request.

3. Securities purchased on a cash or margin basis are or may be hypothecated under circumstances which will permit the commingling thereof with securities carried for other customers, but such securities, if hypothecated, will be withdrawn from hypothecation as soon as practicable after receipt of payment therefore.

4. If this transaction is a purchase by you in a cash account and sufficient funds are not already in your account with us, it is agreed that you will make full payment for the securities described on the face hereof promptly and not later than settlement date in accordance with the terms of this transaction and that you do not contemplate the sale of such securities prior to making such payment. If this transaction is a sale by you in a cash account and the securities described on the face herof are not already held in your account with us, we are acting upon your representation that you or your principals own such securities, and it is agreed that you will promptly and not later than the settlement date deposit such securities with us. If full payment for the securities purchased by you in the transaction is not received or if the securities sold by you are not delivered in proper form on or after the first trading day after settlement date, we may at our option cancel or otherwise liquidate this transaction without notice to you, and you will be liable for any resulting loss, including without limitation, all expenses, attorney's fees and other costs and interest incurred thereon.

5. If this transaction is a purchase by you in a margin account it is agreed that sufficient cash or acceptable collateral will be deposited on or before settlement date to satisfy applicable margin requirements.

6. Provision of agreements and contracts shall inure to the benefit of your IB, NFC, or to any successor to your IB or NFC.

7. The execution price for this security may reflect an odd-lot differential if the number of shares transacted is less than a round lot or if all of the shares transacted cannot be executed in round lot increments.

8. Call features may exist for bonds, which could affect yield. Complete information will be provided upon written request.

9. If this transaction involves an asset-backed security that represents an interest in, or is secured by a pool of receivables or other financial assets that are subject continuously to prepayment, then the actual yield of such security may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning the factors that affect yield (including at a minimum estimated yield, weighted average life, and the prepayment assumptions of underlying yield) will be furnished upon your written request.

10. Zero coupon, Compound Interest and Multiplier Securities are callable below maturity value without notice by mail to holder unless registered.

11. If so noted on the front of the confirmation statement, our affiliate makes a market in this security, i.e., buying or selling for its own account on a continuous basis, and acted as principal in buying from or selling to you. NFC affiliate acting as market maker may discontinue the maintenance of such market at any time without notice. Your IB (if any) acted as your agent, charging you a commission for its service. Where this transaction is listed as executed by an NFC affiliate or a market maker, NFC or its affiliate acted in the capacity of specialist or market maker and filled the order at the inside market without mark-up or down. If average price transaction is indicated on the front of this confirmation statement, your IB or NFC may have acted as principal, agent or both on one or more exchanges. Details available through your IB.

12. NFC or IB receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. Such remuneration is considered compensation for NFC, and the source and amount of any compensation received by NFC in connection with your transaction will be disclosed upon request. Please contact your IB for a break down of any fees listed on this confirmation.

13. If this transaction is not entirely in accordance with Customer's understanding and directions, Customer must report any error or discrepancy within ten (10) days of receipt of this trade acknowledgement (confirmation) by forwarding a copy of this trade acknowledgement to the Compliance Officer at Customer's IB with the error noted. Otherwise, the transaction as stated on this trade acknowledgement shall be forever deemed to be correct and accepted by Customer.

14. Where your IB acted as agent or principal, NFC acted as clearing agent only.

PENNALUNA & COMPANY
421 Sherman Avenue — Suite 203 • Coeur d'Alene, Idaho 83814
(800) 535-5329 (208) 667-7472

# TRANSACTION CONFIRMATION

# SELL

| Brokerage Account Registration | Brokerage Account Information |
|---|---|
| 6DA 00145322 000276 00000270 001/001 1 00000164<br>UNITED NATIVE DEPOSITORY CORP<br>ATTN DENI LEONARD CEO<br>100 BUSH ST STE #600<br>SAN FRANCISCO CA 94104 | Account # [redacted] Office 6DA<br>Rep 1657<br>MARK DILLON REDACTED |

## BROKERAGE ACCOUNT TRANSACTION DETAIL

You sold 12000 shares of INDIGENOUS GLOBAL DEVELOPMENT CORPORATION BB at a trade reported price of $.23 per share.

| TRADE AMOUNT | COMMISSION | ST. TAX/INTEREST | FEE | MISC FEE | PST\HDL | NET AMOUNT |
|---|---|---|---|---|---|---|
| 2,760.00 | | | .07 | | | 2,759.93 |

| Trade Date: 11/09/2004 | Settle Date: 11/15/2004 | Transaction #: 00060499 |
|---|---|---|

**Additional Comments:**

Sufficient shares to cover this sale must be in your brokerage account by settlement date.
This sale will be settled in accordance with your account instructions.

This sell:
- The MARKET in which the transaction was executed: Over The Counter/Multiple Markets
- The CAPACITY in which customer's IB or FSI is acting: As principal and/or making a market in this security, may have received a profit on this transaction.
  a. An officer of the IB or FSI may be affiliated with the issuer of the security shown herein.
  b. Commissions may be allocated among various corporate and or individual affiliates of the IB or FSI, including registered broker/dealer and registered investment advisor.
- Was unsolicited.

This security:
- Has an assigned industry standard identification number of 45567W109
- Has a standard trading symbol of IGDC

Additional Information:
- We make a market in this security.

Special Instructions:

**IT IS AGREED BETWEEN THE CUSTOMER ("CUSTOMER"), HIS/HER/ITS INTRODUCING BROKER ("IB") AND THE IB'S CLEARING FIRM ("NF CLEARING, INC." OR "NFC"):**

1. All transactions are subject to the rules, regulations, customs and usages of the exchange or market (and the clearing agency, if any) where executed and to any association whose rules and regulations govern transactions in that market and your account agreements with the IB and/or NFC. We will furnish, upon written request, the date and time when this transaction took place and the name of the other party to this transaction.

2. Any transaction executed in the over-the-counter market is subject to the Uniform Practice Code of the National Association of Securities Dealers, Inc. The name of the other broker or party and the time of execution will be furnished upon request.

3. Securities purchased on a cash or margin basis are or may be hypothecated under circumstances which will permit the commingling thereof with securities carried for other customers, but such securities, if hypothecated, will be withdrawn from hypothecation as soon as practicable after receipt of payment therefore.

4. If this transaction is a purchase by you in a cash account and sufficient funds are not already in your account with us, it is agreed that you will make full payment for the securities described on the face hereof promptly and not later than settlement date in accordance with the terms of this transaction and that you do not contemplate the sale of such securities prior to making such payment. If this transaction is a sale by you in a cash account and the securities described on the face herof are not already held in your account with us, we are acting upon your representation that you or your principals own such securities, and it is agreed that you will promptly and not later than the settlement date deposit such securities with us. If full payment for the securities purchased by you in the transaction is not received or if the securities sold by you are not delivered in proper form on or after the first trading day after settlement date, we may at our option cancel or otherwise liquidate this transaction without notice to you, and you will be liable for any resulting loss, including without limitation, all expenses, attorney's fees and other costs and interest incurred thereon.

5. If this transaction is a purchase by you in a margin account it is agreed that sufficient cash or acceptable collateral will be deposited on or before settlement date to satisfy applicable margin requirements.

6. Provision of agreements and contracts shall inure to the benefit of your IB, NFC, or to any successor to your IB or NFC.

7. The execution price for this security may reflect an odd-lot differential if the number of shares transacted is less than a round lot or if all of the shares transacted cannot be executed in round lot increments.

8. Call features may exist for bonds, which could affect yield. Complete information will be provided upon written request.

9. If this transaction involves an asset-backed security that represents an interest in, or is secured by a pool of receivables or other financial assets that are subject continuously to prepayment, then the actual yield of such security may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning the factors that affect yield (including at a minimum estimated yield, weighted average life, and the prepayment assumptions of underlying yield) will be furnished upon your written request.

10. Zero coupon, Compound Interest and Multiplier Securities are callable below maturity value without notice by mail to holder unless registered.

11. If so noted on the front of the confirmation statement, our affiliate makes a market in this security, i.e., buying or selling for its own account on a continuous basis, and acted as principal in buying from or selling to you. NFC affiliate acting as market maker may discontinue the maintenance of such market at any time without notice. Your IB (if any) acted as your agent, charging you a commission for its service. Where this transaction is listed as executed by an NFC affiliate or a market maker, NFC or its affiliate acted in the capacity of specialist or market maker and filled the order at the inside market without mark-up or down. If average price transaction is indicated on the front of this confirmation statement, your IB or NFC may have acted as principal, agent or both on one or more exchanges. Details available through your IB.

12. NFC or IB receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. Such remuneration is considered compensation for NFC, and the source and amount of any compensation received by NFC in connection with your transaction will be disclosed upon request. Please contact your IB for a break down of any fees listed on this confirmation.

13. If this transaction is not entirely in accordance with Customer's understanding and directions, Customer must report any error or discrepancy within ten (10) days of receipt of this trade acknowledgement (confirmation) by forwarding a copy of this trade acknowledgement to the Compliance Officer at Customer's IB with the error noted. Otherwise, the transaction as stated on this trade acknowledgement shall be forever deemed to be correct and accepted by Customer.

14. Where your IB acted as agent or principal, NFC acted as clearing agent only.

PENNALUNA & COMPANY
421 Sherman Avenue — Suite 203 • Coeur d'Alene, Idaho 83814
(800) 535-5329 (208) 667-7472

# TRANSACTION CONFIRMATION

# SELL

| Brokerage Account Registration | Brokerage Account Information |
|---|---|
| 6DA 00150683 000325 00000323 001/002 00000205<br>UNITED NATIVE DEPOSITORY CORP<br>ATTN DENI LEONARD CEO<br>100 BUSH ST STE #600<br>SAN FRANCISCO CA 94104 | Account #: [redacted]8132 Office : 6DA<br>Rep: 1657<br>REDACTED<br>MARK DILLON |

## BROKERAGE ACCOUNT TRANSACTION DETAIL

**You sold 10000 shares of INDIGENOUS GLOBAL DEVELOPMENT CORPORATION BB at a trade reported price of $ .27 per share.**

| TRADE AMOUNT | COMMISSION | ST. TAX/INTEREST | FEE | MISC. FEE | PST\HDL | NET AMOUNT |
|---|---|---|---|---|---|---|
| 2,700.00 | | | .07 | | | 2,699.93 |

| Trade Date: 11/15/2004 | Settle Date: 11/18/2004 | Transaction #: 00078899 |
|---|---|---|
| Additional Comments: | | Entry Date: 11/16/2004 |

Sufficient shares to cover this sale must be in your brokerage account by settlement date.
This sale will be settled in accordance with your account instructions.

This sell:
* The MARKET in which the transaction was executed: Over The Counter/Multiple Markets
* The CAPACITY in which customer's IB or FSI is acting: As principal and/or making a market in this security, may have received a profit on this transaction.
  a. An officer of the IB or FSI may be affiliated with the issuer of the security shown herein.
  b. Commissions may be allocated among various corporate and or individual affiliates of the IB or FSI, including registered broker/dealer and registered investment advisor.
* Was unsolicited.

This security:
* Has an assigned industry standard identification number of 45567W109 .
* Has a standard trading symbol of IGDC .

Additional Information:
* _______INSTRUCTIONS
* We make a market in this security.

Special Instructions:

**IT IS AGREED BETWEEN THE CUSTOMER ("CUSTOMER"), HIS/HER/ITS INTRODUCING BROKER ("IB") AND THE IB'S CLEARING FIRM ("NF CLEARING, INC." OR "NFC"):**

1. All transactions are subject to the rules, regulations, customs and usages of the exchange or market (and the clearing agency, if any) where executed and to any association whose rules and regulations govern transactions in that market and your account agreements with the IB and/or NFC. We will furnish, upon written request, the date and time when this transaction took place and the name of the other party to this transaction.

2. Any transaction executed in the over-the-counter market is subject to the Uniform Practice Code of the National Association of Securities Dealers, Inc. The name of the other broker or party and the time of execution will be furnished upon request.

3. Securities purchased on a cash or margin basis are or may be hypothecated under circumstances which will permit the commingling thereof with securities carried for other customers, but such securities, if hypothecated, will be withdrawn from hypothecation as soon as practicable after receipt of payment therefore.

4. If this transaction is a purchase by you in a cash account and sufficient funds are not already in your account with us, it is agreed that you will make full payment for the securities described on the face hereof promptly and not later than settlement date in accordance with the terms of this transaction and that you do not contemplate the sale of such securities prior to making such payment. If this transaction is a sale by you in a cash account and the securities described on the face herof are not already held in your account with us, we are acting upon your representation that you or your principals own such securities, and it is agreed that you will promptly and not later than the settlement date deposit such securities with us. If full payment for the securities purchased by you in the transaction is not received or if the securities sold by you are not delivered in proper form on or after the first trading day after settlement date, we may at our option cancel or otherwise liquidate this transaction without notice to you, and you will be liable for any resulting loss, including without limitation, all expenses, attorney's fees and other costs and interest incurred thereon.

5. If this transaction is a purchase by you in a margin account it is agreed that sufficient cash or acceptable collateral will be deposited on or before settlement date to satisfy applicable margin requirements.

6. Provision of agreements and contracts shall inure to the benefit of your IB, NFC, or to any successor to your IB or NFC.

7. The execution price for this security may reflect an odd-lot differential if the number of shares transacted is less than a round lot or if all of the shares transacted cannot be executed in round lot increments.

8. Call features may exist for bonds, which could affect yield. Complete information will be provided upon written request.

9. If this transaction involves an asset-backed security that represents an interest in, or is secured by a pool of receivables or other financial assets that are subject continuously to prepayment, then the actual yield of such security may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning the factors that affect yield (including at a minimum estimated yield, weighted average life, and the prepayment assumptions of underlying yield) will be furnished upon your written request.

10. Zero coupon, Compound Interest and Multiplier Securities are callable below maturity value without notice by mail to holder unless registered.

11. If so noted on the front of the confirmation statement, our affiliate makes a market in this security, i.e., buying or selling for its own account on a continuous basis, and acted as principal in buying from or selling to you. NFC affiliate acting as market maker may discontinue the maintenance of such market at any time without notice. Your IB (if any) acted as your agent, charging you a commission for its service. Where this transaction is listed as executed by an NFC affiliate or a market maker, NFC or its affiliate acted in the capacity of specialist or market maker and filled the order at the inside market without mark-up or down. If average price transaction is indicated on the front of this confirmation statement, your IB or NFC may have acted as principal, agent or both on one or more exchanges. Details available through your IB.

12. NFC or IB receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. Such remuneration is considered compensation for NFC, and the source and amount of any compensation received by NFC in connection with your transaction will be disclosed upon request. Please contact your IB for a break down of any fees listed on this confirmation.

13. If this transaction is not entirely in accordance with Customer's understanding and directions, Customer must report any error or discrepancy within ten (10) days of receipt of this trade acknowledgement (confirmation) by forwarding a copy of this trade acknowledgement to the Compliance Officer at Customer's IB with the error noted. Otherwise, the transaction as stated on this trade acknowledgement shall be forever deemed to be correct and accepted by Customer.

14. Where your IB acted as agent or principal, NFC acted as clearing agent only.

PENNALUNA & COMPANY
421 Sherman Avenue – Suite 203 • Coeur d'Alene, Idaho 83814
(800) 535-5329 (208) 667-7472

# TRANSACTION CONFIRMATION

# SELL

| Brokerage Account Registration | Brokerage Account Information |
|---|---|
| 6DA 00149605 000280 00000275 001/001 00000156<br>UNITED NATIVE DEPOSITORY CORP<br>ATTN DENI LEONARD CEO<br>100 BUSH ST STE #600<br>SAN FRANCISCO CA 94104 | Account #: [redacted]8132 Office: 6DA<br>Rep: 1687<br>MARK DILLON |

## BROKERAGE ACCOUNT TRANSACTION DETAIL

You sold 25000 shares of INDIGENOUS GLOBAL DEVELOPMENT CORPORATION BB at a trade reported price of $.25 per share.

| TRADE AMOUNT | COMMISSION | ST. TAX/INTEREST | FEE | MISC. FEE | PST\HDL | NET AMOUNT |
|---|---|---|---|---|---|---|
| 6,250.00 | | | .15 | | | 6,249.85 |

Trade Date: 11/15/2004 Settle Date: 11/18/2004 Transaction #: 00031308

Additional Comments:

Sufficient shares to cover this sale must be in your brokerage account by settlement date.
This sale will be settled in accordance with your account instructions.

This sell:
* The MARKET in which the transaction was executed:
  Over The Counter/Multiple Markets
* The CAPACITY in which customer's IB or FSI is acting:
  As principal and/or making a market in this security, may have received a profit on this transaction.
  a. An officer of the IB or FSI may be affiliated with the issuer of the security shown herein.
  b. Commissions may be allocated among various corporate and or individual affiliates of the IB or FSI, including registered broker/dealer and registered investment advisor.
* Was unsolicited.

This security:
* Has an assigned industry standard identification number of 45567W109 .
* Has a standard trading symbol of IGDC .

Additional Information:
* We make a market in this security.

Special Instructions:

**IT IS AGREED BETWEEN THE CUSTOMER ("CUSTOMER"), HIS/HER/ITS INTRODUCING BROKER ("IB") AND THE IB'S CLEARING FIRM ("NF CLEARING, INC." OR "NFC"):**

1. All transactions are subject to the rules, regulations, customs and usages of the exchange or market (and the clearing agency, if any) where executed and to any association whose rules and regulations govern transactions in that market and your account agreements with the IB and/or NFC. We will furnish, upon written request, the date and time when this transaction took place and the name of the other party to this transaction.

2. Any transaction executed in the over-the-counter market is subject to the Uniform Practice Code of the National Association of Securities Dealers, Inc. The name of the other broker or party and the time of execution will be furnished upon request.

3. Securities purchased on a cash or margin basis are or may be hypothecated under circumstances which will permit the commingling thereof with securities carried for other customers, but such securities, if hypothecated, will be withdrawn from hypothecation as soon as practicable after receipt of payment therefore.

4. If this transaction is a purchase by you in a cash account and sufficient funds are not already in your account with us, it is agreed that you will make full payment for the securities described on the face hereof promptly and not later than settlement date in accordance with the terms of this transaction and that you do not contemplate the sale of such securities prior to making such payment. If this transaction is a sale by you in a cash account and the securities described on the face herof are not already held in your account with us, we are acting upon your representation that you or your principals own such securities, and it is agreed that you will promptly and not later than the settlement date deposit such securities with us. If full payment for the securities purchased by you in the transaction is not received or if the securities sold by you are not delivered in proper form on or after the first trading day after settlement date, we may at our option cancel or otherwise liquidate this transaction without notice to you, and you will be liable for any resulting loss, including without limitation, all expenses, attorney's fees and other costs and interest incurred thereon.

5. If this transaction is a purchase by you in a margin account it is agreed that sufficient cash or acceptable collateral will be deposited on or before settlement date to satisfy applicable margin requirements.

6. Provision of agreements and contracts shall inure to the benefit of your IB, NFC, or to any successor to your IB or NFC.

7. The execution price for this security may reflect an odd-lot differential if the number of shares transacted is less than a round lot or if all of the shares transacted cannot be executed in round lot increments.

8. Call features may exist for bonds, which could affect yield. Complete information will be provided upon written request.

9. If this transaction involves an asset-backed security that represents an interest in, or is secured by a pool of receivables or other financial assets that are subject continuously to prepayment, then the actual yield of such security may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning the factors that affect yield (including at a minimum estimated yield, weighted average life, and the prepayment assumptions of underlying yield) will be furnished upon your written request.

10. Zero coupon, Compound Interest and Multiplier Securities are callable below maturity value without notice by mail to holder unless registered.

11. If so noted on the front of the confirmation statement, our affiliate makes a market in this security, i.e., buying or selling for its own account on a continuous basis, and acted as principal in buying from or selling to you. NFC affiliate acting as market maker may discontinue the maintenance of such market at any time without notice. Your IB (if any) acted as your agent, charging you a commission for its service. Where this transaction is listed as executed by an NFC affiliate or a market maker, NFC or its affiliate acted in the capacity of specialist or market maker and filled the order at the inside market without mark-up or down. If average price transaction is indicated on the front of this confirmation statement, your IB or NFC may have acted as principal, agent or both on one or more exchanges, Details available through your IB.

12. NFC or IB receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. Such remuneration is considered compensation for NFC, and the source and amount of any compensation received by NFC in connection with your transaction will be disclosed upon request. Please contact your IB for a break down of any fees listed on this confirmation.

13. If this transaction is not entirely in accordance with Customer's understanding and directions, Customer must report any error or discrepancy within ten (10) days of receipt of this trade acknowledgement (confirmation) by forwarding a copy of this trade acknowledgement to the Compliance Officer at Customer's IB with the error noted. Otherwise, the transaction as stated on this trade acknowledgement shall be forever deemed to be correct and accepted by Customer.

14. Where your IB acted as agent or principal, NFC acted as clearing agent only.

PENNALUNA & COMPANY
421 Sherman Avenue — Suite 203 • Coeur d'Alene, Idaho 83814
(800) 535-5329 (208) 667-7472

# TRANSACTION CONFIRMATION

# SELL

| Brokerage Account Registration | Brokerage Account Information |
|---|---|
| 6DA 00150683 000326 00000324 002/002 00000205<br>UNITED NATIVE DEPOSITORY CORP<br>ATTN DENI LEONARD CEO<br>100 BUSH ST STE #600<br>SAN FRANCISCO CA 94104 | Account #: [redacted]132 Office: 6DA<br>Rep: 1657<br>MARK DILLON REDACTED |

## BROKERAGE ACCOUNT TRANSACTION DETAIL

You sold 55000 shares of INDIGENOUS GLOBAL DEVELOPMENT CORPORATION BB at a trade reported price of $.30 per share.

| TRADE AMOUNT | COMMISSION | ST. TAX/INTEREST | FEE | MISC. FEE | PST\HDL | NET AMOUNT |
|---|---|---|---|---|---|---|
| 16,500.00 | | | .39 | | | 16,499.61 |

| Trade Date: 11/16/2004 | Settle Date: 11/19/2004 | Transaction #: 00086784 |
|---|---|---|

Additional Comments:

Sufficient shares to cover this sale must be in your brokerage account by settlement date.
This sale will be settled in accordance with your account instructions.

This sell:
* The MARKET in which the transaction was executed: Over The Counter/Multiple Markets
* The CAPACITY in which customer's IB or FSI is acting: As principal and/or making a market in this security, may have received a profit on this transaction.
  a. An officer of the IB or FSI may be affiliated with the issuer of the security shown herein.
  b. Commissions may be allocated among various corporate and or individual affiliates of the IB or FSI, including registered broker/dealer and registered investment advisor.
* Was unsolicited.

This security:
* Has an assigned industry standard identification number of 45567W109 .
* Has a standard trading symbol of IGDC .

Additional Information:
* We make a market in this security.

Special Instructions:

**IT IS AGREED BETWEEN THE CUSTOMER ("CUSTOMER"), HIS/HER/ITS INTRODUCING BROKER ("IB") AND THE IB'S CLEARING FIRM ("NF CLEARING, INC." OR "NFC"):**

1. All transactions are subject to the rules, regulations, customs and usages of the exchange or market (and the clearing agency, if any) where executed and to any association whose rules and regulations govern transactions in that market and your account agreements with the IB and/or NFC. We will furnish, upon written request, the date and time when this transaction took place and the name of the other party to this transaction.

2. Any transaction executed in the over-the-counter market is subject to the Uniform Practice Code of the National Association of Securities Dealers, Inc. The name of the other broker or party and the time of execution will be furnished upon request.

3. Securities purchased on a cash or margin basis are or may be hypothecated under circumstances which will permit the commingling thereof with securities carried for other customers, but such securities, if hypothecated, will be withdrawn from hypothecation as soon as practicable after receipt of payment therefore.

4. If this transaction is a purchase by you in a cash account and sufficient funds are not already in your account with us, it is agreed that you will make full payment for the securities described on the face hereof promptly and not later than settlement date in accordance with the terms of this transaction and that you do not contemplate the sale of such securities prior to making such payment. If this transaction is a sale by you in a cash account and the securities described on the face herof are not already held in your account with us, we are acting upon your representation that you or your principals own such securities, and it is agreed that you will promptly and not later than the settlement date deposit such securities with us. If full payment for the securities purchased by you in the transaction is not received or if the securities sold by you are not delivered in proper form on or after the first trading day after settlement date, we may at our option cancel or otherwise liquidate this transaction without notice to you, and you will be liable for any resulting loss, including without limitation, all expenses, attorney's fees and other costs and interest incurred thereon.

5. If this transaction is a purchase by you in a margin account it is agreed that sufficient cash or acceptable collateral will be deposited on or before settlement date to satisfy applicable margin requirements.

6. Provision of agreements and contracts shall inure to the benefit of your IB, NFC, or to any successor to your IB or NFC.

7. The execution price for this security may reflect an odd-lot differential if the number of shares transacted is less than a round lot or if all of the shares transacted cannot be executed in round lot increments.

8. Call features may exist for bonds, which could affect yield. Complete information will be provided upon written request.

9. If this transaction involves an asset-backed security that represents an interest in, or is secured by a pool of receivables or other financial assets that are subject continuously to prepayment, then the actual yield of such security may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning the factors that affect yield (including at a minimum estimated yield, weighted average life, and the prepayment assumptions of underlying yield) will be furnished upon your written request.

10. Zero coupon, Compound Interest and Multiplier Securities are callable below maturity value without notice by mail to holder unless registered.

11. If so noted on the front of the confirmation statement, our affiliate makes a market in this security, i.e., buying or selling for its own account on a continuous basis, and acted as principal in buying from or selling to you. NFC affiliate acting as market maker may discontinue the maintenance of such market at any time without notice. Your IB (if any) acted as your agent, charging you a commission for its service. Where this transaction is listed as executed by an NFC affiliate or a market maker, NFC or its affiliate acted in the capacity of specialist or market maker and filled the order at the inside market without mark-up or down. If average price transaction is indicated on the front of this confirmation statement, your IB or NFC may have acted as principal, agent or both on one or more exchanges. Details available through your IB.

12. NFC or IB receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. Such remuneration is considered compensation for NFC, and the source and amount of any compensation received by NFC in connection with your transaction will be disclosed upon request. Please contact your IB for a break down of any fees listed on this confirmation.

13. If this transaction is not entirely in accordance with Customer's understanding and directions, Customer must report any error or discrepancy within ten (10) days of receipt of this trade acknowledgement (confirmation) by forwarding a copy of this trade acknowledgement to the Compliance Officer at Customer's IB with the error noted. Otherwise, the transaction as stated on this trade acknowledgement shall be forever deemed to be correct and accepted by Customer.

14. Where your IB acted as agent or principal, NFC acted as clearing agent only.

**PENNALUNA & COMPANY**
421 Sherman Avenue – Suite 203 • Coeur d'Alene, Idaho 83814
(800) 535-5329 (208) 667-7472

# TRANSACTION CONFIRMATION

# SELL

| Brokerage Account Registration | Brokerage Account Information |
|---|---|
| 6DA 00153685 000277 00000273 002/002 00000173<br>UNITED NATIVE DEPOSITORY CORP<br>ATTN DENI LEONARD CEO<br>100 BUSH ST STE #600<br>SAN FRANCISCO CA 94104 | Account #: [redacted]132 Office : 6DA<br>Rep : 1657<br>MARK DILLON REDACTED |

## BROKERAGE ACCOUNT TRANSACTION DETAIL

You sold 10000 shares of INDIGENOUS GLOBAL DEVELOPMENT CORPORATION BB at a trade reported price of $ .40 per share.

| TRADE AMOUNT | COMMISSION | ST. TAX/INTEREST | FEE | MISC. FEE | PST\HDL | NET AMOUNT |
|---|---|---|---|---|---|---|
| 4,000.00 | | | .10 | | | 3,999.90 |

| Trade Date: 11/19/2004 | Settle Date: 11/24/2004 | Transaction #: 00031552 |
|---|---|---|

Additional Comments:

Sufficient shares to cover this sale must be in your brokerage account by settlement date.
This sale will be settled in accordance with your account instructions.

This sell:
* The MARKET in which the transaction was executed:
  Over The Counter/Multiple Markets
* The CAPACITY in which customer's IB or FSI is acting:
  As principal and/or making a market in this security, may have received a profit on this transaction.
  a. An officer of the IB or FSI may be affiliated with the issuer of the security shown herein.
  b. Commissions may be allocated among various corporate and or individual affiliates of the IB or FSI, including registered broker/dealer and registered investment advisor.
* Was unsolicited.

This security:
* Has an assigned industry standard identification number of 45567W109 .
* Has a standard trading symbol of IGDC .

Additional Information:
* We make a market in this security.

Special Instructions:

ACCOUNTS CARRIED WITH FISERV SECURITIES, INC. MEMBER NYSE/NASD/SIPC

Cat # ECSTMT

**IT IS AGREED BETWEEN THE CUSTOMER ("CUSTOMER"), HIS/HER/ITS INTRODUCING BROKER ("IB") AND THE IB'S CLEARING FIRM ("NF CLEARING, INC." OR "NFC"):**

1. All transactions are subject to the rules, regulations, customs and usages of the exchange or market (and the clearing agency, if any) where executed and to any association whose rules and regulations govern transactions in that market and your account agreements with the IB and/or NFC. We will furnish, upon written request, the date and time when this transaction took place and the name of the other party to this transaction.

2. Any transaction executed in the over-the-counter market is subject to the Uniform Practice Code of the National Association of Securities Dealers, Inc. The name of the other broker or party and the time of execution will be furnished upon request.

3. Securities purchased on a cash or margin basis are or may be hypothecated under circumstances which will permit the commingling thereof with securities carried for other customers, but such securities, if hypothecated, will be withdrawn from hypothecation as soon as practicable after receipt of payment therefore.

4. If this transaction is a purchase by you in a cash account and sufficient funds are not already in your account with us, it is agreed that you will make full payment for the securities described on the face hereof promptly and not later than settlement date in accordance with the terms of this transaction and that you do not contemplate the sale of such securities prior to making such payment. If this transaction is a sale by you in a cash account and the securities described on the face herof are not already held in your account with us, we are acting upon your representation that you or your principals own such securities, and it is agreed that you will promptly and not later than the settlement date deposit such securities with us. If full payment for the securities purchased by you in the transaction is not received or if the securities sold by you are not delivered in proper form on or after the first trading day after settlement date, we may at our option cancel or otherwise liquidate this transaction without notice to you, and you will be liable for any resulting loss, including without limitation, all expenses, attorney's fees and other costs and interest incurred thereon.

5. If this transaction is a purchase by you in a margin account it is agreed that sufficient cash or acceptable collateral will be deposited on or before settlement date to satisfy applicable margin requirements.

6. Provision of agreements and contracts shall inure to the benefit of your IB, NFC, or to any successor to your IB or NFC.

7. The execution price for this security may reflect an odd-lot differential if the number of shares transacted is less than a round lot or if all of the shares transacted cannot be executed in round lot increments.

8. Call features may exist for bonds, which could affect yield. Complete information will be provided upon written request.

9. If this transaction involves an asset-backed security that represents an interest in, or is secured by a pool of receivables or other financial assets that are subject continuously to prepayment, then the actual yield of such security may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning the factors that affect yield (including at a minimum estimated yield, weighted average life, and the prepayment assumptions of underlying yield) will be furnished upon your written request.

10. Zero coupon, Compound Interest and Multiplier Securities are callable below maturity value without notice by mail to holder unless registered.

11. If so noted on the front of the confirmation statement, our affiliate makes a market in this security, i.e., buying or selling for its own account on a continuous basis, and acted as principal in buying from or selling to you. NFC affiliate acting as market maker may discontinue the maintenance of such market at any time without notice. Your IB (if any) acted as your agent, charging you a commission for its service. Where this transaction is listed as executed by an NFC affiliate or a market maker, NFC or its affiliate acted in the capacity of specialist or market maker and filled the order at the inside market without mark-up or down. If average price transaction is indicated on the front of this confirmation statement, your IB or NFC may have acted as principal, agent or both on one or more exchanges, Details available through your IB.

12. NFC or IB receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. Such remuneration is considered compensation for NFC, and the source and amount of any compensation received by NFC in connection with your transaction will be disclosed upon request. Please contact your IB for a break down of any fees listed on this confirmation.

13. If this transaction is not entirely in accordance with Customer's understanding and directions, Customer must report any error or discrepancy within ten (10) days of receipt of this trade acknowledgement (confirmation) by forwarding a copy of this trade acknowledgement to the Compliance Officer at Customer's IB with the error noted. Otherwise, the transaction as stated on this trade acknowledgement shall be forever deemed to be correct and accepted by Customer.

14. Where your IB acted as agent or principal, NFC acted as clearing agent only.

**PENNALUNA & COMPANY**

421 Sherman Avenue -- Suite 203 • Coeur d'Alene, Idaho 83814
(800) 535-5329 (208) 667-7472

# TRANSACTION CONFIRMATION

# SELL

| Brokerage Account Registration | Brokerage Account Information |
|---|---|
| 6DA 00153685 000278 00000272 001/002 00000173<br>UNITED NATIVE DEPOSITORY CORP<br>ATTN DENI LEONARD CEO<br>100 BUSH ST STE #600<br>SAN FRANCISCO CA 94104 | Account #: [redacted]8132 Office : 6DA<br>Rep : 1657<br>MARK DILLON REDACTED |

**BROKERAGE ACCOUNT TRANSACTION DETAIL**

**You sold 10000 shares of INDIGENOUS GLOBAL DEVELOPMENT CORPORATION BB at a trade reported price of $ .38 per share.**

| TRADE AMOUNT | COMMISSION | ST. TAX/INTEREST | FEE | MISC. FEE | PST\HDL | NET AMOUNT |
|---|---|---|---|---|---|---|
| 3,800.00 | | | .09 | | | 3,799.91 |

| Trade Date: 11/19/2004 | Settle Date: 11/24/2004 | Transaction #: 00030543 |
|---|---|---|

Additional Comments:

Sufficient shares to cover this sale must be in your brokerage account by settlement date.
This sale will be settled in accordance with your account instructions.

This sell:
* The MARKET in which the transaction was executed: Over The Counter/Multiple Markets
* The CAPACITY in which customer's IB or FSI is acting: As principal and/or making a market in this security, may have received a profit on this transaction.
  a. An officer of the IB or FSI may be affiliated with the issuer of the security shown herein.
  b. Commissions may be allocated among various corporate and or individual affiliates of the IB or FSI, including registered broker/dealer and registered investment advisor.
* Was unsolicited.

This security:
* Has an assigned industry standard identification number of 45567W109 .
* Has a standard trading symbol of IGDC .

Additional Information:
* We make a market in this security.

Special Instructions:

ACCOUNTS CARRIED WITH FISERV SECURITIES, INC. MEMBER NYSE/NASD/SIPC

Cat # ECSTMT

**IT IS AGREED BETWEEN THE CUSTOMER ("CUSTOMER"), HIS/HER/ITS INTRODUCING BROKER ("IB") AND THE IB'S CLEARING FIRM ("NF CLEARING, INC." OR "NFC"):**

1. All transactions are subject to the rules, regulations, customs and usages of the exchange or market (and the clearing agency, if any) where executed and to any association whose rules and regulations govern transactions in that market and your account agreements with the IB and/or NFC. We will furnish, upon written request, the date and time when this transaction took place and the name of the other party to this transaction.

2. Any transaction executed in the over-the-counter market is subject to the Uniform Practice Code of the National Association of Securities Dealers, Inc. The name of the other broker or party and the time of execution will be furnished upon request.

3. Securities purchased on a cash or margin basis are or may be hypothecated under circumstances which will permit the commingling thereof with securities carried for other customers, but such securities, if hypothecated, will be withdrawn from hypothecation as soon as practicable after receipt of payment therefore.

4. If this transaction is a purchase by you in a cash account and sufficient funds are not already in your account with us, it is agreed that you will make full payment for the securities described on the face hereof promptly and not later than settlement date in accordance with the terms of this transaction and that you do not contemplate the sale of such securities prior to making such payment. If this transaction is a sale by you in a cash account and the securities described on the face herof are not already held in your account with us, we are acting upon your representation that you or your principals own such securities, and it is agreed that you will promptly and not later than the settlement date deposit such securities with us. If full payment for the securities purchased by you in the transaction is not received or if the securities sold by you are not delivered in proper form on or after the first trading day after settlement date, we may at our option cancel or otherwise liquidate this transaction without notice to you, and you will be liable for any resulting loss, including without limitation, all expenses, attorney's fees and other costs and interest incurred thereon.

5. If this transaction is a purchase by you in a margin account it is agreed that sufficient cash or acceptable collateral will be deposited on or before settlement date to satisfy applicable margin requirements.

6. Provision of agreements and contracts shall inure to the benefit of your IB, NFC, or to any successor to your IB or NFC.

7. The execution price for this security may reflect an odd-lot differential if the number of shares transacted is less than a round lot or if all of the shares transacted cannot be executed in round lot increments.

8. Call features may exist for bonds, which could affect yield. Complete information will be provided upon written request.

9. If this transaction involves an asset-backed security that represents an interest in, or is secured by a pool of receivables or other financial assets that are subject continuously to prepayment, then the actual yield of such security may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning the factors that affect yield (including at a minimum estimated yield, weighted average life, and the prepayment assumptions of underlying yield) will be furnished upon your written request.

10. Zero coupon, Compound Interest and Multiplier Securities are callable below maturity value without notice by mail to holder unless registered.

11. If so noted on the front of the confirmation statement, our affiliate makes a market in this security, i.e., buying or selling for its own account on a continuous basis, and acted as principal in buying from or selling to you. NFC affiliate acting as market maker may discontinue the maintenance of such market at any time without notice. Your IB (if any) acted as your agent, charging you a commission for its service. Where this transaction is listed as executed by an NFC affiliate or a market maker, NFC or its affiliate acted in the capacity of specialist or market maker and filled the order at the inside market without mark-up or down. If average price transaction is indicated on the front of this confirmation statement, your IB or NFC may have acted as principal, agent or both on one or more exchanges, Details available through your IB.

12. NFC or IB receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. Such remuneration is considered compensation for NFC, and the source and amount of any compensation received by NFC in connection with your transaction will be disclosed upon request. Please contact your IB for a break down of any fees listed on this confirmation.

13. If this transaction is not entirely in accordance with Customer's understanding and directions, Customer must report any error or discrepancy within ten (10) days of receipt of this trade acknowledgement (confirmation) by forwarding a copy of this trade acknowledgement to the Compliance Officer at Customer's IB with the error noted. Otherwise, the transaction as stated on this trade acknowledgement shall be forever deemed to be correct and accepted by Customer.

14. Where your IB acted as agent or principal, NFC acted as clearing agent only.

Case 3:06-cv-05600-JCS Document 63-2 Filed 04/21/08 Page 18 of 45

# PENNALUNA & COMPANY

421 Sherman Avenue — Suite 203 – Coeur d'Alene, Idaho 83814
(800) 535-5329 (208) 667-7472

## TRANSACTION CONFIRMATION

## SELL

| Brokerage Account Registration | Brokerage Account Information |
|---|---|
| UNITED NATIVE DEPOSITORY CORP<br>ATTN DENI LEONARD CEO<br>100 BUSH ST STE #600<br>SAN FRANCISCO CA 94104 | Account # [redacted] [illegible] Office: 6DA<br>Rep: [illegible]<br>MARK DILLON<br>REDACTED |

### BROKERAGE ACCOUNT TRANSACTION DETAIL

You sold 5210 shares of INDIGENOUS GLOBAL DEVELOPMENT CORPORATION BB at a trade reported price of $.27 per share.

| TRADE AMOUNT | COMMISSION | ST.TAX/INTEREST | FEE | MISC. FEE | PST/HDL | NET AMOUNT |
|---|---|---|---|---|---|---|
| 1,406.70 | | | .04 | | | 1406.66 |

| Trade Date: 01/05/2005 | Settle Date: 01/10/2005 | Transaction #: 0005229 |
|---|---|---|

**Additional Comments:**

Sufficient shares to cover this sale must be in your brokerage account by settlement date.
This sale will be settled in accordance with your account instructions.

This sell:
- The MARKET in which the transaction was executed: Over The Counter/Multiple Markets
- The CAPACITY in which customer's IB or FSI is acting: As principal and/or making a market in this security, may have received a profit on this transaction.
  a. An officer of the IB or FSI may be affiliated with the issuer of the security shown herein.
  b. Commissions may be allocated among various corporate and or individual affiliates of the IB or FSI including registered broker/dealer and registered investment advisor.
- Was unsolicited

This security:
- Has an assigned industry standard identification number of 45567W109
- Has a standard trading symbol of IGDC

Additional Information:
- We make a market in this security

Special Instructions:

ACCOUNTS CARRIED WITH FISERV SECURITIES, INC. MEMBER NYSE/NASD/SIPC

Cat # ECSTMT

**IT IS AGREED BETWEEN THE CUSTOMER ("CUSTOMER"), HIS/HER/ITS INTRODUCING BROKER ("IB") AND THE IB'S CLEARING FIRM ("NF CLEARING, INC." OR "NFC"):**

1. All transactions are subject to the rules, regulations, customs and usages of the exchange or market (and the clearing agency, if any) where executed and to any association whose rules and regulations govern transactions in that market and your account agreements with the IB and/or NFC. We will furnish, upon written request, the date and time when this transaction took place and the name of the other party to this transaction.

2. Any transaction executed in the over-the-counter market is subject to the Uniform Practice Code of the National Association of Securities Dealers, Inc. The name of the other broker or party and the time of execution will be furnished upon request.

3. Securities purchased on a cash or margin basis are or may be hypothecated under circumstances which will permit the commingling thereof with securities carried for other customers, but such securities, if hypothecated, will be withdrawn from hypothecation as soon as practicable after receipt of payment therefore.

4. If this transaction is a purchase by you in a cash account and sufficient funds are not already in your account with us, it is agreed that you will make full payment for the securities described on the face hereof promptly and not later than settlement date in accordance with the terms of this transaction and that you do not contemplate the sale of such securities prior to making such payment. If this transaction is a sale by you in a cash account and the securities described on the face herof are not already held in your account with us, we are acting upon your representation that you or your principals own such securities, and it is agreed that you will promptly and not later than the settlement date deposit such securities with us. If full payment for the securities purchased by you in the transaction is not received or if the securities sold by you are not delivered in proper form on or after the first trading day after settlement date, we may at our option cancel or otherwise liquidate this transaction without notice to you, and you will be liable for any resulting loss, including without limitation, all expenses, attorney's fees and other costs and interest incurred thereon.

5. If this transaction is a purchase by you in a margin account it is agreed that sufficient cash or acceptable collateral will be deposited on or before settlement date to satisfy applicable margin requirements.

6. Provision of agreements and contracts shall inure to the benefit of your IB, NFC, or to any successor to your IB or NFC.

7. The execution price for this security may reflect an odd-lot differential if the number of shares transacted is less than a round lot or if all of the shares transacted cannot be executed in round lot increments.

8. Call features may exist for bonds, which could affect yield. Complete information will be provided upon written request.

9. If this transaction involves an asset-backed security that represents an interest in, or is secured by a pool of receivables or other financial assets that are subject continuously to prepayment, then the actual yield of such security may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning the factors that affect yield (including at a minimum estimated yield, weighted average life, and the prepayment assumptions of underlying yield) will be furnished upon your written request.

10. Zero coupon, Compound Interest and Multiplier Securities are callable below maturity value without notice by mail to holder unless registered.

11. If so noted on the front of the confirmation statement, our affiliate makes a market in this security, i.e., buying or selling for its own account on a continuous basis, and acted as principal in buying from or selling to you. NFC affiliate acting as market maker may discontinue the maintenance of such market at any time without notice. Your IB (if any) acted as your agent, charging you a commission for its service. Where this transaction is listed as executed by an NFC affiliate or a market maker, NFC or its affiliate acted in the capacity of specialist or market maker and filled the order at the inside market without mark-up or down. If average price transaction is indicated on the front of this confirmation statement, your IB or NFC may have acted as principal, agent or both on one or more exchanges, Details available through your IB.

12. NFC or IB receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. Such remuneration is considered compensation for NFC, and the source and amount of any compensation received by NFC in connection with your transaction will be disclosed upon request. Please contact your IB for a break down of any fees listed on this confirmation.

13. If this transaction is not entirely in accordance with Customer's understanding and directions, Customer must report any error or discrepancy within ten (10) days of receipt of this trade acknowledgement (confirmation) by forwarding a copy of this trade acknowledgement to the Compliance Officer at Customer's IB with the error noted. Otherwise, the transaction as stated on this trade acknowledgement shall be forever deemed to be correct and accepted by Customer.

14. Where your IB acted as agent or principal, NFC acted as clearing agent only.

PENNALUNA & COMPANY
421 Sherman Avenue – Suite 203 • Coeur d'Alene, Idaho 83814
(800) 535-5329 (208) 667-7472

# TRANSACTION CONFIRMATION

# SELL

| Brokerage Account Registration | Brokerage Account Information |
|---|---|
| 6OA 04009061 000170 00000169 001/001 00000108<br>UNITED NATIVE DEPOSITORY CORP<br>ATTN DENI LEONARD CEO<br>100 BUSH ST STE #600<br>SAN FRANCISCO CA 94104 | Account #: [redacted]8132 Office: 6DA Rep: 1657<br>MARK DILLON REDACTED |

## BROKERAGE ACCOUNT TRANSACTION DETAIL

You sold 16000 shares of INDIGENOUS GLOBAL DEVELOPMENT CORPORATION BB at a trade reported price of $ .275 per share.

| TRADE AMOUNT | COMMISSION | ST. TAX/INTEREST | FEE | MISC. FEE | PST\HDL | NET AMOUNT |
|---|---|---|---|---|---|---|
| 4,400.00 | | | .11 | | | 4,399.89 |

| Trade Date: 01/06/2005 | Settle Date: 01/11/2005 | Transaction #: 00096229 |
|---|---|---|

Additional Comments:

Sufficient shares to cover this sale must be in your brokerage account by settlement date.
This sale will be settled in accordance with your account instructions.

This sell:
* The MARKET in which the transaction was executed:
  Over The Counter/Multiple Markets
* The CAPACITY in which customer's IB or FSI is acting:
  As principal and/or making a market in this security, may have received a profit on this transaction.
  a. An officer of the IB or FSI may be affiliated with the issuer of the security shown herein.
  b. Commissions may be allocated among various corporate and or individual affiliates of the IB or FSI, including registered broker/dealer and registered investment advisor.
* Was unsolicited.

This security:
* Has an assigned industry standard identification number of 45567W109.
* Has a standard trading symbol of IGDC.

Additional Information:
* We make a market in this security.

Special Instructions:

**IT IS AGREED BETWEEN THE CUSTOMER ("CUSTOMER"), HIS/HER/ITS INTRODUCING BROKER ("IB") AND THE IB'S CLEARING FIRM ("NF CLEARING, INC." OR "NFC"):**

1. All transactions are subject to the rules, regulations, customs and usages of the exchange or market (and the clearing agency, if any) where executed and to any association whose rules and regulations govern transactions in that market and your account agreements with the IB and/or NFC. We will furnish, upon written request, the date and time when this transaction took place and the name of the other party to this transaction.

2. Any transaction executed in the over-the-counter market is subject to the Uniform Practice Code of the National Association of Securities Dealers, Inc. The name of the other broker or party and the time of execution will be furnished upon request.

3. Securities purchased on a cash or margin basis are or may be hypothecated under circumstances which will permit the commingling thereof with securities carried for other customers, but such securities, if hypothecated, will be withdrawn from hypothecation as soon as practicable after receipt of payment therefore.

4. If this transaction is a purchase by you in a cash account and sufficient funds are not already in your account with us, it is agreed that you will make full payment for the securities described on the face hereof promptly and not later than settlement date in accordance with the terms of this transaction and that you do not contemplate the sale of such securities prior to making such payment. If this transaction is a sale by you in a cash account and the securities described on the face herof are not already held in your account with us, we are acting upon your representation that you or your principals own such securities, and it is agreed that you will promptly and not later than the settlement date deposit such securities with us. If full payment for the securities purchased by you in the transaction is not received or if the securities sold by you are not delivered in proper form on or after the first trading day after settlement date, we may at our option cancel or otherwise liquidate this transaction without notice to you, and you will be liable for any resulting loss, including without limitation, all expenses, attorney's fees and other costs and interest incurred thereon.

5. If this transaction is a purchase by you in a margin account it is agreed that sufficient cash or acceptable collateral will be deposited on or before settlement date to satisfy applicable margin requirements.

6. Provision of agreements and contracts shall inure to the benefit of your IB, NFC, or to any successor to your IB or NFC.

7. The execution price for this security may reflect an odd-lot differential if the number of shares transacted is less than a round lot or if all of the shares transacted cannot be executed in round lot increments.

8. Call features may exist for bonds, which could affect yield. Complete information will be provided upon written request.

9. If this transaction involves an asset-backed security that represents an interest in, or is secured by a pool of receivables or other financial assets that are subject continuously to prepayment, then the actual yield of such security may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning the factors that affect yield (including at a minimum estimated yield, weighted average life, and the prepayment assumptions of underlying yield) will be furnished upon your written request.

10. Zero coupon, Compound Interest and Multiplier Securities are callable below maturity value without notice by mail to holder unless registered.

11. If so noted on the front of the confirmation statement, our affiliate makes a market in this security, i.e., buying or selling for its own account on a continuous basis, and acted as principal in buying from or selling to you. NFC affiliate acting as market maker may discontinue the maintenance of such market at any time without notice. Your IB (if any) acted as your agent, charging you a commission for its service. Where this transaction is listed as executed by an NFC affiliate or a market maker, NFC or its affiliate acted in the capacity of specialist or market maker and filled the order at the inside market without mark-up or down. If average price transaction is indicated on the front of this confirmation statement, your IB or NFC may have acted as principal, agent or both on one or more exchanges, Details available through your IB.

12. NFC or IB receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. Such remuneration is considered compensation for NFC, and the source and amount of any compensation received by NFC in connection with your transaction will be disclosed upon request. Please contact your IB for a break down of any fees listed on this confirmation.

13. If this transaction is not entirely in accordance with Customer's understanding and directions, Customer must report any error or discrepancy within ten (10) days of receipt of this trade acknowledgement (confirmation) by forwarding a copy of this trade acknowledgement to the Compliance Officer at Customer's IB with the error noted. Otherwise, the transaction as stated on this trade acknowledgement shall be forever deemed to be correct and accepted by Customer.

14. Where your IB acted as agent or principal, NFC acted as clearing agent only.

PENNALUNA & COMPANY
421 Sherman Avenue -- Suite 203 • Coeur d'Alene, Idaho 83814
(800) 535-5329 (208) 667-7472

# TRANSACTION CONFIRMATION

## SELL

| Brokerage Account Registration | Brokerage Account Information |
|---|---|
| 6DA 04009559 000186 00000185 007001 00000111<br>UNITED NATIVE DEPOSITORY CORP<br>ATTN DENI LEONARD CEO<br>100 BUSH ST STE #600<br>SAN FRANCISCO CA 94104 | Account # [redacted]132 Office 6DA<br>Rep 165[illegible]<br>MARK DILLON |

### BROKERAGE ACCOUNT TRANSACTION DETAIL

You sold 20000 shares of INDIGENOUS GLOBAL DEVELOPMENT CORPORATION BB at a trade reported price of $ .25 per share.

| TRADE AMOUNT | COMMISSION | ST. TAX/INTEREST | FEE | MISC. FEE | PST\HDL | NET AMOUNT |
|---|---|---|---|---|---|---|
| 5,000.00 | | | .17 | | | 4,999.83 |

| Trade Date: 01/07/2005 | Settle Date: 01/12/2005 | Transaction #: 00051628 |
|---|---|---|

Additional Comments:

Sufficient shares to cover this sale must be in your brokerage account by settlement date.
This sale will be settled in accordance with your account instructions.

This sell:
* The MARKET in which the transaction was executed: Over The Counter/Multiple Markets
* The CAPACITY in which customer's IB or FSI is acting: As principal and/or making a market in this security, may have received a profit on this transaction.
  a. An officer of the IB or FSI may be affiliated with the issuer of the security shown herein.
  b. Commissions may be allocated among various corporate and or individual affiliates of the IB or FSI, including registered broker/dealer and registered investment advisor.
* Was unsolicited.

This security:
* Has an assigned industry standard identification number of 45567W109
* Has a standard trading symbol of IGDC

Additional Information:
* We make a market in this security.

Special Instructions:

**IT IS AGREED BETWEEN THE CUSTOMER ("CUSTOMER"), HIS/HER/ITS INTRODUCING BROKER ("IB") AND THE IB'S CLEARING FIRM ("NF CLEARING, INC." OR "NFC"):**

1. All transactions are subject to the rules, regulations, customs and usages of the exchange or market (and the clearing agency, if any) where executed and to any association whose rules and regulations govern transactions in that market and your account agreements with the IB and/or NFC. We will furnish, upon written request, the date and time when this transaction took place and the name of the other party to this transaction.

2. Any transaction executed in the over-the-counter market is subject to the Uniform Practice Code of the National Association of Securities Dealers, Inc. The name of the other broker or party and the time of execution will be furnished upon request.

3. Securities purchased on a cash or margin basis are or may be hypothecated under circumstances which will permit the commingling thereof with securities carried for other customers, but such securities, if hypothecated, will be withdrawn from hypothecation as soon as practicable after receipt of payment therefore.

4. If this transaction is a purchase by you in a cash account and sufficient funds are not already in your account with us, it is agreed that you will make full payment for the securities described on the face hereof promptly and not later than settlement date in accordance with the terms of this transaction and that you do not contemplate the sale of such securities prior to making such payment. If this transaction is a sale by you in a cash account and the securities described on the face herof are not already held in your account with us, we are acting upon your representation that you or your principals own such securities, and it is agreed that you will promptly and not later than the settlement date deposit such securities with us. If full payment for the securities purchased by you in the transaction is not received or if the securities sold by you are not delivered in proper form on or after the first trading day after settlement date, we may at our option cancel or otherwise liquidate this transaction without notice to you, and you will be liable for any resulting loss, including without limitation, all expenses, attorney's fees and other costs and interest incurred thereon.

5. If this transaction is a purchase by you in a margin account it is agreed that sufficient cash or acceptable collateral will be deposited on or before settlement date to satisfy applicable margin requirements.

6. Provision of agreements and contracts shall inure to the benefit of your IB, NFC, or to any successor to your IB or NFC.

7. The execution price for this security may reflect an odd-lot differential if the number of shares transacted is less than a round lot or if all of the shares transacted cannot be executed in round lot increments.

8. Call features may exist for bonds, which could affect yield. Complete information will be provided upon written request.

9. If this transaction involves an asset-backed security that represents an interest in, or is secured by a pool of receivables or other financial assets that are subject continuously to prepayment, then the actual yield of such security may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning the factors that affect yield (including at a minimum, estimated yield, weighted average life, and the prepayment assumptions of underlying yield) will be furnished upon your written request.

10. Zero coupon, Compound Interest and Multiplier Securities are callable below maturity value without notice by mail to holder unless registered.

11. If so noted on the front of the confirmation statement, our affiliate makes a market in this security, i.e., buying or selling for its own account on a continuous basis, and acted as principal in buying from or selling to you. NFC affiliate acting as market maker may discontinue the maintenance of such market at any time without notice. Your IB (if any) acted as your agent, charging you a commission for its service. Where this transaction is listed as executed by an NFC affiliate or a market maker, NFC or its affiliate acted in the capacity of specialist or market maker and filled the order at the inside market without mark-up or down. If average price transaction is indicated on the front of this confirmation statement, your IB or NFC may have acted as principal, agent or both on one or more exchanges, Details available through your IB.

12. NFC or IB receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. Such remuneration is considered compensation for NFC, and the source and amount of any compensation received by NFC in connection with your transaction will be disclosed upon request. Please contact your IB for a break down of any fees listed on this confirmation.

13. If this transaction is not entirely in accordance with Customer's understanding and directions, Customer must report any error or discrepancy within ten (10) days of receipt of this trade acknowledgement (confirmation) by forwarding a copy of this trade acknowledgement to the Compliance Officer at Customer's IB with the error noted. Otherwise, the transaction as stated on this trade acknowledgement shall be forever deemed to be correct and accepted by Customer.

14. Where your IB acted as agent or principal, NFC acted as clearing agent only.

# PENNALUNA & COMPANY

421 Sherman Avenue – Suite 203 • Coeur d'Alene, Idaho 83814
(800) 535-5329 (208) 667-7472

## TRANSACTION CONFIRMATION

## SELL

| Brokerage Account Registration | Brokerage Account Information |
|---|---|
| 6DA 04010720 000199 00000193 001/001 00000119<br>UNITED NATIVE DEPOSITORY CORP<br>ATTN DENI LEONARD CEO<br>100 BUSH ST STE #600<br>SAN FRANCISCO CA 94104 | Account #: [redacted]8132 Office: 6DA<br>Rep: 1657<br>MARK DILLON REDACTED |

### BROKERAGE ACCOUNT TRANSACTION DETAIL

You sold 10000 shares of INDIGENOUS GLOBAL DEVELOPMENT CORPORATION BB at a trade reported price of $.27 per share.

| TRADE AMOUNT | COMMISSION | ST. TAX/INTEREST | FEE | MISC. FEE | PST/HDL | NET AMOUNT |
|---|---|---|---|---|---|---|
| 2,700.00 | | | .09 | | | 2,699.91 |

| Trade Date: 01/10/2005 | Settle Date: 01/13/2005 | Transaction #: 00088546 |
|---|---|---|

**Additional Comments:**

Sufficient shares to cover this sale must be in your brokerage account by settlement date.
This sale will be settled in accordance with your account instructions.

This sell:
* The MARKET in which the transaction was executed: Over The Counter/Multiple Markets.
* The CAPACITY in which customer's IB or FSI is acting: As principal and/or making a market in this security, may have received a profit on this transaction.
  a. An officer of the IB or FSI may be affiliated with the issuer of the security shown herein.
  b. Commissions may be allocated among various corporate and or individual affiliates of the IB or FSI, including registered broker/dealer and registered investment advisor.
* Was unsolicited.

This security:
* Has an assigned industry standard identification number of 45567W109 .
* Has a standard trading symbol of IGDC .

Additional Information:
* We make a market in this security.

Special Instructions:

ACCOUNTS CARRIED WITH FISERV SECURITIES, INC. MEMBER NYSE/NASD/SIPC

Cat # ECSTMT

**IT IS AGREED BETWEEN THE CUSTOMER ("CUSTOMER"), HIS/HER/ITS INTRODUCING BROKER ("IB") AND THE IB'S CLEARING FIRM ("NF CLEARING, INC." OR "NFC"):**

1. All transactions are subject to the rules, regulations, customs and usages of the exchange or market (and the clearing agency, if any) where executed and to any association whose rules and regulations govern transactions in that market and your account agreements with the IB and/or NFC. We will furnish, upon written request, the date and time when this transaction took place and the name of the other party to this transaction.

2. Any transaction executed in the over-the-counter market is subject to the Uniform Practice Code of the National Association of Securities Dealers, Inc. The name of the other broker or party and the time of execution will be furnished upon request.

3. Securities purchased on a cash or margin basis are or may be hypothecated under circumstances which will permit the commingling thereof with securities carried for other customers, but such securities, if hypothecated, will be withdrawn from hypothecation as soon as practicable after receipt of payment therefore.

4. If this transaction is a purchase by you in a cash account and sufficient funds are not already in your account with us, it is agreed that you will make full payment for the securities described on the face hereof promptly and not later than settlement date in accordance with the terms of this transaction and that you do not contemplate the sale of such securities prior to making such payment. If this transaction is a sale by you in a cash account and the securities described on the face herof are not already held in your account with us, we are acting upon your representation that you or your principals own such securities, and it is agreed that you will promptly and not later than the settlement date deposit such securities with us. If full payment for the securities purchased by you in the transaction is not received or if the securities sold by you are not delivered in proper form on or after the first trading day after settlement date, we may at our option cancel or otherwise liquidate this transaction without notice to you, and you will be liable for any resulting loss, including without limitation, all expenses, attorney's fees and other costs and interest incurred thereon.

5. If this transaction is a purchase by you in a margin account it is agreed that sufficient cash or acceptable collateral will be deposited on or before settlement date to satisfy applicable margin requirements.

6. Provision of agreements and contracts shall inure to the benefit of your IB, NFC, or to any successor to your IB or NFC.

7. The execution price for this security may reflect an odd-lot differential if the number of shares transacted is less than a round lot or if all of the shares transacted cannot be executed in round lot increments.

8. Call features may exist for bonds, which could affect yield. Complete information will be provided upon written request.

9. If this transaction involves an asset-backed security that represents an interest in, or is secured by a pool of receivables or other financial assets that are subject continuously to prepayment, then the actual yield of such security may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning the factors that affect yield (including at a minimum estimated yield, weighted average life, and the prepayment assumptions of underlying yield) will be furnished upon your written request.

10. Zero coupon, Compound Interest and Multiplier Securities are callable below maturity value without notice by mail to holder unless registered.

11. If so noted on the front of the confirmation statement, our affiliate makes a market in this security, i.e., buying or selling for its own account on a continuous basis, and acted as principal in buying from or selling to you. NFC affiliate acting as market maker may discontinue the maintenance of such market at any time without notice. Your IB (if any) acted as your agent, charging you a commission for its service. Where this transaction is listed as executed by an NFC affiliate or a market maker, NFC or its affiliate acted in the capacity of specialist or market maker and filled the order at the inside market without mark-up or down. If average price transaction is indicated on the front of this confirmation statement, your IB or NFC may have acted as principal, agent or both on one or more exchanges. Details available through your IB.

12. NFC or IB receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. Such remuneration is considered compensation for NFC, and the source and amount of any compensation received by NFC in connection with your transaction will be disclosed upon request. Please contact your IB for a break down of any fees listed on this confirmation.

13. If this transaction is not entirely in accordance with Customer's understanding and directions, Customer must report any error or discrepancy within ten (10) days of receipt of this trade acknowledgement (confirmation) by forwarding a copy of this trade acknowledgement to the Compliance Officer at Customer's IB with the error noted. Otherwise, the transaction as stated on this trade acknowledgement shall be forever deemed to be correct and accepted by Customer.

14. Where your IB acted as agent or principal, NFC acted as clearing agent only.

# PENNALUNA & COMPANY

421 Sherman Avenue – Suite 203 • Coeur d'Alene, Idaho 83814
(800) 535-5329 (208) 667-7472

## TRANSACTION CONFIRMATION

## SELL

| Brokerage Account Registration | Brokerage Account Information |
|---|---|
| 6DA 04012336 000200 00000286 001/001 00000153<br>UNITED NATIVE DEPOSITORY CORP<br>ATTN DENI LEONARD CEO<br>100 BUSH ST STE #600<br>SAN FRANCISCO CA 94104 | Account #: [redacted]8132 Office: 6DA<br>Rep: 1657<br>MARK DILLON REDACTED |

### BROKERAGE ACCOUNT TRANSACTION DETAIL

You sold 19000 shares of INDIGENOUS GLOBAL DEVELOPMENT CORPORATION BB at a trade reported price of $ .265 per share.

| TRADE AMOUNT | COMMISSION | ST. TAX/INTEREST | FEE | MISC. FEE | PST/HDL | NET AMOUNT |
|---|---|---|---|---|---|---|
| 5,035.00 | | | | .17 | | 5,034.83 |

| Trade Date: 01/12/2005 | Settle Date: 01/18/2005 | Transaction #: 00065194 |
|---|---|---|

**Additional Comments:**

Sufficient shares to cover this sale must be in your brokerage account by settlement date.
This sale will be settled in accordance with your account instructions.

This sell:
* The MARKET in which the transaction was executed: Over The Counter/Multiple Markets
* The CAPACITY in which customer's IB or FSI is acting: As principal and/or making a market in this security, may have received a profit on this transaction.
  a. An officer of the IB or FSI may be affiliated with the issuer of the security shown herein.
  b. Commissions may be allocated among various corporate and or individual affiliates of the IB or FSI, including registered broker/dealer and registered investment advisor.
* Was unsolicited.

This security:
* Has an assigned industry standard identification number of 45567W109.
* Has a standard trading symbol of IGDC.

Additional Information:
* We make a market in this security.

Special Instructions:

ACCOUNTS CARRIED WITH FISERV SECURITIES, INC. MEMBER NYSE/NASD/SIPC

CM # ECSTMT

**IT IS AGREED BETWEEN THE CUSTOMER ("CUSTOMER"), HIS/HER/ITS INTRODUCING BROKER ("IB") AND THE IB'S CLEARING FIRM ("NF CLEARING, INC." OR "NFC"):**

1. All transactions are subject to the rules, regulations, customs and usages of the exchange or market (and the clearing agency, if any) where executed and to any association whose rules and regulations govern transactions in that market and your account agreements with the IB and/or NFC. We will furnish, upon written request, the date and time when this transaction took place and the name of the other party to this transaction.

2. Any transaction executed in the over-the-counter market is subject to the Uniform Practice Code of the National Association of Securities Dealers, Inc. The name of the other broker or party and the time of execution will be furnished upon request.

3. Securities purchased on a cash or margin basis are or may be hypothecated under circumstances which will permit the commingling thereof with securities carried for other customers, but such securities, if hypothecated, will be withdrawn from hypothecation as soon as practicable after receipt of payment therefore.

4. If this transaction is a purchase by you in a cash account and sufficient funds are not already in your account with us, it is agreed that you will make full payment for the securities described on the face hereof promptly and not later than settlement date in accordance with the terms of this transaction and that you do not contemplate the sale of such securities prior to making such payment. If this transaction is a sale by you in a cash account and the securities described on the face herof are not already held in your account with us, we are acting upon your representation that you or your principals own such securities, and it is agreed that you will promptly and not later than the settlement date deposit such securities with us. If full payment for the securities purchased by you in the transaction is not received or if the securities sold by you are not delivered in proper form on or after the first trading day after settlement date, we may at our option cancel or otherwise liquidate this transaction without notice to you, and you will be liable for any resulting loss, including without limitation, all expenses, attorney's fees and other costs and interest incurred thereon.

5. If this transaction is a purchase by you in a margin account it is agreed that sufficient cash or acceptable collateral will be deposited on or before settlement date to satisfy applicable margin requirements.

6. Provision of agreements and contracts shall inure to the benefit of your IB, NFC, or to any successor to your IB or NFC.

7. The execution price for this security may reflect an odd-lot differential if the number of shares transacted is less than a round lot or if all of the shares transacted cannot be executed in round lot increments.

8. Call features may exist for bonds, which could affect yield. Complete information will be provided upon written request.

9. If this transaction involves an asset-backed security that represents an interest in, or is secured by a pool of receivables or other financial assets that are subject continuously to prepayment, then the actual yield of such security may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning the factors that affect yield (including at a minimum estimated yield, weighted average life, and the prepayment assumptions of underlying yield) will be furnished upon your written request.

10. Zero coupon, Compound Interest and Multiplier Securities are callable below maturity value without notice by mail to holder unless registered.

11. If so noted on the front of the confirmation statement, our affiliate makes a market in this security, i.e., buying or selling for its own account on a continuous basis, and acted as principal in buying from or selling to you. NFC affiliate acting as market maker may discontinue the maintenance of such market at any time without notice. Your IB (if any) acted as your agent, charging you a commission for its service. Where this transaction is listed as executed by an NFC affiliate or a market maker, NFC or its affiliate acted in the capacity of specialist or market maker and filled the order at the inside market without mark-up or down. If average price transaction is indicated on the front of this confirmation statement, your IB or NFC may have acted as principal, agent or both on one or more exchanges, Details available through your IB.

12. NFC or IB receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. Such remuneration is considered compensation for NFC, and the source and amount of any compensation received by NFC in connection with your transaction will be disclosed upon request. Please contact your IB for a break down of any fees listed on this confirmation.

13. If this transaction is not entirely in accordance with Customer's understanding and directions, Customer must report any error or discrepancy within ten (10) days of receipt of this trade acknowledgement (confirmation) by forwarding a copy of this trade acknowledgement to the Compliance Officer at Customer's IB with the error noted. Otherwise, the transaction as stated on this trade acknowledgement shall be forever deemed to be correct and accepted by Customer.

14. Where your IB acted as agent or principal, NFC acted as clearing agent only.

# PENNALUNA & COMPANY

421 Sherman Avenue — Suite 203 • Coeur d'Alene, Idaho 83814
(800) 535-5329 (208) 667-7472

# TRANSACTION CONFIRMATION

# SELL

| Brokerage Account Registration | Brokerage Account Information |
|---|---|
| 6DA 04014128 000219 00000210 001/001 00000131<br>UNITED NATIVE DEPOSITORY CORP<br>ATTN DENI LEONARD CEO<br>100 BUSH ST STE #600<br>SAN FRANCISCO CA 94104 | Account #: [redacted]132 Office : 6DA<br>Rep : 1657<br>MARK DILLON REDACTED |

## BROKERAGE ACCOUNT TRANSACTION DETAIL

You sold 10000 shares of INDIGENOUS GLOBAL DEVELOPMENT CORPORATION BB at a trade reported price of $ .30 per share.

| TRADE AMOUNT | COMMISSION | ST. TAX/INTEREST | FEE | MISC. FEE | PST\HDL | NET AMOUNT |
|---|---|---|---|---|---|---|
| 3,000.00 | | | .10 | | | 2,999.90 |

| Trade Date: 01/14/2005 | Settle Date: 01/20/2005 | Transaction #: 00050774 |
|---|---|---|

**Additional Comments:**

Sufficient shares to cover this sale must be in your brokerage account by settlement date.
This sale will be settled in accordance with your account instructions.

This sell:
* The MARKET in which the transaction was executed: Over The Counter/Multiple Markets
* The CAPACITY in which customer's IB or FSI is acting: As principal and/or making a market in this security, may have received a profit on this transaction.
  a. An officer of the IB or FSI may be affiliated with the issuer of the security shown herein.
  b. Commissions may be allocated among various corporate and or individual affiliates of the IB or FSI, including registered broker/dealer and registered investment advisor.
* Was unsolicited.

This security:
* Has an assigned industry standard identification number of 45567W109 .
* Has a standard trading symbol of IGDC .

Additional Information:
* We make a market in this security.

Special Instructions:

ACCOUNTS CARRIED WITH FISERV SECURITIES, INC. MEMBER NYSE/NASD/SIPC

C# ECSTMT

**IT IS AGREED BETWEEN THE CUSTOMER ("CUSTOMER"), HIS/HER/ITS INTRODUCING BROKER ("IB") AND THE IB'S CLEARING FIRM ("NF CLEARING, INC." OR "NFC"):**

1. All transactions are subject to the rules, regulations, customs and usages of the exchange or market (and the clearing agency, if any) where executed and to any association whose rules and regulations govern transactions in that market and your account agreements with the IB and/or NFC. We will furnish, upon written request, the date and time when this transaction took place and the name of the other party to this transaction.

2. Any transaction executed in the over-the-counter market is subject to the Uniform Practice Code of the National Association of Securities Dealers, Inc. The name of the other broker or party and the time of execution will be furnished upon request.

3. Securities purchased on a cash or margin basis are or may be hypothecated under circumstances which will permit the commingling thereof with securities carried for other customers, but such securities, if hypothecated, will be withdrawn from hypothecation as soon as practicable after receipt of payment therefore.

4. If this transaction is a purchase by you in a cash account and sufficient funds are not already in your account with us, it is agreed that you will make full payment for the securities described on the face hereof promptly and not later than settlement date in accordance with the terms of this transaction and that you do not contemplate the sale of such securities prior to making such payment. If this transaction is a sale by you in a cash account and the securities described on the face herof are not already held in your account with us, we are acting upon your representation that you or your principals own such securities, and it is agreed that you will promptly and not later than the settlement date deposit such securities with us. If full payment for the securities purchased by you in the transaction is not received or if the securities sold by you are not delivered in proper form on or after the first trading day after settlement date, we may at our option cancel or otherwise liquidate this transaction without notice to you, and you will be liable for any resulting loss, including without limitation, all expenses, attorney's fees and other costs and interest incurred thereon.

5. If this transaction is a purchase by you in a margin account it is agreed that sufficient cash or acceptable collateral will be deposited on or before settlement date to satisfy applicable margin requirements.

6. Provision of agreements and contracts shall inure to the benefit of your IB, NFC, or to any successor to your IB or NFC.

7. The execution price for this security may reflect an odd-lot differential if the number of shares transacted is less than a round lot or if all of the shares transacted cannot be executed in round lot increments.

8. Call features may exist for bonds, which could affect yield. Complete information will be provided upon written request.

9. If this transaction involves an asset-backed security that represents an interest in, or is secured by a pool of receivables or other financial assets that are subject continuously to prepayment, then the actual yield of such security may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning the factors that affect yield (including at a minimum estimated yield, weighted average life, and the prepayment assumptions of underlying yield) will be furnished upon your written request.

10. Zero coupon, Compound Interest and Multiplier Securities are callable below maturity value without notice by mail to holder unless registered.

11. If so noted on the front of the confirmation statement, our affiliate makes a market in this security, i.e., buying or selling for its own account on a continuous basis, and acted as principal in buying from or selling to you. NFC affiliate acting as market maker may discontinue the maintenance of such market at any time without notice. Your IB (if any) acted as your agent, charging you a commission for its service. Where this transaction is listed as executed by an NFC affiliate or a market maker, NFC or its affiliate acted in the capacity of specialist or market maker and filled the order at the inside market without mark-up or down. If average price transaction is indicated on the front of this confirmation statement, your IB or NFC may have acted as principal, agent or both on one or more exchanges, Details available through your IB.

12. NFC or IB receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. Such remuneration is considered compensation for NFC, and the source and amount of any compensation received by NFC in connection with your transaction will be disclosed upon request. Please contact your IB for a break down of any fees listed on this confirmation.

13. If this transaction is not entirely in accordance with Customer's understanding and directions, Customer must report any error or discrepancy within ten (10) days of receipt of this trade acknowledgement (confirmation) by forwarding a copy of this trade acknowledgement to the Compliance Officer at Customer's IB with the error noted. Otherwise, the transaction as stated on this trade acknowledgement shall be forever deemed to be correct and accepted by Customer.

14. Where your IB acted as agent or principal, NFC acted as clearing agent only.

PENNALUNA & COMPANY
421 Sherman Avenue — Suite 203 • Coeur d'Alene, Idaho 83814
(800) 535-5329 (208) 667-7472

# TRANSACTION CONFIRMATION

# SELL

| Brokerage Account Registration | Brokerage Account Information |
|---|---|
| 6DA 04140202 000243 00000239 001/001 00000136<br>UNITED NATIVE DEPOSITORY CORP<br>ATTN DENI LEONARD CEO<br>100 BUSH ST STE #600<br>SAN FRANCISCO CA 94104 | Account #: [redacted]132 Office: 6DA<br>Rep: J1657<br>MARK DILLON |

## BROKERAGE ACCOUNT TRANSACTION DETAIL

You sold 10000 shares of INDIGENOUS GLOBAL DEVELOPMENT CORPORATION BB at a trade reported price of $.19 per share.

| TRADE AMOUNT | COMMISSION | ST. TAX/INTEREST | FEE | MISC FEE | PST\HDL | NET AMOUNT |
|---|---|---|---|---|---|---|
| 1,900.00 | | | .07 | | | 1,899.93 |

| Trade Date: 03/08/2005 | Settle Date: 03/11/2005 | Transaction #: 00052506 |
|---|---|---|

**Additional Comments:**

Sufficient shares to cover this sale must be in your brokerage account by settlement date.
This sale will be settled in accordance with your account instructions.

This sell:
* The MARKET in which the transaction was executed: Over The Counter/Multiple Markets
* The CAPACITY in which customer's IB or FSI is acting: As principal and/or making a market in this security, may have received a profit on this transaction.
  a. An officer of the IB or FSI may be affiliated with the issuer of the security shown herein.
  b. Commissions may be allocated among various corporate and or individual affiliates of the IB or FSI, including registered broker/dealer and registered investment advisor.
* Was unsolicited.

This security:
* Has an assigned industry standard identification number of 45567W109.
* Has a standard trading symbol of IGDCE.

Additional Information:
* We make a market in this security.

Special Instructions:

**IT IS AGREED BETWEEN THE CUSTOMER ("CUSTOMER"), HIS/HER/ITS INTRODUCING BROKER ("IB") AND THE IB'S CLEARING FIRM ("NF CLEARING, INC." OR "NFC"):**

1. All transactions are subject to the rules, regulations, customs and usages of the exchange or market (and the clearing agency, if any) where executed and to any association whose rules and regulations govern transactions in that market and your account agreements with the IB and/or NFC. We will furnish, upon written request, the date and time when this transaction took place and the name of the other party to this transaction.

2. Any transaction executed in the over-the-counter market is subject to the Uniform Practice Code of the National Association of Securities Dealers, Inc. The name of the other broker or party and the time of execution will be furnished upon request.

3. Securities purchased on a cash or margin basis are or may be hypothecated under circumstances which will permit the commingling thereof with securities carried for other customers, but such securities, if hypothecated, will be withdrawn from hypothecation as soon as practicable after receipt of payment therefore.

4. If this transaction is a purchase by you in a cash account and sufficient funds are not already in your account with us, it is agreed that you will make full payment for the securities described on the face hereof promptly and not later than settlement date in accordance with the terms of this transaction and that you do not contemplate the sale of such securities prior to making such payment. If this transaction is a sale by you in a cash account and the securities described on the face herof are not already held in your account with us, we are acting upon your representation that you or your principals own such securities, and it is agreed that you will promptly and not later than the settlement date deposit such securities with us. If full payment for the securities purchased by you in the transaction is not received or if the securities sold by you are not delivered in proper form on or after the first trading day after settlement date, we may at our option cancel or otherwise liquidate this transaction without notice to you, and you will be liable for any resulting loss, including without limitation, all expenses, attorney's fees and other costs and interest incurred thereon.

5. If this transaction is a purchase by you in a margin account it is agreed that sufficient cash or acceptable collateral will be deposited on or before settlement date to satisfy applicable margin requirements.

6. Provision of agreements and contracts shall inure to the benefit of your IB, NFC, or to any successor to your IB or NFC.

7. The execution price for this security may reflect an odd-lot differential if the number of shares transacted is less than a round lot or if all of the shares transacted cannot be executed in round lot increments.

8. Call features may exist for bonds, which could affect yield. Complete information will be provided upon written request.

9. If this transaction involves an asset-backed security that represents an interest in, or is secured by a pool of receivables or other financial assets that are subject continuously to prepayment, then the actual yield of such security may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning the factors that affect yield (including at a minimum estimated yield, weighted average life, and the prepayment assumptions of underlying yield) will be furnished upon your written request.

10. Zero coupon, Compound Interest and Multiplier Securities are callable below maturity value without notice by mail to holder unless registered.

11. If so noted on the front of the confirmation statement, our affiliate makes a market in this security, i.e., buying or selling for its own account on a continuous basis, and acted as principal in buying from or selling to you. NFC affiliate acting as market maker may discontinue the maintenance of such market at any time without notice. Your IB (if any) acted as your agent, charging you a commission for its service. Where this transaction is listed as executed by an NFC affiliate or a market maker, NFC or its affiliate acted in the capacity of specialist or market maker and filled the order at the inside market without mark-up or down. If average price transaction is indicated on the front of this confirmation statement, your IB or NFC may have acted as principal, agent or both on one or more exchanges. Details available through your IB.

12. NFC or IB receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. Such remuneration is considered compensation for NFC, and the source and amount of any compensation received by NFC in connection with your transaction will be disclosed upon request. Please contact your IB for a break down of any fees listed on this confirmation.

13. If this transaction is not entirely in accordance with Customer's understanding and directions, Customer must report any error or discrepancy within ten (10) days of receipt of this trade acknowledgement (confirmation) by forwarding a copy of this trade acknowledgement to the Compliance Officer at Customer's IB with the error noted. Otherwise, the transaction as stated on this trade acknowledgement shall be forever deemed to be correct and accepted by Customer.

14. Where your IB acted as agent or principal, NFC acted as clearing agent only.

PENNALUNA & COMPANY
421 Sherman Avenue – Suite 203 • Coeur d'Alene, Idaho 83814
(800) 535-5329 (208) 667-7472

# TRANSACTION CONFIRMATION

# SELL

| Brokerage Account Registration | Brokerage Account Information |
|---|---|
| 6DA 04154193 000157 00000156 001/002 00000096<br>UNITED NATIVE DEPOSITORY CORP<br>ATTN DENI LEONARD CEO<br>100 BUSH ST STE #600<br>SAN FRANCISCO CA 94104 | Account #: [redacted]8132 Office : 6DA<br>Rep : 1657<br>MARK DILLON<br>REDACTED |

## BROKERAGE ACCOUNT TRANSACTION DETAIL

You sold 20000 shares of INDIGENOUS GLOBAL DEVELOPMENT CORPORATION BB at a trade reported price of $ .175 per share.

| TRADE AMOUNT | COMMISSION | ST. TAX/INTEREST | FEE | MISC. FEE | PST.HDL. | NET AMOUNT |
|---|---|---|---|---|---|---|
| 3,500.00 | | | .12 | | | 3,499.88 |

| Trade Date: 03/29/2005 | Settle Date: 04/01/2005 | Transaction #: 00084246 |
|---|---|---|

Additional Comments:

Sufficient shares to cover this sale must be in your brokerage account by settlement date.
This sale will be settled in accordance with your account instructions.

This sell:
* The MARKET in which the transaction was executed: Over The Counter/Multiple Markets
* The CAPACITY in which customer's IB or FSI is acting: As principal and/or making a market in this security, may have received a profit on this transaction.
  a. An officer of the IB or FSI may be affiliated with the issuer of the security shown herein.
  b. Commissions may be allocated among various corporate and or individual affiliates of the IB or FSI, including registered broker/dealer and registered investment advisor.
* Was unsolicited.

This security:
* Has an assigned industry standard identification number of 45567W109 .
* Has a standard trading symbol of IGDCE .

Additional Information:
* We make a market in this security.

Special Instructions:

**IT IS AGREED BETWEEN THE CUSTOMER ("CUSTOMER"), HIS/HER/ITS INTRODUCING BROKER ("IB") AND THE IB'S CLEARING FIRM ("NF CLEARING, INC." OR "NFC"):**

1. All transactions are subject to the rules, regulations, customs and usages of the exchange or market (and the clearing agency, if any) where executed and to any association whose rules and regulations govern transactions in that market and your account agreements with the IB and/or NFC. We will furnish, upon written request, the date and time when this transaction took place and the name of the other party to this transaction.

2. Any transaction executed in the over-the-counter market is subject to the Uniform Practice Code of the National Association of Securities Dealers, Inc. The name of the other broker or party and the time of execution will be furnished upon request.

3. Securities purchased on a cash or margin basis are or may be hypothecated under circumstances which will permit the commingling thereof with securities carried for other customers, but such securities, if hypothecated, will be withdrawn from hypothecation as soon as practicable after receipt of payment therefore.

4. If this transaction is a purchase by you in a cash account and sufficient funds are not already in your account with us, it is agreed that you will make full payment for the securities described on the face hereof promptly and not later than settlement date in accordance with the terms of this transaction and that you do not contemplate the sale of such securities prior to making such payment. If this transaction is a sale by you in a cash account and the securities described on the face herof are not already held in your account with us, we are acting upon your representation that you or your principals own such securities, and it is agreed that you will promptly and not later than the settlement date deposit such securities with us. If full payment for the securities purchased by you in the transaction is not received or if the securities sold by you are not delivered in proper form on or after the first trading day after settlement date, we may at our option cancel or otherwise liquidate this transaction without notice to you, and you will be liable for any resulting loss, including without limitation, all expenses, attorney's fees and other costs and interest incurred thereon.

5. If this transaction is a purchase by you in a margin account it is agreed that sufficient cash or acceptable collateral will be deposited on or before settlement date to satisfy applicable margin requirements.

6. Provision of agreements and contracts shall inure to the benefit of your IB, NFC, or to any successor to your IB or NFC.

7. The execution price for this security may reflect an odd-lot differential if the number of shares transacted is less than a round lot or if all of the shares transacted cannot be executed in round lot increments.

8. Call features may exist for bonds, which could affect yield. Complete information will be provided upon written request.

9. If this transaction involves an asset-backed security that represents an interest in, or is secured by a pool of receivables or other financial assets that are subject continuously to prepayment, then the actual yield of such security may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning the factors that affect yield (including at a minimum estimated yield, weighted average life, and the prepayment assumptions of underlying yield) will be furnished upon your written request.

10. Zero coupon, Compound Interest and Multiplier Securities are callable below maturity value without notice by mail to holder unless registered.

11. If so noted on the front of the confirmation statement, our affiliate makes a market in this security, i.e., buying or selling for its own account on a continuous basis, and acted as principal in buying from or selling to you. NFC affiliate acting as market maker may discontinue the maintenance of such market at any time without notice. Your IB (if any) acted as your agent, charging you a commission for its service. Where this transaction is listed as executed by an NFC affiliate or a market maker, NFC or its affiliate acted in the capacity of specialist or market maker and filled the order at the inside market without mark-up or down. If average price transaction is indicated on the front of this confirmation statement, your IB or NFC may have acted as principal, agent or both on one or more exchanges, Details available through your IB.

12. NFC or IB receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. Such remuneration is considered compensation for NFC, and the source and amount of any compensation received by NFC in connection with your transaction will be disclosed upon request. Please contact your IB for a break down of any fees listed on this confirmation.

13. If this transaction is not entirely in accordance with Customer's understanding and directions, Customer must report any error or discrepancy within ten (10) days of receipt of this trade acknowledgement (confirmation) by forwarding a copy of this trade acknowledgement to the Compliance Officer at Customer's IB with the error noted. Otherwise, the transaction as stated on this trade acknowledgement shall be forever deemed to be correct and accepted by Customer.

14. Where your IB acted as agent or principal, NFC acted as clearing agent only.

PENNALUNA & COMPANY
421 Sherman Avenue — Suite 203 • Coeur d'Alene, Idaho 83814
(800) 535-5329 (208) 667-7472

# TRANSACTION CONFIRMATION

# SELL

| Brokerage Account Registration | Brokerage Account Information |
|---|---|
| 6DA 04163845 000176 00000170 001/001 00000103<br>UNITED NATIVE DEPOSITORY CORP<br>ATTN DENI LEONARD CEO<br>100 BUSH ST STE #600<br>SAN FRANCISCO CA 94104 | Account #: [redacted]8132 Office : 6DA<br>Rep : 1657<br>MARK DILLON REDACTED |

## BROKERAGE ACCOUNT TRANSACTION DETAIL

You sold 5000 shares of INDIGENOUS GLOBAL DEVELOPMENT CORPORATION BB at a trade reported price of $.161 per share.

| TRADE AMOUNT | COMMISSION | ST. TAX/INTEREST | FEE | MISC. FEE | PST\HDL | NET AMOUNT |
|---|---|---|---|---|---|---|
| 805.00 | | | .04 | | | 804.96 |

| Trade Date: 04/08/2005 | Settle Date: 04/13/2005 | Transaction #: 00065237 |
|---|---|---|

**Additional Comments:**

Sufficient shares to cover this sale must be in your brokerage account by settlement date.
This sale will be settled in accordance with your account instructions.

This sell:
- The MARKET in which the transaction was executed: Over The Counter/Multiple Markets
- The CAPACITY in which customer's IB or FSI is acting: As principal and/or making a market in this security, may have received a profit on this transaction.
  a. An officer of the IB or FSI may be affiliated with the issuer of the security shown herein.
  b. Commissions may be allocated among various corporate and or individual affiliates of the IB or FSI, including registered broker/dealer and registered investment advisor.
- Was unsolicited.

This security:
- Has an assigned industry standard identification number of 45567W109 .
- Has a standard trading symbol of IGDCE .

Additional Information:
- We make a market in this security.

Please remit payment to: Fiserv Securities, One Commerce Square, 2005 Market Street, Philadelphia, PA 19103

Special Instructions:

**IT IS AGREED BETWEEN THE CUSTOMER ("CUSTOMER"), HIS/HER/ITS INTRODUCING BROKER ("IB") AND THE IB'S CLEARING FIRM ("NF CLEARING, INC." OR "NFC"):**

1. All transactions are subject to the rules, regulations, customs and usages of the exchange or market (and the clearing agency, if any) where executed and to any association whose rules and regulations govern transactions in that market and your account agreements with the IB and/or NFC. We will furnish, upon written request, the date and time when this transaction took place and the name of the other party to this transaction.

2. Any transaction executed in the over-the-counter market is subject to the Uniform Practice Code of the National Association of Securities Dealers, Inc. The name of the other broker or party and the time of execution will be furnished upon request.

3. Securities purchased on a cash or margin basis are or may be hypothecated under circumstances which will permit the commingling thereof with securities carried for other customers, but such securities, if hypothecated, will be withdrawn from hypothecation as soon as practicable after receipt of payment therefore.

4. If this transaction is a purchase by you in a cash account and sufficient funds are not already in your account with us, it is agreed that you will make full payment for the securities described on the face hereof promptly and not later than settlement date in accordance with the terms of this transaction and that you do not contemplate the sale of such securities prior to making such payment. If this transaction is a sale by you in a cash account and the securities described on the face herof are not already held in your account with us, we are acting upon your representation that you or your principals own such securities, and it is agreed that you will promptly and not later than the settlement date deposit such securities with us. If full payment for the securities purchased by you in the transaction is not received or if the securities sold by you are not delivered in proper form on or after the first trading day after settlement date, we may at our option cancel or otherwise liquidate this transaction without notice to you, and you will be liable for any resulting loss, including without limitation, all expenses, attorney's fees and other costs and interest incurred thereon.

5. If this transaction is a purchase by you in a margin account it is agreed that sufficient cash or acceptable collateral will be deposited on or before settlement date to satisfy applicable margin requirements.

6. Provision of agreements and contracts shall inure to the benefit of your IB, NFC, or to any successor to your IB or NFC.

7. The execution price for this security may reflect an odd-lot differential if the number of shares transacted is less than a round lot or if all of the shares transacted cannot be executed in round lot increments.

8. Call features may exist for bonds, which could affect yield. Complete information will be provided upon written request.

9. If this transaction involves an asset-backed security that represents an interest in, or is secured by a pool of receivables or other financial assets that are subject continuously to prepayment, then the actual yield of such security may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning the factors that affect yield (including at a minimum estimated yield, weighted average life, and the prepayment assumptions of underlying yield) will be furnished upon your written request.

10. Zero coupon, Compound Interest and Multiplier Securities are callable below maturity value without notice by mail to holder unless registered.

11. If so noted on the front of the confirmation statement, our affiliate makes a market in this security, i.e., buying or selling for its own account on a continuous basis, and acted as principal in buying from or selling to you. NFC affiliate acting as market maker may discontinue the maintenance of such market at any time without notice. Your IB (if any) acted as your agent, charging you a commission for its service. Where this transaction is listed as executed by an NFC affiliate or a market maker, NFC or its affiliate acted in the capacity of specialist or market maker and filled the order at the inside market without mark-up or down. If average price transaction is indicated on the front of this confirmation statement, your IB or NFC may have acted as principal, agent or both on one or more exchanges, Details available through your IB.

12. NFC or IB receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. Such remuneration is considered compensation for NFC, and the source and amount of any compensation received by NFC in connection with your transaction will be disclosed upon request. Please contact your IB for a break down of any fees listed on this confirmation.

13. If this transaction is not entirely in accordance with Customer's understanding and directions, Customer must report any error or discrepancy within ten (10) days of receipt of this trade acknowledgement (confirmation) by forwarding a copy of this trade acknowledgement to the Compliance Officer at Customer's IB with the error noted. Otherwise, the transaction as stated on this trade acknowledgement shall be forever deemed to be correct and accepted by Customer.

14. Where your IB acted as agent or principal, NFC acted as clearing agent only.

# PENNALUNA & COMPANY

421 Sherman Avenue — Suite 203 • Coeur d'Alene, Idaho 83814
(800) 535-5329 (208) 667-7472

## TRANSACTION CONFIRMATION

## SELL

**Brokerage Account Registration**

6DA 04174637 000163 00000163 001/001 00000088

UNITED NATIVE DEPOSITORY CORP
ATTN DENI LEONARD CEO
100 BUSH ST STE #600
SAN FRANCISCO CA 94104

**Brokerage Account Information**

Account #: [redacted]8132 Office : 6DA
Rep : 1657

MARK DILLON

REDACTED

**BROKERAGE ACCOUNT TRANSACTION DETAIL**

You sold 15000 shares of INDIGENOUS GLOBAL DEVELOPMENT CORPORATION BB at a trade reported price of $ .185 per share.

| TRADE AMOUNT | COMMISSION | ST. TAX/INTEREST | FEE | MISC. FEE | PST\HDL | NET AMOUNT |
|---|---|---|---|---|---|---|
| 2,775.00 | | | .12 | | | 2,774.88 |

| Trade Date: 04/22/2005 | Settle Date: 04/27/2005 | Transaction #: 00014583 |
|---|---|---|

Additional Comments:

Sufficient shares to cover this sale must be in your brokerage account by settlement date.
This sale will be settled in accordance with your account instructions.

This sell:
* The MARKET in which the transaction was executed: Over The Counter/Multiple Markets
* The CAPACITY in which customer's IB or FSI is acting: As principal and/or making a market in this security, may have received a profit on this transaction.
  a. An officer of the IB or FSI may be affiliated with the issuer of the security shown herein.
  b. Commissions may be allocated among various corporate and or individual affiliates of the IB or FSI, including registered broker/dealer and registered investment advisor.
* Was unsolicited.

This security:
* Has an assigned industry standard identification number of 45567W109 .
* Has a standard trading symbol of IGDC .

Additional Information:
* We make a market in this security.
Please remit payment to: Fiserv Securities, One Commerce Square, 2005 Market Street, Philadelphia, PA 19103

Special Instructions:

**IT IS AGREED BETWEEN THE CUSTOMER ("CUSTOMER"), HIS/HER/ITS INTRODUCING BROKER ("IB") AND THE IB'S CLEARING FIRM ("NF CLEARING, INC." OR "NFC"):**

1. All transactions are subject to the rules, regulations, customs and usages of the exchange or market (and the clearing agency, if any) where executed and to any association whose rules and regulations govern transactions in that market and your account agreements with the IB and/or NFC. We will furnish, upon written request, the date and time when this transaction took place and the name of the other party to this transaction.

2. Any transaction executed in the over-the-counter market is subject to the Uniform Practice Code of the National Association of Securities Dealers, Inc. The name of the other broker or party and the time of execution will be furnished upon request.

3. Securities purchased on a cash or margin basis are or may be hypothecated under circumstances which will permit the commingling thereof with securities carried for other customers, but such securities, if hypothecated, will be withdrawn from hypothecation as soon as practicable after receipt of payment therefore.

4. If this transaction is a purchase by you in a cash account and sufficient funds are not already in your account with us, it is agreed that you will make full payment for the securities described on the face hereof promptly and not later than settlement date in accordance with the terms of this transaction and that you do not contemplate the sale of such securities prior to making such payment. If this transaction is a sale by you in a cash account and the securities described on the face herof are not already held in your account with us, we are acting upon your representation that you or your principals own such securities, and it is agreed that you will promptly and not later than the settlement date deposit such securities with us. If full payment for the securities purchased by you in the transaction is not received or if the securities sold by you are not delivered in proper form on or after the first trading day after settlement date, we may at our option cancel or otherwise liquidate this transaction without notice to you, and you will be liable for any resulting loss, including without limitation, all expenses, attorney's fees and other costs and interest incurred thereon.

5. If this transaction is a purchase by you in a margin account it is agreed that sufficient cash or acceptable collateral will be deposited on or before settlement date to satisfy applicable margin requirements.

6. Provision of agreements and contracts shall inure to the benefit of your IB, NFC, or to any successor to your IB or NFC.

7. The execution price for this security may reflect an odd-lot differential if the number of shares transacted is less than a round lot or if all of the shares transacted cannot be executed in round lot increments.

8. Call features may exist for bonds, which could affect yield. Complete information will be provided upon written request.

9. If this transaction involves an asset-backed security that represents an interest in, or is secured by a pool of receivables or other financial assets that are subject continuously to prepayment, then the actual yield of such security may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning the factors that affect yield (including at a minimum estimated yield, weighted average life, and the prepayment assumptions of underlying yield) will be furnished upon your written request.

10. Zero coupon, Compound Interest and Multiplier Securities are callable below maturity value without notice by mail to holder unless registered.

11. If so noted on the front of the confirmation statement, our affiliate makes a market in this security, i.e., buying or selling for its own account on a continuous basis, and acted as principal in buying from or selling to you. NFC affiliate acting as market maker may discontinue the maintenance of such market at any time without notice. Your IB (if any) acted as your agent, charging you a commission for its service. Where this transaction is listed as executed by an NFC affiliate or a market maker, NFC or its affiliate acted in the capacity of specialist or market maker and filled the order at the inside market without mark-up or down. If average price transaction is indicated on the front of this confirmation statement, your IB or NFC may have acted as principal, agent or both on one or more exchanges, Details available through your IB.

12. NFC or IB receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. Such remuneration is considered compensation for NFC, and the source and amount of any compensation received by NFC in connection with your transaction will be disclosed upon request. Please contact your IB for a break down of any fees listed on this confirmation.

13. If this transaction is not entirely in accordance with Customer's understanding and directions, Customer must report any error or discrepancy within ten (10) days of receipt of this trade acknowledgement (confirmation) by forwarding a copy of this trade acknowledgement to the Compliance Officer at Customer's IB with the error noted. Otherwise, the transaction as stated on this trade acknowledgement shall be forever deemed to be correct and accepted by Customer.

14. Where your IB acted as agent or principal, NFC acted as clearing agent only.

PENNALUNA & COMPANY
421 Sherman Avenue – Suite 203 • Coeur d'Alene, Idaho 83814
(800) 535-5329 (208) 667-7472

# TRANSACTION CONFIRMATION

# SELL

| Brokerage Account Registration | Brokerage Account Information |
|---|---|
| 6DA 04183916 000206 00000200 001/001 00000107<br>UNITED NATIVE DEPOSITORY CORP<br>ATTN DENI LEONARD CEO<br>100 BUSH ST STE #600<br>SAN FRANCISCO CA 94104 | Account # [redacted]8132 Office 6DA<br>Rep 1657<br>MARK DILLON REDACTED |

## BROKERAGE ACCOUNT TRANSACTION DETAIL

You sold 22000 shares of INDIGENOUS GLOBAL DEVELOPMENT CORPORATION BB at a trade reported price of $ .152 per share.

| TRADE AMOUNT | COMMISSION | ST. TAX/INTEREST | FEE | MISC. FEE | PST\HDL | NET AMOUNT |
|---|---|---|---|---|---|---|
| 3,344.00 | | | .14 | | | 3,343.86 |

| Trade Date: 05/05/2005 | Settle Date: 05/10/2005 | Transaction #: 00074285 |
|---|---|---|

Additional Comments:

Sufficient shares to cover this sale must be in your brokerage account by settlement date.
This sale will be settled in accordance with your account instructions.

This sell:
* The MARKET in which the transaction was executed:
  Over The Counter/Multiple Markets
* The CAPACITY in which customer's IB or FSI is acting:
  As principal and/or making a market in this security, may have received a profit on this transaction.
  a. An officer of the IB or FSI may be affiliated with the issuer of the security shown herein.
  b. Commissions may be allocated among various corporate and or individual affiliates of the IB or FSI, including registered broker/dealer and registered investment advisor.
* Was unsolicited.

This security:
* Has an assigned industry standard identification number of 45567W109
* Has a standard trading symbol of IGDC

Additional Information:
* We make a market in this security.
Please remit payment to: Fiserv Securities, One Commerce Square, 2005 Market Street, Philadelphia, PA 19103

Special Instructions:

**IT IS AGREED BETWEEN THE CUSTOMER ("CUSTOMER"), HIS/HER/ITS INTRODUCING BROKER ("IB") AND THE IB'S CLEARING FIRM ("NF CLEARING, INC." OR "NFC"):**

1. All transactions are subject to the rules, regulations, customs and usages of the exchange or market (and the clearing agency, if any) where executed and to any association whose rules and regulations govern transactions in that market and your account agreements with the IB and/or NFC. We will furnish, upon written request, the date and time when this transaction took place and the name of the other party to this transaction.

2. Any transaction executed in the over-the-counter market is subject to the Uniform Practice Code of the National Association of Securities Dealers, Inc. The name of the other broker or party and the time of execution will be furnished upon request.

3. Securities purchased on a cash or margin basis are or may be hypothecated under circumstances which will permit the commingling thereof with securities carried for other customers, but such securities, if hypothecated, will be withdrawn from hypothecation as soon as practicable after receipt of payment therefore.

4. If this transaction is a purchase by you in a cash account and sufficient funds are not already in your account with us, it is agreed that you will make full payment for the securities described on the face hereof promptly and not later than settlement date in accordance with the terms of this transaction and that you do not contemplate the sale of such securities prior to making such payment. If this transaction is a sale by you in a cash account and the securities described on the face herof are not already held in your account with us, we are acting upon your representation that you or your principals own such securities, and it is agreed that you will promptly and not later than the settlement date deposit such securities with us. If full payment for the securities purchased by you in the transaction is not received or if the securities sold by you are not delivered in proper form on or after the first trading day after settlement date, we may at our option cancel or otherwise liquidate this transaction without notice to you, and you will be liable for any resulting loss, including without limitation, all expenses, attorney's fees and other costs and interest incurred thereon.

5. If this transaction is a purchase by you in a margin account it is agreed that sufficient cash or acceptable collateral will be deposited on or before settlement date to satisfy applicable margin requirements.

6. Provision of agreements and contracts shall inure to the benefit of your IB, NFC, or to any successor to your IB or NFC.

7. The execution price for this security may reflect an odd-lot differential if the number of shares transacted is less than a round lot or if all of the shares transacted cannot be executed in round lot increments.

8. Call features may exist for bonds, which could affect yield. Complete information will be provided upon written request.

9. If this transaction involves an asset-backed security that represents an interest in, or is secured by a pool of receivables or other financial assets that are subject continuously to prepayment, then the actual yield of such security may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning the factors that affect yield (including at a minimum estimated yield, weighted average life, and the prepayment assumptions of underlying yield) will be furnished upon your written request.

10. Zero coupon, Compound Interest and Multiplier Securities are callable below maturity value without notice by mail to holder unless registered.

11. If so noted on the front of the confirmation statement, our affiliate makes a market in this security, i.e., buying or selling for its own account on a continuous basis, and acted as principal in buying from or selling to you. NFC affiliate acting as market maker may discontinue the maintenance of such market at any time without notice. Your IB (if any) acted as your agent, charging you a commission for its service. Where this transaction is listed as executed by an NFC affiliate or a market maker, NFC or its affiliate acted in the capacity of specialist or market maker and filled the order at the inside market without mark-up or down. If average price transaction is indicated on the front of this confirmation statement, your IB or NFC may have acted as principal, agent or both on one or more exchanges. Details available through your IB.

12. NFC or IB receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. Such remuneration is considered compensation for NFC, and the source and amount of any compensation received by NFC in connection with your transaction will be disclosed upon request. Please contact your IB for a break down of any fees listed on this confirmation.

13. If this transaction is not entirely in accordance with Customer's understanding and directions, Customer must report any error or discrepancy within ten (10) days of receipt of this trade acknowledgement (confirmation) by forwarding a copy of this trade acknowledgement to the Compliance Officer at Customer's IB with the error noted. Otherwise, the transaction as stated on this trade acknowledgement shall be forever deemed to be correct and accepted by Customer.

14. Where your IB acted as agent or principal, NFC acted as clearing agent only.

PENNALUNA & COMPANY

421 Sherman Avenue — Suite 203 • Coeur d'Alene, Idaho 83814
(800) 535-5329 (208) 667-7472

# TRANSACTION CONFIRMATION

# SELL

| Brokerage Account Registration | Brokerage Account Information |
|---|---|
| 6DA 04187583 000170 00000167 001/001 00000101<br>UNITED NATIVE DEPOSITORY CORP<br>ATTN DENI LEONARD CEO<br>100 BUSH ST STE #600<br>SAN FRANCISCO CA 94104 | Account #: [redacted]8132 Office: 6DA<br>Rep: 1657<br>MARK DILLON REDACTED |

## BROKERAGE ACCOUNT TRANSACTION DETAIL

You sold 15000 shares of INDIGENOUS GLOBAL DEVELOPMENT CORPORATION BB at a trade reported price of $ .142 per share.

| TRADE AMOUNT | COMMISSION | ST. TAX/INTEREST | FEE | MISC. FEE | PST HDL | NET AMOUNT |
|---|---|---|---|---|---|---|
| 2,130.00 | | | .09 | | | 2,129.91 |

| Trade Date: 05/11/2005 | Settle Date: 05/16/2005 | Transaction #: 00056848 |
|---|---|---|

Additional Comments:

Sufficient shares to cover this sale must be in your brokerage account by settlement date.
This sale will be settled in accordance with your account instructions.

This sell:
* The MARKET in which the transaction was executed: Over The Counter/Multiple Markets
* The CAPACITY in which customer's IB or FSI is acting: As principal and/or making a market in this security, may have received a profit on this transaction.
  a. An officer of the IB or FSI may be affiliated with the issuer of the security shown herein.
  b. Commissions may be allocated among various corporate and or individual affiliates of the IB or FSI, including registered broker/dealer and registered investment advisor.
* Was unsolicited.

This security:
* Has an assigned industry standard identification number of 45567W109
* Has a standard trading symbol of IGDC

Additional Information:
* We make a market in this security.

Please remit payment to: Fiserv Securities, One Commerce Square, 2005 Market Street, Philadelphia, PA 19103

Special Instructions:

**IT IS AGREED BETWEEN THE CUSTOMER ("CUSTOMER"), HIS/HER/ITS INTRODUCING BROKER ("IB") AND THE IB'S CLEARING FIRM ("NF CLEARING, INC." OR "NFC"):**

1. All transactions are subject to the rules, regulations, customs and usages of the exchange or market (and the clearing agency, if any) where executed and to any association whose rules and regulations govern transactions in that market and your account agreements with the IB and/or NFC. We will furnish, upon written request, the date and time when this transaction took place and the name of the other party to this transaction.

2. Any transaction executed in the over-the-counter market is subject to the Uniform Practice Code of the National Association of Securities Dealers, Inc. The name of the other broker or party and the time of execution will be furnished upon request.

3. Securities purchased on a cash or margin basis are or may be hypothecated under circumstances which will permit the commingling thereof with securities carried for other customers, but such securities, if hypothecated, will be withdrawn from hypothecation as soon as practicable after receipt of payment therefore.

4. If this transaction is a purchase by you in a cash account and sufficient funds are not already in your account with us, it is agreed that you will make full payment for the securities described on the face hereof promptly and not later than settlement date in accordance with the terms of this transaction and that you do not contemplate the sale of such securities prior to making such payment. If this transaction is a sale by you in a cash account and the securities described on the face herof are not already held in your account with us, we are acting upon your representation that you or your principals own such securities, and it is agreed that you will promptly and not later than the settlement date deposit such securities with us. If full payment for the securities purchased by you in the transaction is not received or if the securities sold by you are not delivered in proper form on or after the first trading day after settlement date, we may at our option cancel or otherwise liquidate this transaction without notice to you, and you will be liable for any resulting loss, including without limitation, all expenses, attorney's fees and other costs and interest incurred thereon.

5. If this transaction is a purchase by you in a margin account it is agreed that sufficient cash or acceptable collateral will be deposited on or before settlement date to satisfy applicable margin requirements.

6. Provision of agreements and contracts shall inure to the benefit of your IB, NFC, or to any successor to your IB or NFC.

7. The execution price for this security may reflect an odd-lot differential if the number of shares transacted is less than a round lot or if all of the shares transacted cannot be executed in round lot increments.

8. Call features may exist for bonds, which could affect yield. Complete information will be provided upon written request.

9. If this transaction involves an asset-backed security that represents an interest in, or is secured by a pool of receivables or other financial assets that are subject continuously to prepayment, then the actual yield of such security may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning the factors that affect yield (including at a minimum estimated yield, weighted average life, and the prepayment assumptions of underlying yield) will be furnished upon your written request.

10. Zero coupon, Compound Interest and Multiplier Securities are callable below maturity value without notice by mail to holder unless registered.

11. If so noted on the front of the confirmation statement, our affiliate makes a market in this security, i.e., buying or selling for its own account on a continuous basis, and acted as principal in buying from or selling to you. NFC affiliate acting as market maker may discontinue the maintenance of such market at any time without notice. Your IB (if any) acted as your agent, charging you a commission for its service. Where this transaction is listed as executed by an NFC affiliate or a market maker, NFC or its affiliate acted in the capacity of specialist or market maker and filled the order at the inside market without mark-up or down. If average price transaction is indicated on the front of this confirmation statement, your IB or NFC may have acted as principal, agent or both on one or more exchanges. Details available through your IB.

12. NFC or IB receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. Such remuneration is considered compensation for NFC, and the source and amount of any compensation received by NFC in connection with your transaction will be disclosed upon request. Please contact your IB for a break down of any fees listed on this confirmation.

13. If this transaction is not entirely in accordance with Customer's understanding and directions, Customer must report any error or discrepancy within ten (10) days of receipt of this trade acknowledgement (confirmation) by forwarding a copy of this trade acknowledgement to the Compliance Officer at Customer's IB with the error noted. Otherwise, the transaction as stated on this trade acknowledgement shall be forever deemed to be correct and accepted by Customer.

14. Where your IB acted as agent or principal, NFC acted as clearing agent only.

PENNALUNA & COMPANY
421 Sherman Avenue – Suite 203 • Coeur d'Alene, Idaho 83814
(800) 535-5329 (208) 667-7472

# TRANSACTION CONFIRMATION

# SELL

| Brokerage/Account Registration | Brokerage Account Information |
|---|---|
| 6DA 04160437 000132 00000150 001/001 00000066<br>UNITED NATIVE DEPOSITORY CORP<br>ATTN DENI LEONARD CEO<br>100 BUSH ST STE #600<br>SAN FRANCISCO CA 94104 | Account #: [redacted]132 Office: 6DA<br>Rep: 1667<br>MARK DILLON |

## BROKERAGE ACCOUNT TRANSACTION DETAIL

You sold 10000 shares of INDIGENOUS GLOBAL DEVELOPMENT CORPORATION BB at a trade reported price of $ .17 per share.

| TRADE AMOUNT | COMMISSION | ST. TAX/INTEREST | FEE | MISC. FEE | PST/HDL | NET AMOUNT |
|---|---|---|---|---|---|---|
| 1,700.00 | | | .08 | | | 1,699.92 |

| Trade Date: 05/12/2005 | Settle Date: 05/17/2005 | Transaction #: 00010992 |
|---|---|---|

Additional Comments:

Sufficient shares to cover this sale must be in your brokerage account by settlement date.
This sale will be settled in accordance with your account instructions.

This sell:
* The MARKET in which the transaction was executed: Over The Counter/Multiple Markets.
* The CAPACITY in which customer's IB or FSI is acting: As principal and/or making a market in this security, may have received a profit on this transaction.
  a. An officer of the IB or FSI may be affiliated with the issuer of the security shown herein.
  b. Commissions may be allocated among various corporate and or individual affiliates of the IB or FSI, including registered broker/dealer and registered investment advisor.
* Was unsolicited.

This security:
* Has an assigned industry standard identification number of 45567W109
* Has a standard trading symbol of IGDC

Additional Information:
* We make a market in this security.

Please remit payment to: Fiserv Securities, One Commerce Square, 2005 Market Street, Philadelphia, PA 19103

Special Instructions:

**IT IS AGREED BETWEEN THE CUSTOMER ("CUSTOMER"), HIS/HER/ITS INTRODUCING BROKER ("IB") AND THE IB'S CLEARING FIRM ("NF CLEARING, INC." OR "NFC"):**

1. All transactions are subject to the rules, regulations, customs and usages of the exchange or market (and the clearing agency, if any) where executed and to any association whose rules and regulations govern transactions in that market and your account agreements with the IB and/or NFC. We will furnish, upon written request, the date and time when this transaction took place and the name of the other party to this transaction.

2. Any transaction executed in the over-the-counter market is subject to the Uniform Practice Code of the National Association of Securities Dealers, Inc. The name of the other broker or party and the time of execution will be furnished upon request.

3. Securities purchased on a cash or margin basis are or may be hypothecated under circumstances which will permit the commingling thereof with securities carried for other customers, but such securities, if hypothecated, will be withdrawn from hypothecation as soon as practicable after receipt of payment therefore.

4. If this transaction is a purchase by you in a cash account and sufficient funds are not already in your account with us, it is agreed that you will make full payment for the securities described on the face hereof promptly and not later than settlement date in accordance with the terms of this transaction and that you do not contemplate the sale of such securities prior to making such payment. If this transaction is a sale by you in a cash account and the securities described on the face herof are not already held in your account with us, we are acting upon your representation that you or your principals own such securities, and it is agreed that you will promptly and not later than the settlement date deposit such securities with us. If full payment for the securities purchased by you in the transaction is not received or if the securities sold by you are not delivered in proper form on or after the first trading day after settlement date, we may at our option cancel or otherwise liquidate this transaction without notice to you, and you will be liable for any resulting loss, including without limitation, all expenses, attorney's fees and other costs and interest incurred thereon.

5. If this transaction is a purchase by you in a margin account it is agreed that sufficient cash or acceptable collateral will be deposited on or before settlement date to satisfy applicable margin requirements.

6. Provision of agreements and contracts shall inure to the benefit of your IB, NFC, or to any successor to your IB or NFC.

7. The execution price for this security may reflect an odd-lot differential if the number of shares transacted is less than a round lot or if all of the shares transacted cannot be executed in round lot increments.

8. Call features may exist for bonds, which could affect yield. Complete information will be provided upon written request.

9. If this transaction involves an asset-backed security that represents an interest in, or is secured by a pool of receivables or other financial assets that are subject continuously to prepayment, then the actual yield of such security may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning the factors that affect yield (including at a minimum estimated yield, weighted average life, and the prepayment assumptions of underlying yield) will be furnished upon your written request.

10. Zero coupon, Compound Interest and Multiplier Securities are callable below maturity value without notice by mail to holder unless registered.

11. If so noted on the front of the confirmation statement, our affiliate makes a market in this security, i.e., buying or selling for its own account on a continuous basis, and acted as principal in buying from or selling to you. NFC affiliate acting as market maker may discontinue the maintenance of such market at any time without notice. Your IB (if any) acted as your agent, charging you a commission for its service. Where this transaction is listed as executed by an NFC affiliate or a market maker, NFC or its affiliate acted in the capacity of specialist or market maker and filled the order at the inside market without mark-up or down. If average price transaction is indicated on the front of this confirmation statement, your IB or NFC may have acted as principal, agent or both on one or more exchanges. Details available through your IB.

12. NFC or IB receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. Such remuneration is considered compensation for NFC, and the source and amount of any compensation received by NFC in connection with your transaction will be disclosed upon request. Please contact your IB for a break down of any fees listed on this confirmation.

13. If this transaction is not entirely in accordance with Customer's understanding and directions, Customer must report any error or discrepancy within ten (10) days of receipt of this trade acknowledgement (confirmation) by forwarding a copy of this trade acknowledgement to the Compliance Officer at Customer's IB with the error noted. Otherwise, the transaction as stated on this trade acknowledgement shall be forever deemed to be correct and accepted by Customer.

14. Where your IB acted as agent or principal, NFC acted as clearing agent only.

PENNALUNA & COMPANY
421 Sherman Avenue – Suite 203 • Coeur d'Alene, Idaho 83814
(800) 535-5329 (208) 667-7472

# TRANSACTION CONFIRMATION

# SELL

| Brokerage Account Registration | Brokerage Account Information |
|---|---|
| 6DA 04107228 000106 00000196 001/001 00000110<br>UNITED NATIVE DEPOSITORY CORP<br>ATTN DENI LEONARD CEO<br>100 BUSH ST STE #600<br>SAN FRANCISCO CA 94104 | Account # [redacted]8132 Office 6DA<br>Rep 1657<br>MARK DILLON REDACTED |

## BROKERAGE ACCOUNT TRANSACTION DETAIL

You sold 31790 shares of INDIGENOUS GLOBAL DEVELOPMENT CORPORATION BB at a trade reported price of $ .162 per share.

| TRADE AMOUNT | COMMISSION | ST. TAX/INTEREST | FEE | MISC. FEE | PST/HDL | NET AMOUNT |
|---|---|---|---|---|---|---|
| 5,149.98 | | | 22 | | | 5,149.76 |

| Trade Date: 05/17/2005 | Settle Date: 05/20/2005 | Transaction #: 00027453 |
|---|---|---|

Additional Comments:

Sufficient shares to cover this sale must be in your brokerage account by settlement date.
This sale will be settled in accordance with your account instructions.

This sell:
* The MARKET in which the transaction was executed: Over The Counter/Multiple Markets
* The CAPACITY in which customer's IB or FSI is acting: As principal and/or making a market in this security, may have received a profit on this transaction.
  a. An officer of the IB or FSI may be affiliated with the issuer of the security shown herein.
  b. Commissions may be allocated among various corporate and/or individual affiliates of the IB or FSI, including registered broker/dealer and registered investment advisor.
* Was unsolicited.

This security:
* Has an assigned industry standard identification number of 45567W109
* Has a standard trading symbol of IGDC

Additional Information:
* We make a market in this security.

Please remit payment to: Fiserv Securities, One Commerce Square, 2005 Market Street, Philadelphia, PA 19103

Special Instructions:

**IT IS AGREED BETWEEN THE CUSTOMER ("CUSTOMER"), HIS/HER/ITS INTRODUCING BROKER ("IB") AND THE IB'S CLEARING FIRM ("NF CLEARING, INC." OR "NFC"):**

1. All transactions are subject to the rules, regulations, customs and usages of the exchange or market (and the clearing agency, if any) where executed and to any association whose rules and regulations govern transactions in that market and your account agreements with the IB and/or NFC. We will furnish, upon written request, the date and time when this transaction took place and the name of the other party to this transaction.

2. Any transaction executed in the over-the-counter market is subject to the Uniform Practice Code of the National Association of Securities Dealers, Inc. The name of the other broker or party and the time of execution will be furnished upon request.

3. Securities purchased on a cash or margin basis are or may be hypothecated under circumstances which will permit the commingling thereof with securities carried for other customers, but such securities, if hypothecated, will be withdrawn from hypothecation as soon as practicable after receipt of payment therefore.

4. If this transaction is a purchase by you in a cash account and sufficient funds are not already in your account with us, it is agreed that you will make full payment for the securities described on the face hereof promptly and not later than settlement date in accordance with the terms of this transaction and that you do not contemplate the sale of such securities prior to making such payment. If this transaction is a sale by you in a cash account and the securities described on the face herof are not already held in your account with us, we are acting upon your representation that you or your principals own such securities, and it is agreed that you will promptly and not later than the settlement date deposit such securities with us. If full payment for the securities purchased by you in the transaction is not received or if the securities sold by you are not delivered in proper form on or after the first trading day after settlement date, we may at our option cancel or otherwise liquidate this transaction without notice to you, and you will be liable for any resulting loss, including without limitation, all expenses, attorney's fees and other costs and interest incurred thereon.

5. If this transaction is a purchase by you in a margin account it is agreed that sufficient cash or acceptable collateral will be deposited on or before settlement date to satisfy applicable margin requirements.

6. Provision of agreements and contracts shall inure to the benefit of your IB, NFC, or to any successor to your IB or NFC.

7. The execution price for this security may reflect an odd-lot differential if the number of shares transacted is less than a round lot or if all of the shares transacted cannot be executed in round lot increments.

8. Call features may exist for bonds, which could affect yield. Complete information will be provided upon written request.

9. If this transaction involves an asset-backed security that represents an interest in, or is secured by a pool of receivables or other financial assets that are subject continuously to prepayment, then the actual yield of such security may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning the factors that affect yield (including at a minimum estimated yield, weighted average life, and the prepayment assumptions of underlying yield) will be furnished upon your written request.

10. Zero coupon, Compound Interest and Multiplier Securities are callable below maturity value without notice by mail to holder unless registered.

11. If so noted on the front of the confirmation statement, our affiliate makes a market in this security, i.e., buying or selling for its own account on a continuous basis, and acted as principal in buying from or selling to you. NFC affiliate acting as market maker may discontinue the maintenance of such market at any time without notice. Your IB (if any) acted as your agent, charging you a commission for its service. Where this transaction is listed as executed by an NFC affiliate or a market maker, NFC or its affiliate acted in the capacity of specialist or market maker and filled the order at the inside market without mark-up or down. If average price transaction is indicated on the front of this confirmation statement, your IB or NFC may have acted as principal, agent or both on one or more exchanges. Details available through your IB.

12. NFC or IB receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. Such remuneration is considered compensation for NFC, and the source and amount of any compensation received by NFC in connection with your transaction will be disclosed upon request. Please contact your IB for a break down of any fees listed on this confirmation.

13. If this transaction is not entirely in accordance with Customer's understanding and directions, Customer must report any error or discrepancy within ten (10) days of receipt of this trade acknowledgement (confirmation) by forwarding a copy of this trade acknowledgement to the Compliance Officer at Customer's IB with the error noted. Otherwise, the transaction as stated on this trade acknowledgement shall be forever deemed to be correct and accepted by Customer.

14. Where your IB acted as agent or principal, NFC acted as clearing agent only.