# EXHIBIT 8

# PENNALUNA & COMPANY

421 Sherman Avenue – Suite 203 • Coeur d'Alene, Idaho 83814
(800) 535-5329 (208) 667-7472

## TRANSACTION CONFIRMATION

## SELL

**Brokerage Account Registration**

6DA 04214026 000441 00000427 001/001 00000210

DENI LEONARD
100 BUSH ST #600
SAN FRANCISCO CA 94104

**Brokerage Account Information**

Account #: [redacted]5606 Office 6DA
Rep 1657

MARK DILLON REDACTED

**BROKERAGE ACCOUNT TRANSACTION DETAIL**

You sold 35500 shares of INDIGENOUS GLOBAL DEVELOPMENT CORPORATION BB at a trade reported price of $ .10 per share.

| TRADE AMOUNT | COMMISSION | ST. TAX/INTEREST | FEE | MISC. FEE | PST\HDL | NET AMOUNT |
|---|---|---|---|---|---|---|
| 3,550.00 | | | | .15 | | 3,549.85 |

| Trade Date: 06/20/2005 | Settle Date: 06/23/2005 | Transaction #: 00016127 |
|---|---|---|

Additional Comments:

Sufficient shares to cover this sale must be in your brokerage account by settlement date.
This sale will be settled in accordance with your account instructions.

This sell:
* The MARKET in which the transaction was executed:
  Over The Counter/Multiple Markets.
* The CAPACITY in which customer's IB or NFC is acting:
  As principal and/or making a market in this security, may have received a profit on this transaction.
  a. An officer of the IB or NFC may be affiliated with the issuer of the security shown herein.
  b. Commissions may be allocated among various corporate and or individual affiliates of the IB or NFC, including registered broker/dealer and registered investment advisor.
* Was unsolicited.

This security:
* Has an assigned industry standard identification number of 45567W109 .
* Has a standard trading symbol of IGDC .

Additional Information:
* We make a market in this security.

Please remit payment to: NF Clearing, Inc., One Commerce Square, 2005 Market Street, Philadelphia, PA 19103

Special Instructions:

**IT IS AGREED BETWEEN THE CUSTOMER ("CUSTOMER"), HIS/HER/ITS INTRODUCING BROKER ("IB") AND THE IB'S CLEARING FIRM ("NF CLEARING, INC." OR "NFC"):**

1. All transactions are subject to the rules, regulations, customs and usages of the exchange or market (and the clearing agency, if any) where executed and to any association whose rules and regulations govern transactions in that market and your account agreements with the IB and/or NFC. We will furnish, upon written request, the date and time when this transaction took place and the name of the other party to this transaction.

2. Any transaction executed in the over-the-counter market is subject to the Uniform Practice Code of the National Association of Securities Dealers, Inc. The name of the other broker or party and the time of execution will be furnished upon request.

3. Securities purchased on a cash or margin basis are or may be hypothecated under circumstances which will permit the commingling thereof with securities carried for other customers, but such securities, if hypothecated, will be withdrawn from hypothecation as soon as practicable after receipt of payment therefore.

4. If this transaction is a purchase by you in a cash account and sufficient funds are not already in your account with us, it is agreed that you will make full payment for the securities described on the face hereof promptly and not later than settlement date in accordance with the terms of this transaction and that you do not contemplate the sale of such securities prior to making such payment. If this transaction is a sale by you in a cash account and the securities described on the face herof are not already held in your account with us, we are acting upon your representation that you or your principals own such securities, and it is agreed that you will promptly and not later than the settlement date deposit such securities with us. If full payment for the securities purchased by you in the transaction is not received or if the securities sold by you are not delivered in proper form on or after the first trading day after settlement date, we may at our option cancel or otherwise liquidate this transaction without notice to you, and you will be liable for any resulting loss, including without limitation, all expenses, attorney's fees and other costs and interest incurred thereon.

5. If this transaction is a purchase by you in a margin account it is agreed that sufficient cash or acceptable collateral will be deposited on or before settlement date to satisfy applicable margin requirements.

6. Provision of agreements and contracts shall inure to the benefit of your IB, NFC, or to any successor to your IB or NFC.

7. The execution price for this security may reflect an odd-lot differential if the number of shares transacted is less than a round lot or if all of the shares transacted cannot be executed in round lot increments.

8. Call features may exist for bonds, which could affect yield. Complete information will be provided upon written request.

9. If this transaction involves an asset-backed security that represents an interest in, or is secured by a pool of receivables or other financial assets that are subject continuously to prepayment, then the actual yield of such security may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning the factors that affect yield (including at a minimum estimated yield, weighted average life, and the prepayment assumptions of underlying yield) will be furnished upon your written request.

10. Zero coupon, Compound Interest and Multiplier Securities are callable below maturity value without notice by mail to holder unless registered.

11. If so noted on the front of the confirmation statement, our affiliate makes a market in this security, i.e., buying or selling for its own account on a continuous basis, and acted as principal in buying from or selling to you. NFC affiliate acting as market maker may discontinue the maintenance of such market at any time without notice. Your IB (if any) acted as your agent, charging you a commission for its service. Where this transaction is listed as executed by an NFC affiliate or a market maker, NFC or its affiliate acted in the capacity of specialist or market maker and filled the order at the inside market without mark-up or down. If average price transaction is indicated on the front of this confirmation statement, your IB or NFC may have acted as principal, agent or both on one or more exchanges, Details available through your IB.

12. NFC or IB receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. Such remuneration is considered compensation for NFC, and the source and amount of any compensation received by NFC in connection with your transaction will be disclosed upon request. Please contact your IB for a break down of any fees listed on this confirmation.

13. If this transaction is not entirely in accordance with Customer's understanding and directions, Customer must report any error or discrepancy within ten (10) days of receipt of this trade acknowledgement (confirmation) by forwarding a copy of this trade acknowledgement to the Compliance Officer at Customer's IB with the error noted. Otherwise, the transaction as stated on this trade acknowledgement shall be forever deemed to be correct and accepted by Customer.

14. Where your IB acted as agent or principal, NFC acted as clearing agent only.

# PENNALUNA & COMPANY

421 Sherman Avenue – Suite 203 • Coeur d'Alene, Idaho 83814
(800) 535-5329 (208) 667-7472

## TRANSACTION CONFIRMATION

## SELL

**Brokerage Account Registration**

6DA 04217699 000194 00000189 001/001 00000128

DENI LEONARD
100 BUSH ST #600
SAN FRANCISCO CA 94104

**Brokerage Account Information**

Account #: [redacted]5606 Office : 6DA

REDACTED 1657

MARK DILLON

**BROKERAGE ACCOUNT TRANSACTION DETAIL**

You sold 75000 shares of INDIGENOUS GLOBAL DEVELOPMENT CORPORATION BB at a trade reported price of $ .09 per share.

| TRADE AMOUNT | COMMISSION | ST. TAX/INTEREST | FEE | MISC. FEE | PST/HDL | NET AMOUNT |
|---|---|---|---|---|---|---|
| 6,750.00 | | | .29 | | | 6,749.71 |

| Trade Date: 06/24/2005 | Settle Date: 06/29/2005 | Transaction #: 00044642 |
|---|---|---|

Additional Comments:

Sufficient shares to cover this sale must be in your brokerage account by settlement date.
This sale will be settled in accordance with your account instructions.

This sell:
* The MARKET in which the transaction was executed: Over The Counter/Multiple Markets
* The CAPACITY in which customer's IB or NFC is acting: As principal and/or making a market in this security, may have received a profit on this transaction.
  a. An officer of the IB or NFC may be affiliated with the issuer of the security shown herein.
  b. Commissions may be allocated among various corporate and or individual affiliates of the IB or NFC, including registered broker/dealer and registered investment advisor.
* Was unsolicited.

This security:
* Has an assigned industry standard identification number of 45567W109 .
* Has a standard trading symbol of IGDC .

Additional Information:
* We make a market in this security.

Please remit payment to: NF Clearing, Inc., One Commerce Square, 2005 Market Street, Philadelphia, PA 19103

Special Instructions:



ACCOUNTS CARRIED WITH NF CLEARING, INC. MEMBER NYSE/NASD/SIPC

**IT IS AGREED BETWEEN THE CUSTOMER ("CUSTOMER"), HIS/HER/ITS INTRODUCING BROKER ("IB") AND THE IB'S CLEARING FIRM ("NF CLEARING, INC." OR "NFC"):**

1. All transactions are subject to the rules, regulations, customs and usages of the exchange or market (and the clearing agency, if any) where executed and to any association whose rules and regulations govern transactions in that market and your account agreements with the IB and/or NFC. We will furnish, upon written request, the date and time when this transaction took place and the name of the other party to this transaction.

2. Any transaction executed in the over-the-counter market is subject to the Uniform Practice Code of the National Association of Securities Dealers, Inc. The name of the other broker or party and the time of execution will be furnished upon request.

3. Securities purchased on a cash or margin basis are or may be hypothecated under circumstances which will permit the commingling thereof with securities carried for other customers, but such securities, if hypothecated, will be withdrawn from hypothecation as soon as practicable after receipt of payment therefore.

4. If this transaction is a purchase by you in a cash account and sufficient funds are not already in your account with us, it is agreed that you will make full payment for the securities described on the face hereof promptly and not later than settlement date in accordance with the terms of this transaction and that you do not contemplate the sale of such securities prior to making such payment. If this transaction is a sale by you in a cash account and the securities described on the face herof are not already held in your account with us, we are acting upon your representation that you or your principals own such securities, and it is agreed that you will promptly and not later than the settlement date deposit such securities with us. If full payment for the securities purchased by you in the transaction is not received or if the securities sold by you are not delivered in proper form on or after the first trading day after settlement date, we may at our option cancel or otherwise liquidate this transaction without notice to you, and you will be liable for any resulting loss, including without limitation, all expenses, attorney's fees and other costs and interest incurred thereon.

5. If this transaction is a purchase by you in a margin account it is agreed that sufficient cash or acceptable collateral will be deposited on or before settlement date to satisfy applicable margin requirements.

6. Provision of agreements and contracts shall inure to the benefit of your IB, NFC, or to any successor to your IB or NFC.

7. The execution price for this security may reflect an odd-lot differential if the number of shares transacted is less than a round lot or if all of the shares transacted cannot be executed in round lot increments.

8. Call features may exist for bonds, which could affect yield. Complete information will be provided upon written request.

9. If this transaction involves an asset-backed security that represents an interest in, or is secured by a pool of receivables or other financial assets that are subject continuously to prepayment, then the actual yield of such security may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning the factors that affect yield (including at a minimum estimated yield, weighted average life, and the prepayment assumptions of underlying yield) will be furnished upon your written request.

10. Zero coupon, Compound Interest and Multiplier Securities are callable below maturity value without notice by mail to holder unless registered.

11. If so noted on the front of the confirmation statement, our affiliate makes a market in this security, i.e., buying or selling for its own account on a continuous basis, and acted as principal in buying from or selling to you. NFC affiliate acting as market maker may discontinue the maintenance of such market at any time without notice. Your IB (if any) acted as your agent, charging you a commission for its service. Where this transaction is listed as executed by an NFC affiliate or a market maker, NFC or its affiliate acted in the capacity of specialist or market maker and filled the order at the inside market without mark-up or down. If average price transaction is indicated on the front of this confirmation statement, your IB or NFC may have acted as principal, agent or both on one or more exchanges, Details available through your IB.

12. NFC or IB receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. Such remuneration is considered compensation for NFC, and the source and amount of any compensation received by NFC in connection with your transaction will be disclosed upon request. Please contact your IB for a break down of any fees listed on this confirmation.

13. If this transaction is not entirely in accordance with Customer's understanding and directions, Customer must report any error or discrepancy within ten (10) days of receipt of this trade acknowledgement (confirmation) by forwarding a copy of this trade acknowledgement to the Compliance Officer at Customer's IB with the error noted. Otherwise, the transaction as stated on this trade acknowledgement shall be forever deemed to be correct and accepted by Customer.

14. Where your IB acted as agent or principal, NFC acted as clearing agent only.

# PENNALUNA & COMPANY

421 Sherman Avenue – Suite 203 – Coeur d'Alene, Idaho 83814
(800) 535-5329 – (208) 667-7472

TRANSACTION CONFIRMATION

**SELL**

| Brokerage Account Registration | Brokerage Account Information |
|---|---|
| 6DA 042207 000317 00000 09 007001 00000 15<br>DENI LEONARD<br>100 BUSH ST #600<br>SAN FRANCISCO CA 94104 | Account # [redacted]56067 Office 6DA<br>Rep 1657<br>MARK DILLON |

## BROKERAGE ACCOUNT TRANSACTION DETAIL

You sold 120000 shares of INDIGENOUS GLOBAL DEVELOPMENT CORPORATION BB at a trade reported price of $ .095 per share.

| TRADE AMOUNT | COMMISSION | ST. TAX/INTEREST | FEE | MISC. FEE | PST/HDL | NET AMOUNT |
|---|---|---|---|---|---|---|
| 11,400.00 | | | .48 | | | 11,399.52 |

Trade Date 06/28/2005 | Settle Date 07/01/2005 | Transaction # 00018006

Additional Comments

Sufficient shares to cover this sale must be in your brokerage account by settlement date.
This sale will be settled in accordance with your account instructions.

This sell:
* The MARKET in which the transaction was executed:
Over The Counter/Multiple Markets
* The CAPACITY in which customer's IB or NFC is acting:
As principal and/or making a market in this security, may have received a profit on this transaction.
a. An officer of the IB or NFC may be affiliated with the Issuer of the security shown herein.
b. Commissions may be allocated among various corporate and or individual affiliates of the IB or NFC, including registered broker/dealer and registered investment advisor.
* Was unsolicited.

This security:
* Has an assigned industry standard identification number of 45567W109
* Has a standard trading symbol of IGDC

Additional Information:
* We make a market in this security.
Please remit payment to: NF Clearing, Inc., One Commerce Square, 2005 Market Street, Philadelphia, PA 19103

Special Instructions:

ACCOUNTS CARRIED WITH NF CLEARING, INC. MEMBER NYSE/NASD/SIPC

Cat # ECSTMT

**IT IS AGREED BETWEEN THE CUSTOMER ("CUSTOMER"), HIS/HER/ITS INTRODUCING BROKER ("IB") AND THE IB'S CLEARING FIRM ("NF CLEARING, INC." OR "NFC"):**

1. All transactions are subject to the rules, regulations, customs and usages of the exchange or market (and the clearing agency, if any) where executed and to any association whose rules and regulations govern transactions in that market and your account agreements with the IB and/or NFC. We will furnish, upon written request, the date and time when this transaction took place and the name of the other party to this transaction.

2. Any transaction executed in the over-the-counter market is subject to the Uniform Practice Code of the National Association of Securities Dealers, Inc. The name of the other broker or party and the time of execution will be furnished upon request.

3. Securities purchased on a cash or margin basis are or may be hypothecated under circumstances which will permit the commingling thereof with securities carried for other customers, but such securities, if hypothecated, will be withdrawn from hypothecation as soon as practicable after receipt of payment therefore.

4. If this transaction is a purchase by you in a cash account and sufficient funds are not already in your account with us, it is agreed that you will make full payment for the securities described on the face hereof promptly and not later than settlement date in accordance with the terms of this transaction and that you do not contemplate the sale of such securities prior to making such payment. If this transaction is a sale by you in a cash account and the securities described on the face herof are not already held in your account with us, we are acting upon your representation that you or your principals own such securities, and it is agreed that you will promptly and not later than the settlement date deposit such securities with us. If full payment for the securities purchased by you in the transaction is not received or if the securities sold by you are not delivered in proper form on or after the first trading day after settlement date, we may at our option cancel or otherwise liquidate this transaction without notice to you, and you will be liable for any resulting loss, including without limitation, all expenses, attorney's fees and other costs and interest incurred thereon.

5. If this transaction is a purchase by you in a margin account it is agreed that sufficient cash or acceptable collateral will be deposited on or before settlement date to satisfy applicable margin requirements.

6. Provision of agreements and contracts shall inure to the benefit of your IB, NFC, or to any successor to your IB or NFC.

7. The execution price for this security may reflect an odd-lot differential if the number of shares transacted is less than a round lot or if all of the shares transacted cannot be executed in round lot increments.

8. Call features may exist for bonds, which could affect yield. Complete information will be provided upon written request.

9. If this transaction involves an asset-backed security that represents an interest in, or is secured by a pool of receivables or other financial assets that are subject continuously to prepayment, then the actual yield of such security may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning the factors that affect yield (including at a minimum estimated yield, weighted average life, and the prepayment assumptions of underlying yield) will be furnished upon your written request.

10. Zero coupon, Compound Interest and Multiplier Securities are callable below maturity value without notice by mail to holder unless registered.

11. If so noted on the front of the confirmation statement, our affiliate makes a market in this security, i.e., buying or selling for its own account on a continuous basis, and acted as principal in buying from or selling to you. NFC affiliate acting as market maker may discontinue the maintenance of such market at any time without notice. Your IB (if any) acted as your agent, charging you a commission for its service. Where this transaction is listed as executed by an NFC affiliate or a market maker, NFC or its affiliate acted in the capacity of specialist or market maker and filled the order at the inside market without mark-up or down. If average price transaction is indicated on the front of this confirmation statement, your IB or NFC may have acted as principal, agent or both on one or more exchanges. Details available through your IB.

12. NFC or IB receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. Such remuneration is considered compensation for NFC, and the source and amount of any compensation received by NFC in connection with your transaction will be disclosed upon request. Please contact your IB for a break down of any fees listed on this confirmation.

13. If this transaction is not entirely in accordance with Customer's understanding and directions, Customer must report any error or discrepancy within ten (10) days of receipt of this trade acknowledgement (confirmation) by forwarding a copy of this trade acknowledgement to the Compliance Officer at Customer's IB with the error noted. Otherwise, the transaction as stated on this trade acknowledgement shall be forever deemed to be correct and accepted by Customer.

14. Where your IB acted as agent or principal, NFC acted as clearing agent only.

PENNALUNA & COMPANY
421 Sherman Avenue - Suite 203 - Coeur d'Alene, Idaho 83814
(800) 535-5329 (208) 667-7472

# TRANSACTION CONFIRMATION

# SELL

| Brokerage Account Registration | Brokerage Account Information |
|---|---|
| BOA 0122250 0001 05 000000207 001 001 000001 A1<br>DENI LEONARD<br>100 BUSH ST #600<br>SAN FRANCISCO CA 94104 | Account [redacted] 506 Office DA<br>Rep 65<br>MARK DILLON |

## BROKERAGE ACCOUNT TRANSACTION DETAIL

You sold 75000 shares of INDIGENOUS GLOBAL DEVELOPMENT CORPORATION BB at a trade reported price of $.09 per share

| TRADE AMOUNT | COMMISSION | ST TAX/INTEREST | FEE | MISC FEE / PST HDL | NET AMOUNT |
|---|---|---|---|---|---|
| 6,750.00 | | | .29 | | 6,749.71 |

| Trade Date 06/30/2005 | Settlement Date 07/06/2005 | Transaction # 00090816 |
|---|---|---|

Additional Comments:

Sufficient shares to cover this sale must be in your brokerage account by settlement date.
This sale will be settled in accordance with your account instructions.

This sell:
* The MARKET in which the transaction was executed:
Over The Counter/Multiple Markets
* The CAPACITY in which customer's IB or NFC is acting:
As principal and/or making a market in this security, may have received a profit on this transaction.
a. An officer of the IB or NFC may be affiliated with the issuer of the security shown herein.
b. Commissions may be allocated among various corporate and/or individual affiliates of the IB or NFC including registered broker/dealer and registered investment advisor
* Was unsolicited

This security:
* Has an assigned industry standard identification number of 45567W109
* Has a standard trading symbol of IGDC

Additional Information:
* We make a market in this security
Please remit payment to: NF Clearing, Inc., One Commerce Square, 2005 Market Street, Philadelphia, PA 19103

Special Instructions:

ACCOUNTS CARRIED WITH NF CLEARING, INC. MEMBER NYSE/NASD/SIPC

Cat # ECSTMT

**IT IS AGREED BETWEEN THE CUSTOMER ("CUSTOMER"), HIS/HER/ITS INTRODUCING BROKER ("IB") AND THE IB'S CLEARING FIRM ("NF CLEARING, INC." OR "NFC"):**

1. All transactions are subject to the rules, regulations, customs and usages of the exchange or market (and the clearing agency, if any) where executed and to any association whose rules and regulations govern transactions in that market and your account agreements with the IB and/or NFC. We will furnish, upon written request, the date and time when this transaction took place and the name of the other party to this transaction.

2. Any transaction executed in the over-the-counter market is subject to the Uniform Practice Code of the National Association of Securities Dealers, Inc. The name of the other broker or party and the time of execution will be furnished upon request.

3. Securities purchased on a cash or margin basis are or may be hypothecated under circumstances which will permit the commingling thereof with securities carried for other customers, but such securities, if hypothecated, will be withdrawn from hypothecation as soon as practicable after receipt of payment therefore.

4. If this transaction is a purchase by you in a cash account and sufficient funds are not already in your account with us, it is agreed that you will make full payment for the securities described on the face hereof promptly and not later than settlement date in accordance with the terms of this transaction and that you do not contemplate the sale of such securities prior to making such payment. If this transaction is a sale by you in a cash account and the securities described on the face herof are not already held in your account with us, we are acting upon your representation that you or your principals own such securities, and it is agreed that you will promptly and not later than the settlement date deposit such securities with us. If full payment for the securities purchased by you in the transaction is not received or if the securities sold by you are not delivered in proper form on or after the first trading day after settlement date, we may at our option cancel or otherwise liquidate this transaction without notice to you, and you will be liable for any resulting loss, including without limitation, all expenses, attorney's fees and other costs and interest incurred thereon.

5. If this transaction is a purchase by you in a margin account it is agreed that sufficient cash or acceptable collateral will be deposited on or before settlement date to satisfy applicable margin requirements.

6. Provision of agreements and contracts shall inure to the benefit of your IB, NFC, or to any successor to your IB or NFC.

7. The execution price for this security may reflect an odd-lot differential if the number of shares transacted is less than a round lot or if all of the shares transacted cannot be executed in round lot increments.

8. Call features may exist for bonds, which could affect yield. Complete information will be provided upon written request.

9. If this transaction involves an asset-backed security that represents an interest in, or is secured by a pool of receivables or other financial assets that are subject continuously to prepayment, then the actual yield of such security may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning the factors that affect yield (including at a minimum estimated yield, weighted average life, and the prepayment assumptions of underlying yield) will be furnished upon your written request.

10. Zero coupon, Compound Interest and Multiplier Securities are callable below maturity value without notice by mail to holder unless registered.

11. If so noted on the front of the confirmation statement, our affiliate makes a market in this security, i.e., buying or selling for its own account on a continuous basis, and acted as principal in buying from or selling to you. NFC affiliate acting as market maker may discontinue the maintenance of such market at any time without notice. Your IB (if any) acted as your agent, charging you a commission for its service. Where this transaction is listed as executed by an NFC affiliate or a market maker, NFC or its affiliate acted in the capacity of specialist or market maker and filled the order at the inside market without mark-up or down. If average price transaction is indicated on the front of this confirmation statement, your IB or NFC may have acted as principal, agent or both on one or more exchanges, Details available through your IB.

12. NFC or IB receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. Such remuneration is considered compensation for NFC, and the source and amount of any compensation received by NFC in connection with your transaction will be disclosed upon request. Please contact your IB for a break down of any fees listed on this confirmation.

13. If this transaction is not entirely in accordance with Customer's understanding and directions, Customer must report any error or discrepancy within ten (10) days of receipt of this trade acknowledgement (confirmation) by forwarding a copy of this trade acknowledgement to the Compliance Officer at Customer's IB with the error noted. Otherwise, the transaction as stated on this trade acknowledgement shall be forever deemed to be correct and accepted by Customer.

14. Where your IB acted as agent or principal, NFC acted as clearing agent only.

PENNALUNA & COMPANY
421 Sherman Avenue — Suite 203 • Coeur d'Alene, Idaho 83814
(800) 535-5329 (208) 667-7472

# TRANSACTION CONFIRMATION

# SELL

| Brokerage Account Registration | Brokerage Account Information |
|---|---|
| 6DA 04220047 000283 00000272 0017001 00000168<br>DENI LEONARD<br>100 BUSH ST #600<br>SAN FRANCISCO CA 94104 | Account #: [redacted]5606 Office 6DA Rep 1657<br>MARK DILLON<br>REDACTED |

## BROKERAGE ACCOUNT TRANSACTION DETAIL

**You sold 50000 shares of INDIGENOUS GLOBAL DEVELOPMENT CORPORATION BB at a trade reported price of $ .095 per share.**

| TRADE AMOUNT | COMMISSION | ST. TAX/INTEREST | FEE | MISC. FEE | PST\HDL | NET AMOUNT |
|---|---|---|---|---|---|---|
| 4,750.00 | | | .20 | | | 4,749.80 |

| Trade Date: 07/05/2005 | Settle Date: 07/08/2005 | Transaction #: 00055821 |
|---|---|---|

Additional Comments:

Sufficient shares to cover this sale must be in your brokerage account by settlement date.
This sale will be settled in accordance with your account instructions.

This sell:
* The MARKET in which the transaction was executed: Over-The-Counter/Multiple Markets
* The CAPACITY in which customer's IB or NFC is acting: As principal and/or making a market in this security, may have received a profit on this transaction.
  a. An officer of the IB or NFC may be affiliated with the issuer of the security shown herein.
  b. Commissions may be allocated among various corporate and or individual affiliates of the IB or NFC, including registered broker/dealer and registered investment advisor.
* Was unsolicited.

This security:
* Has an assigned industry standard identificaiton number of 45567W109
* Has a standard trading symbol of IGDC

Additional Information:
* We make a market in this security.

Please remit payment to: NF Clearing, Inc., One Commerce Square, 2005 Market Street, Philadelphia, PA 19103

Special Instructions:

**IT IS AGREED BETWEEN THE CUSTOMER ("CUSTOMER"), HIS/HER/ITS INTRODUCING BROKER ("IB") AND THE IB'S CLEARING FIRM ("NF CLEARING, INC." OR "NFC"):**

1. All transactions are subject to the rules, regulations, customs and usages of the exchange or market (and the clearing agency, if any) where executed and to any association whose rules and regulations govern transactions in that market and your account agreements with the IB and/or NFC. We will furnish, upon written request, the date and time when this transaction took place and the name of the other party to this transaction.

2. Any transaction executed in the over-the-counter market is subject to the Uniform Practice Code of the National Association of Securities Dealers, Inc. The name of the other broker or party and the time of execution will be furnished upon request.

3. Securities purchased on a cash or margin basis are or may be hypothecated under circumstances which will permit the commingling thereof with securities carried for other customers, but such securities, if hypothecated, will be withdrawn from hypothecation as soon as practicable after receipt of payment therefore.

4. If this transaction is a purchase by you in a cash account and sufficient funds are not already in your account with us, it is agreed that you will make full payment for the securities described on the face hereof promptly and not later than settlement date in accordance with the terms of this transaction and that you do not contemplate the sale of such securities prior to making such payment. If this transaction is a sale by you in a cash account and the securities described on the face herof are not already held in your account with us, we are acting upon your representation that you or your principals own such securities, and it is agreed that you will promptly and not later than the settlement date deposit such securities with us. If full payment for the securities purchased by you in the transaction is not received or if the securities sold by you are not delivered in proper form on or after the first trading day after settlement date, we may at our option cancel or otherwise liquidate this transaction without notice to you, and you will be liable for any resulting loss, including without limitation, all expenses, attorney's fees and other costs and interest incurred thereon.

5. If this transaction is a purchase by you in a margin account it is agreed that sufficient cash or acceptable collateral will be deposited on or before settlement date to satisfy applicable margin requirements.

6. Provision of agreements and contracts shall inure to the benefit of your IB, NFC, or to any successor to your IB or NFC.

7. The execution price for this security may reflect an odd-lot differential if the number of shares transacted is less than a round lot or if all of the shares transacted cannot be executed in round lot increments.

8. Call features may exist for bonds, which could affect yield. Complete information will be provided upon written request.

9. If this transaction involves an asset-backed security that represents an interest in, or is secured by a pool of receivables or other financial assets that are subject continuously to prepayment, then the actual yield of such security may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning the factors that affect yield (including at a minimum estimated yield, weighted average life, and the prepayment assumptions of underlying yield) will be furnished upon your written request.

10. Zero coupon, Compound Interest and Multiplier Securities are callable below maturity value without notice by mail to holder unless registered.

11. If so noted on the front of the confirmation statement, our affiliate makes a market in this security, i.e., buying or selling for its own account on a continuous basis, and acted as principal in buying from or selling to you. NFC affiliate acting as market maker may discontinue the maintenance of such market at any time without notice. Your IB (if any) acted as your agent, charging you a commission for its service. Where this transaction is listed as executed by an NFC affiliate or a market maker, NFC or its affiliate acted in the capacity of specialist or market maker and filled the order at the inside market without mark-up or down. If average price transaction is indicated on the front of this confirmation statement, your IB or NFC may have acted as principal, agent or both on one or more exchanges. Details available through your IB.

12. NFC or IB receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. Such remuneration is considered compensation for NFC, and the source and amount of any compensation received by NFC in connection with your transaction will be disclosed upon request. Please contact your IB for a break down of any fees listed on this confirmation.

13. If this transaction is not entirely in accordance with Customer's understanding and directions, Customer must report any error or discrepancy within ten (10) days of receipt of this trade acknowledgement (confirmation) by forwarding a copy of this trade acknowledgement to the Compliance Officer at Customer's IB with the error noted. Otherwise, the transaction as stated on this trade acknowledgement shall be forever deemed to be correct and accepted by Customer.

14. Where your IB acted as agent or principal, NFC acted as clearing agent only.

PENNALUNA & COMPANY
421 Sherman Avenue • Suite 203 • Coeur d'Alene, Idaho 83814
(800) 535-5329 (208) 667-7472

# TRANSACTION CONFIRMATION

# SELL

**Brokerage Account Registration**

0DA 04233229 000432 00000407 001/001 00000188
DENI LEONARD
100 BUSH ST #600
SAN FRANCISCO CA 94104

**Brokerage Account Information**

Account # [redacted]606 Office 6DA
Rep 1657
MARK DILLON REDACTED

## BROKERAGE ACCOUNT TRANSACTION DETAIL

You sold 50000 shares of INDIGENOUS GLOBAL DEVELOPMENT CORPORATION BB at a trade reported price of $.08 per share.

| TRADE AMOUNT | COMMISSION | ST TAX/INTEREST | FEE | MISC FEE | PST\HDL | NET AMOUNT |
|---|---|---|---|---|---|---|
| 4,000.00 | | | .17 | | | 3,999.83 |

Trade Date: 07/14/2005 | Settle Date: 07/19/2005 | Transaction #: 0008d323

Additional Comments:

Sufficient shares to cover this sale must be in your brokerage account by settlement date.
This sale will be settled in accordance with your account instructions.

This sell:
* The MARKET in which the transaction was executed
  Over The Counter/Multiple Markets
* The CAPACITY in which customer's IB or NFC is acting
  As principal and/or making a market in this security, may have received a profit on this transaction.
  a. An officer of the IB or NFC may be affiliated with the issuer of the security shown herein.
  b. Commissions may be allocated among various corporate and or individual affiliates of the IB or NFC, including registered broker/dealer and registered investment advisor.
* Was unsolicited.

This security:
* Has an assigned industry standard identification number of 45567W109
* Has a standard trading symbol of IGDC

Additional Information:
* We make a market in this security.
Please remit payment to: NF Clearing, Inc., One Commerce Square, 2005 Market Street, Philadelphia, PA 19103

Special Instructions:

**IT IS AGREED BETWEEN THE CUSTOMER ("CUSTOMER"), HIS/HER/ITS INTRODUCING BROKER ("IB") AND THE IB'S CLEARING FIRM ("NF CLEARING, INC." OR "NFC"):**

1. All transactions are subject to the rules, regulations, customs and usages of the exchange or market (and the clearing agency, if any) where executed and to any association whose rules and regulations govern transactions in that market and your account agreements with the IB and/or NFC. We will furnish, upon written request, the date and time when this transaction took place and the name of the other party to this transaction.

2. Any transaction executed in the over-the-counter market is subject to the Uniform Practice Code of the National Association of Securities Dealers, Inc. The name of the other broker or party and the time of execution will be furnished upon request.

3. Securities purchased on a cash or margin basis are or may be hypothecated under circumstances which will permit the commingling thereof with securities carried for other customers, but such securities, if hypothecated, will be withdrawn from hypothecation as soon as practicable after receipt of payment therefore.

4. If this transaction is a purchase by you in a cash account and sufficient funds are not already in your account with us, it is agreed that you will make full payment for the securities described on the face hereof promptly and not later than settlement date in accordance with the terms of this transaction and that you do not contemplate the sale of such securities prior to making such payment. If this transaction is a sale by you in a cash account and the securities described on the face herof are not already held in your account with us, we are acting upon your representation that you or your principals own such securities, and it is agreed that you will promptly and not later than the settlement date deposit such securities with us. If full payment for the securities purchased by you in the transaction is not received or if the securities sold by you are not delivered in proper form on or after the first trading day after settlement date, we may at our option cancel or otherwise liquidate this transaction without notice to you, and you will be liable for any resulting loss, including without limitation, all expenses, attorney's fees and other costs and interest incurred thereon.

5. If this transaction is a purchase by you in a margin account it is agreed that sufficient cash or acceptable collateral will be deposited on or before settlement date to satisfy applicable margin requirements.

6. Provision of agreements and contracts shall inure to the benefit of your IB, NFC, or to any successor to your IB or NFC.

7. The execution price for this security may reflect an odd-lot differential if the number of shares transacted is less than a round lot or if all of the shares transacted cannot be executed in round lot increments.

8. Call features may exist for bonds, which could affect yield. Complete information will be provided upon written request.

9. If this transaction involves an asset-backed security that represents an interest in, or is secured by a pool of receivables or other financial assets that are subject continuously to prepayment, then the actual yield of such security may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning the factors that affect yield (including at a minimum estimated yield, weighted average life, and the prepayment assumptions of underlying yield) will be furnished upon your written request.

10. Zero coupon, Compound Interest and Multiplier Securities are callable below maturity value without notice by mail to holder unless registered.

11. If so noted on the front of the confirmation statement, our affiliate makes a market in this security, i.e., buying or selling for its own account on a continuous basis, and acted as principal in buying from or selling to you. NFC affiliate acting as market maker may discontinue the maintenance of such market at any time without notice. Your IB (if any) acted as your agent, charging you a commission for its service. Where this transaction is listed as executed by an NFC affiliate or a market maker, NFC or its affiliate acted in the capacity of specialist or market maker and filled the order at the inside market without mark-up or down. If average price transaction is indicated on the front of this confirmation statement, your IB or NFC may have acted as principal, agent or both on one or more exchanges, Details available through your IB.

12. NFC or IB receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. Such remuneration is considered compensation for NFC, and the source and amount of any compensation received by NFC in connection with your transaction will be disclosed upon request. Please contact your IB for a break down of any fees listed on this confirmation.

13. If this transaction is not entirely in accordance with Customer's understanding and directions, Customer must report any error or discrepancy within ten (10) days of receipt of this trade acknowledgement (confirmation) by forwarding a copy of this trade acknowledgement to the Compliance Officer at Customer's IB with the error noted. Otherwise, the transaction as stated on this trade acknowledgement shall be forever deemed to be correct and accepted by Customer.

14. Where your IB acted as agent or principal, NFC acted as clearing agent only.

PENNALUNA & COMPANY
421 Sherman Avenue – Suite 203 • Coeur d'Alene, Idaho 83814
(800) 535-5329 (208) 667-7472

# TRANSACTION CONFIRMATION

# SELL

| Brokerage Account Registration | Brokerage Account Information |
|---|---|
| 6DA 04233560 000285 00000281 001/001 00000185<br>DENI LEONARD<br>100 BUSH ST #600<br>SAN FRANCISCO CA 94104 | Account #: [redacted]5606 Office: 6DA Rep: 1657<br>MARK DILLON |

## BROKERAGE ACCOUNT TRANSACTION DETAIL

You sold 25000 shares of INDIGENOUS GLOBAL DEVELOPMENT CORPORATION BB at a trade reported price of $ .085 per share.

| TRADE AMOUNT | COMMISSION | ST. TAX/INTEREST | FEE | MISC. FEE | PST\HDL | NET AMOUNT |
|---|---|---|---|---|---|---|
| 2,125.00 | | | .09 | | | 2,124.91 |

Trade Date: 07/15/2005 | Settle Date: 07/20/2005 | Transaction #: 00020370

Additional Comments:

Sufficient shares to cover this sale must be in your brokerage account by settlement date.
This sale will be settled in accordance with your account instructions.

This sell:
* The MARKET in which the transaction was executed: Over The Counter/Multiple Markets
* The CAPACITY in which customer's IB or NFC is acting: As principal and/or making a market in this security, may have received a profit on this transaction.
  a. An officer of the IB or NFC may be affiliated with the issuer of the security shown herein.
  b. Commissions may be allocated among various corporate and or individual affiliates of the IB or NFC, including registered broker/dealer and registered investment advisor.
* Was unsolicited.

This security:
* Has an assigned industry standard identification number of 45567W109
* Has a standard trading symbol of IGDC

Additional Information:
* We make a market in this security.
Please remit payment to: NF Clearing, Inc., One Commerce Square, 2005 Market Street, Philadelphia, PA 19103

Special Instructions:

ACCOUNTS CARRIED WITH NF CLEARING, INC. MEMBER NYSE/NASD/SIPC

Cat # ECSTMT

**IT IS AGREED BETWEEN THE CUSTOMER ("CUSTOMER"), HIS/HER/ITS INTRODUCING BROKER ("IB") AND THE IB'S CLEARING FIRM ("NF CLEARING, INC." OR "NFC"):**

1. All transactions are subject to the rules, regulations, customs and usages of the exchange or market (and the clearing agency, if any) where executed and to any association whose rules and regulations govern transactions in that market and your account agreements with the IB and/or NFC. We will furnish, upon written request, the date and time when this transaction took place and the name of the other party to this transaction.

2. Any transaction executed in the over-the-counter market is subject to the Uniform Practice Code of the National Association of Securities Dealers, Inc. The name of the other broker or party and the time of execution will be furnished upon request.

3. Securities purchased on a cash or margin basis are or may be hypothecated under circumstances which will permit the commingling thereof with securities carried for other customers, but such securities, if hypothecated, will be withdrawn from hypothecation as soon as practicable after receipt of payment therefore.

4. If this transaction is a purchase by you in a cash account and sufficient funds are not already in your account with us, it is agreed that you will make full payment for the securities described on the face hereof promptly and not later than settlement date in accordance with the terms of this transaction and that you do not contemplate the sale of such securities prior to making such payment. If this transaction is a sale by you in a cash account and the securities described on the face herof are not already held in your account with us, we are acting upon your representation that you or your principals own such securities, and it is agreed that you will promptly and not later than the settlement date deposit such securities with us. If full payment for the securities purchased by you in the transaction is not received or if the securities sold by you are not delivered in proper form on or after the first trading day after settlement date, we may at our option cancel or otherwise liquidate this transaction without notice to you, and you will be liable for any resulting loss, including without limitation, all expenses, attorney's fees and other costs and interest incurred thereon.

5. If this transaction is a purchase by you in a margin account it is agreed that sufficient cash or acceptable collateral will be deposited on or before settlement date to satisfy applicable margin requirements.

6. Provision of agreements and contracts shall inure to the benefit of your IB, NFC, or to any successor to your IB or NFC.

7. The execution price for this security may reflect an odd-lot differential if the number of shares transacted is less than a round lot or if all of the shares transacted cannot be executed in round lot increments.

8. Call features may exist for bonds, which could affect yield. Complete information will be provided upon written request.

9. If this transaction involves an asset-backed security that represents an interest in, or is secured by a pool of receivables or other financial assets that are subject continuously to prepayment, then the actual yield of such security may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning the factors that affect yield (including at a minimum estimated yield, weighted average life, and the prepayment assumptions of underlying yield) will be furnished upon your written request.

10. Zero coupon, Compound Interest and Multiplier Securities are callable below maturity value without notice by mail to holder unless registered.

11. If so noted on the front of the confirmation statement, our affiliate makes a market in this security, i.e., buying or selling for its own account on a continuous basis, and acted as principal in buying from or selling to you. NFC affiliate acting as market maker may discontinue the maintenance of such market at any time without notice. Your IB (if any) acted as your agent, charging you a commission for its service. Where this transaction is listed as executed by an NFC affiliate or a market maker, NFC or its affiliate acted in the capacity of specialist or market maker and filled the order at the inside market without mark-up or down. If average price transaction is indicated on the front of this confirmation statement, your IB or NFC may have acted as principal, agent or both on one or more exchanges, Details available through your IB.

12. NFC or IB receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. Such remuneration is considered compensation for NFC, and the source and amount of any compensation received by NFC in connection with your transaction will be disclosed upon request. Please contact your IB for a break down of any fees listed on this confirmation.

13. If this transaction is not entirely in accordance with Customer's understanding and directions, Customer must report any error or discrepancy within ten (10) days of receipt of this trade acknowledgement (confirmation) by forwarding a copy of this trade acknowledgement to the Compliance Officer at Customer's IB with the error noted. Otherwise, the transaction as stated on this trade acknowledgement shall be forever deemed to be correct and accepted by Customer.

14. Where your IB acted as agent or principal, NFC acted as clearing agent only.

PENNALUNA & COMPANY
421 Sherman Avenue — Suite 203 • Coeur d'Alene, Idaho 83814
(800) 535-5329 (208) 667-7472

# TRANSACTION CONFIRMATION

# SELL

**Brokerage Account Registration**

6DA 04238150 0000410 000040 001/001 00000233

DENI LEONARD
100 BUSH ST #600
SAN FRANCISCO CA 94104

**Brokerage Account Information**

Account # [redacted]606 Office 6DA
Rep 163
MARK DILLON

**BROKERAGE ACCOUNT TRANSACTION DETAIL**

You sold 70000 shares of INDIGENOUS GLOBAL DEVELOPMENT CORPORATION BB at a trade reported price of $ [illegible] 081 per share.

| TRADE AMOUNT | COMMISSION | ST. TAX/INTEREST | FEE | MISC FEE | PST/HDL | NET AMOUNT |
|---|---|---|---|---|---|---|
| 5,670.00 | | | 24 | | | 5,669.76 |

| Trade Date: 07/21/2005 | Settle Date: 07/26/2005 | Transaction #: 00059369 |
|---|---|---|

Additional Comments:

Sufficient shares to cover this sale must be in your brokerage account by settlement date.
This sale will be settled in accordance with your account instructions.

This sell:
* The MARKET in which the transaction was executed:
  Over The Counter/Multiple Markets
* The CAPACITY in which customer's IB or NFC is acting:
  As principal and/or making a market in this security, may have received a profit on this transaction.
  a. An officer of the IB or NFC may be affiliated with the issuer of the security shown herein.
  b. Commissions may be allocated among various corporate and or individual affiliates of the IB or NFC, including registered broker/dealer and registered investment advisor.
* Was unsolicited.

This security:
* Has an assigned industry standard identification number of 45567W109
* Has a standard trading symbol of IGDC

Additional Information:
* We make a market in this security.
Please remit payment to: NF Clearing, Inc., One Commerce Square, 2005 Market Street, Philadelphia, PA 19103

Special Instructions:



Cat # ECSTMT

**IT IS AGREED BETWEEN THE CUSTOMER ("CUSTOMER"), HIS/HER/ITS INTRODUCING BROKER ("IB") AND THE IB'S CLEARING FIRM ("NF CLEARING, INC." OR "NFC"):**

1. All transactions are subject to the rules, regulations, customs and usages of the exchange or market (and the clearing agency, if any) where executed and to any association whose rules and regulations govern transactions in that market and your account agreements with the IB and/or NFC. We will furnish, upon written request, the date and time when this transaction took place and the name of the other party to this transaction.

2. Any transaction executed in the over-the-counter market is subject to the Uniform Practice Code of the National Association of Securities Dealers, Inc. The name of the other broker or party and the time of execution will be furnished upon request.

3. Securities purchased on a cash or margin basis are or may be hypothecated under circumstances which will permit the commingling thereof with securities carried for other customers, but such securities, if hypothecated, will be withdrawn from hypothecation as soon as practicable after receipt of payment therefore.

4. If this transaction is a purchase by you in a cash account and sufficient funds are not already in your account with us, it is agreed that you will make full payment for the securities described on the face hereof promptly and not later than settlement date in accordance with the terms of this transaction and that you do not contemplate the sale of such securities prior to making such payment. If this transaction is a sale by you in a cash account and the securities described on the face herof are not already held in your account with us, we are acting upon your representation that you or your principals own such securities, and it is agreed that you will promptly and not later than the settlement date deposit such securities with us. If full payment for the securities purchased by you in the transaction is not received or if the securities sold by you are not delivered in proper form on or after the first trading day after settlement date, we may at our option cancel or otherwise liquidate this transaction without notice to you, and you will be liable for any resulting loss, including without limitation, all expenses, attorney's fees and other costs and interest incurred thereon.

5. If this transaction is a purchase by you in a margin account it is agreed that sufficient cash or acceptable collateral will be deposited on or before settlement date to satisfy applicable margin requirements.

6. Provision of agreements and contracts shall inure to the benefit of your IB, NFC, or to any successor to your IB or NFC.

7. The execution price for this security may reflect an odd-lot differential if the number of shares transacted is less than a round lot or if all of the shares transacted cannot be executed in round lot increments.

8. Call features may exist for bonds, which could affect yield. Complete information will be provided upon written request.

9. If this transaction involves an asset-backed security that represents an interest in, or is secured by a pool of receivables or other financial assets that are subject continuously to prepayment, then the actual yield of such security may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning the factors that affect yield (including at a minimum estimated yield, weighted average life, and the prepayment assumptions of underlying yield) will be furnished upon your written request.

10. Zero coupon, Compound Interest and Multiplier Securities are callable below maturity value without notice by mail to holder unless registered.

11. If so noted on the front of the confirmation statement, our affiliate makes a market in this security, i.e., buying or selling for its own account on a continuous basis, and acted as principal in buying from or selling to you. NFC affiliate acting as market maker may discontinue the maintenance of such market at any time without notice. Your IB (if any) acted as your agent, charging you a commission for its service. Where this transaction is listed as executed by an NFC affiliate or a market maker, NFC or its affiliate acted in the capacity of specialist or market maker and filled the order at the inside market without mark-up or down. If average price transaction is indicated on the front of this confirmation statement, your IB or NFC may have acted as principal, agent or both on one or more exchanges, Details available through your IB.

12. NFC or IB receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. Such remuneration is considered compensation for NFC, and the source and amount of any compensation received by NFC in connection with your transaction will be disclosed upon request. Please contact your IB for a break down of any fees listed on this confirmation.

13. If this transaction is not entirely in accordance with Customer's understanding and directions, Customer must report any error or discrepancy within ten (10) days of receipt of this trade acknowledgement (confirmation) by forwarding a copy of this trade acknowledgement to the Compliance Officer at Customer's IB with the error noted. Otherwise, the transaction as stated on this trade acknowledgement shall be forever deemed to be correct and accepted by Customer.

14. Where your IB acted as agent or principal, NFC acted as clearing agent only.

PENNALUNA & COMPANY
421 Sherman Avenue – Suite 203 – Coeur d'Alene, Idaho 83814
(800) 535-5329 – (208) 667-7472

# TRANSACTION CONFIRMATION

# SELL

| Brokerage Account Registration | Brokerage Account Information |
|---|---|
| 6DA 042413 00369 0000355 0070016 00000213<br>DENI LEONARD<br>100 BUSH ST #600<br>SAN FRANCISCO CA 94104 | Account # [redacted]5600 Office 6DA<br>Rep 1007<br>MARK DILLON |

## BROKERAGE ACCOUNT TRANSACTION DETAIL

You sold 35000 shares of INDIGENOUS GLOBAL DEVELOPMENT CORPORATION BB at a trade reported price of $ .08 per share.

| TRADE AMOUNT | COMMISSION | ST. TAX/INTEREST | FEE | MISC FEE | PST HDL | NET AMOUNT |
|---|---|---|---|---|---|---|
| 2,800.00 | | | 12 | | | 2,799.88 |

| Trade Date 07/26/2005 | Settle Date 07/29/2005 | Transaction # 00073240 |
|---|---|---|

Additional Comments:

Sufficient shares to cover this sale must be in your brokerage account by settlement date.
This sale will be settled in accordance with your account instructions.

This sell:
* The MARKET in which the transaction was executed: Over The Counter/Multiple Markets
* The CAPACITY in which customer's IB or NFC is acting: As principal and/or making a market in this security; may have received a profit on this transaction.
* a. An officer of the IB or NFC may be affiliated with the issuer of the security shown herein.
* b. Commissions may be allocated among various corporate and/or individual affiliates of the IB or NFC, including registered broker/dealer and registered investment advisor.
* Was unsolicited

This security:
* Has an assigned industry standard identification number of 45567W109
* Has a standard trading symbol of IGDC

Additional Information:
* We make a market in this security.

Please remit payment to: NF Clearing, Inc., One Commerce Square, 2005 Market Street, Philadelphia, PA 19103

Special Instructions:

**IT IS AGREED BETWEEN THE CUSTOMER ("CUSTOMER"), HIS/HER/ITS INTRODUCING BROKER ("IB") AND THE IB'S CLEARING FIRM ("NF CLEARING, INC." OR "NFC"):**

1. All transactions are subject to the rules, regulations, customs and usages of the exchange or market (and the clearing agency, if any) where executed and to any association whose rules and regulations govern transactions in that market and your account agreements with the IB and/or NFC. We will furnish, upon written request, the date and time when this transaction took place and the name of the other party to this transaction.

2. Any transaction executed in the over-the-counter market is subject to the Uniform Practice Code of the National Association of Securities Dealers, Inc. The name of the other broker or party and the time of execution will be furnished upon request.

3. Securities purchased on a cash or margin basis are or may be hypothecated under circumstances which will permit the commingling thereof with securities carried for other customers, but such securities, if hypothecated, will be withdrawn from hypothecation as soon as practicable after receipt of payment therefore.

4. If this transaction is a purchase by you in a cash account and sufficient funds are not already in your account with us, it is agreed that you will make full payment for the securities described on the face hereof promptly and not later than settlement date in accordance with the terms of this transaction and that you do not contemplate the sale of such securities prior to making such payment. If this transaction is a sale by you in a cash account and the securities described on the face herof are not already held in your account with us, we are acting upon your representation that you or your principals own such securities, and it is agreed that you will promptly and not later than the settlement date deposit such securities with us. If full payment for the securities purchased by you in the transaction is not received or if the securities sold by you are not delivered in proper form on or after the first trading day after settlement date, we may at our option cancel or otherwise liquidate this transaction without notice to you, and you will be liable for any resulting loss, including without limitation, all expenses, attorney's fees and other costs and interest incurred thereon.

5. If this transaction is a purchase by you in a margin account it is agreed that sufficient cash or acceptable collateral will be deposited on or before settlement date to satisfy applicable margin requirements.

6. Provision of agreements and contracts shall inure to the benefit of your IB, NFC, or to any successor to your IB or NFC.

7. The execution price for this security may reflect an odd-lot differential if the number of shares transacted is less than a round lot or if all of the shares transacted cannot be executed in round lot increments.

8. Call features may exist for bonds, which could affect yield. Complete information will be provided upon written request.

9. If this transaction involves an asset-backed security that represents an interest in, or is secured by a pool of receivables or other financial assets that are subject continuously to prepayment, then the actual yield of such security may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning the factors that affect yield (including at a minimum estimated yield, weighted average life, and the prepayment assumptions of underlying yield) will be furnished upon your written request.

10. Zero coupon, Compound Interest and Multiplier Securities are callable below maturity value without notice by mail to holder unless registered.

11. If so noted on the front of the confirmation statement, our affiliate makes a market in this security, i.e., buying or selling for its own account on a continuous basis, and acted as principal in buying from or selling to you. NFC affiliate acting as market maker may discontinue the maintenance of such market at any time without notice. Your IB (if any) acted as your agent, charging you a commission for its service. Where this transaction is listed as executed by an NFC affiliate or a market maker, NFC or its affiliate acted in the capacity of specialist or market maker and filled the order at the inside market without mark-up or down. If average price transaction is indicated on the front of this confirmation statement, your IB or NFC may have acted as principal, agent or both on one or more exchanges, Details available through your IB.

12. NFC or IB receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. Such remuneration is considered compensation for NFC, and the source and amount of any compensation received by NFC in connection with your transaction will be disclosed upon request. Please contact your IB for a break down of any fees listed on this confirmation.

13. If this transaction is not entirely in accordance with Customer's understanding and directions, Customer must report any error or discrepancy within ten (10) days of receipt of this trade acknowledgement (confirmation) by forwarding a copy of this trade acknowledgement to the Compliance Officer at Customer's IB with the error noted. Otherwise, the transaction as stated on this trade acknowledgement shall be forever deemed to be correct and accepted by Customer.

14. Where your IB acted as agent or principal, NFC acted as clearing agent only.

**PENNALUNA & COMPANY**

421 Sherman Avenue — Suite 203 • Coeur d'Alene, Idaho 83814
(800) 535-5329 (208) 667-7472

**TRANSACTION CONFIRMATION**

# SELL

| Brokerage Account Registration | Brokerage Account Information |
|---|---|
| 6DA 04259651 000481 00000473 001/001 00000205<br>DENI LEONARD<br>100 BUSH ST #600<br>SAN FRANCISCO CA 94104 | Account #: [redacted]6606 Office: 6DA<br>Rep: 1657<br>MARK DILLON REDACTED |

**BROKERAGE ACCOUNT TRANSACTION DETAIL**

You sold 10000 shares of INDIGENOUS GLOBAL DEVELOPMENT CORPORATION BB at a trade reported price of $ .065 per share.

| TRADE AMOUNT | COMMISSION | ST. TAX/INTEREST | FEE | MISC. FEE | PST\HDL | NET AMOUNT |
|---|---|---|---|---|---|---|
| 650.00 | | | .03 | | | 649.97 |

| Trade Date: 08/19/2005 | Settle Date: 08/24/2005 | Transaction #: 00088658 |
|---|---|---|

Additional Comments:

Sufficient shares to cover this sale must be in your brokerage account by settlement date.
This sale will be settled in accordance with your account instructions.

This sell:
* The MARKET in which the transaction was executed:
  Over The Counter/Multiple Markets
* The CAPACITY in which customer's IB or NFC is acting:
  As principal and/or making a market in this security, may have received a profit on this transaction.
  a. An officer of the IB or NFC may be affiliated with the issuer of the security shown herein.
  b. Commissions may be allocated among various corporate and or individual affiliates of the IB or NFC, including registered broker/dealer and registered investment advisor.
* Was unsolicited.

This security:
* Has an assigned industry standard identification number of 45567W109.
* Has a standard trading symbol of IGDC.

Additional Information:
* We make a market in this security.

Please remit payment to: NF Clearing, Inc., One Commerce Square, 2005 Market Street, Philadelphia, PA 19103

Special Instructions:



Cat # ECSTMT

**IT IS AGREED BETWEEN THE CUSTOMER ("CUSTOMER"), HIS/HER/ITS INTRODUCING BROKER ("IB") AND THE IB'S CLEARING FIRM ("NF CLEARING, INC." OR "NFC"):**

1. All transactions are subject to the rules, regulations, customs and usages of the exchange or market (and the clearing agency, if any) where executed and to any association whose rules and regulations govern transactions in that market and your account agreements with the IB and/or NFC. We will furnish, upon written request, the date and time when this transaction took place and the name of the other party to this transaction.

2. Any transaction executed in the over-the-counter market is subject to the Uniform Practice Code of the National Association of Securities Dealers, Inc. The name of the other broker or party and the time of execution will be furnished upon request.

3. Securities purchased on a cash or margin basis are or may be hypothecated under circumstances which will permit the commingling thereof with securities carried for other customers, but such securities, if hypothecated, will be withdrawn from hypothecation as soon as practicable after receipt of payment therefore.

4. If this transaction is a purchase by you in a cash account and sufficient funds are not already in your account with us, it is agreed that you will make full payment for the securities described on the face hereof promptly and not later than settlement date in accordance with the terms of this transaction and that you do not contemplate the sale of such securities prior to making such payment. If this transaction is a sale by you in a cash account and the securities described on the face herof are not already held in your account with us, we are acting upon your representation that you or your principals own such securities, and it is agreed that you will promptly and not later than the settlement date deposit such securities with us. If full payment for the securities purchased by you in the transaction is not received or if the securities sold by you are not delivered in proper form on or after the first trading day after settlement date, we may at our option cancel or otherwise liquidate this transaction without notice to you, and you will be liable for any resulting loss, including without limitation, all expenses, attorney's fees and other costs and interest incurred thereon.

5. If this transaction is a purchase by you in a margin account it is agreed that sufficient cash or acceptable collateral will be deposited on or before settlement date to satisfy applicable margin requirements.

6. Provision of agreements and contracts shall inure to the benefit of your IB, NFC, or to any successor to your IB or NFC.

7. The execution price for this security may reflect an odd-lot differential if the number of shares transacted is less than a round lot or if all of the shares transacted cannot be executed in round lot increments.

8. Call features may exist for bonds, which could affect yield. Complete information will be provided upon written request.

9. If this transaction involves an asset-backed security that represents an interest in, or is secured by a pool of receivables or other financial assets that are subject continuously to prepayment, then the actual yield of such security may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning the factors that affect yield (including at a minimum estimated yield, weighted average life, and the prepayment assumptions of underlying yield) will be furnished upon your written request.

10. Zero coupon, Compound Interest and Multiplier Securities are callable below maturity value without notice by mail to holder unless registered.

11. If so noted on the front of the confirmation statement, our affiliate makes a market in this security, i.e., buying or selling for its own account on a continuous basis, and acted as principal in buying from or selling to you. NFC affiliate acting as market maker may discontinue the maintenance of such market at any time without notice. Your IB (if any) acted as your agent, charging you a commission for its service. Where this transaction is listed as executed by an NFC affiliate or a market maker, NFC or its affiliate acted in the capacity of specialist or market maker and filled the order at the inside market without mark-up or down. If average price transaction is indicated on the front of this confirmation statement, your IB or NFC may have acted as principal, agent or both on one or more exchanges. Details available through your IB.

12. NFC or IB receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. Such remuneration is considered compensation for NFC, and the source and amount of any compensation received by NFC in connection with your transaction will be disclosed upon request. Please contact your IB for a break down of any fees listed on this confirmation.

13. If this transaction is not entirely in accordance with Customer's understanding and directions, Customer must report any error or discrepancy within ten (10) days of receipt of this trade acknowledgement (confirmation) by forwarding a copy of this trade acknowledgement to the Compliance Officer at Customer's IB with the error noted. Otherwise, the transaction as stated on this trade acknowledgement shall be forever deemed to be correct and accepted by Customer.

14. Where your IB acted as agent or principal, NFC acted as clearing agent only.

# PENNALUNA & COMPANY

## TRANSACTION CONFIRMATION

421 Sherman Avenue — Suite 203 • Coeur d'Alene, Idaho 83814
(800) 535-5329 (208) 667-7472

## SELL

**Brokerage Account Registration**

6DA 04260887 000443 00000435 001/001 00000224

DENI LEONARD
100 BUSH ST #600
SAN FRANCISCO CA 94104

**Brokerage Account Information**

Account #: [redacted]5606 Office: 6DA
Rep: 1657

MARK DILLON

**BROKERAGE ACCOUNT TRANSACTION DETAIL**

You sold 40000 shares of INDIGENOUS GLOBAL DEVELOPMENT CORPORATION BB at a trade reported price of $.07 per share.

| TRADE AMOUNT | COMMISSION | ST. TAX/INTEREST | FEE | MISC. FEE | PST/HDL | NET AMOUNT |
|---|---|---|---|---|---|---|
| 2,800.00 | | | .12 | | | 2,799.88 |

Trade Date: 08/22/2005 Settle Date: 08/25/2005 Transaction #: 00031836

Additional Comments:

Sufficient shares to cover this sale must be in your brokerage account by settlement date.
This sale will be settled in accordance with your account instructions.

This sell:
* The MARKET in which the transaction was executed: Over The Counter/Multiple Markets
* The CAPACITY in which customers IB or NFC is acting: As principal and/or making a market in this security, may have received a profit on this transaction.
a. An officer of the IB or NFC may be affiliated with the issuer of the security shown herein.
b. Commissions may be allocated among various corporate and or individual affiliates of the IB or NFC, including registered broker/dealer and registered investment advisor.
* Was unsolicited.

This security:
* Has an assigned industry standard identification number of 45567W109
* Has a standard trading symbol of IGDC

Additional Information:
* We make a market in this security.
Please remit payment to: NF Clearing, Inc., One Commerce Square, 2005 Market Street, Philadelphia, PA 19103

Special Instructions:

**IT IS AGREED BETWEEN THE CUSTOMER ("CUSTOMER"), HIS/HER/ITS INTRODUCING BROKER ("IB") AND THE IB'S CLEARING FIRM ("NF CLEARING, INC." OR "NFC"):**

1. All transactions are subject to the rules, regulations, customs and usages of the exchange or market (and the clearing agency, if any) where executed and to any association whose rules and regulations govern transactions in that market and your account agreements with the IB and/or NFC. We will furnish, upon written request, the date and time when this transaction took place and the name of the other party to this transaction.

2. Any transaction executed in the over-the-counter market is subject to the Uniform Practice Code of the National Association of Securities Dealers, Inc. The name of the other broker or party and the time of execution will be furnished upon request.

3. Securities purchased on a cash or margin basis are or may be hypothecated under circumstances which will permit the commingling thereof with securities carried for other customers, but such securities, if hypothecated, will be withdrawn from hypothecation as soon as practicable after receipt of payment therefore.

4. If this transaction is a purchase by you in a cash account and sufficient funds are not already in your account with us, it is agreed that you will make full payment for the securities described on the face hereof promptly and not later than settlement date in accordance with the terms of this transaction and that you do not contemplate the sale of such securities prior to making such payment. If this transaction is a sale by you in a cash account and the securities described on the face herof are not already held in your account with us, we are acting upon your representation that you or your principals own such securities, and it is agreed that you will promptly and not later than the settlement date deposit such securities with us. If full payment for the securities purchased by you in the transaction is not received or if the securities sold by you are not delivered in proper form on or after the first trading day after settlement date, we may at our option cancel or otherwise liquidate this transaction without notice to you, and you will be liable for any resulting loss, including without limitation, all expenses, attorney's fees and other costs and interest incurred thereon.

5. If this transaction is a purchase by you in a margin account it is agreed that sufficient cash or acceptable collateral will be deposited on or before settlement date to satisfy applicable margin requirements.

6. Provision of agreements and contracts shall inure to the benefit of your IB, NFC, or to any successor to your IB or NFC.

7. The execution price for this security may reflect an odd-lot differential if the number of shares transacted is less than a round lot or if all of the shares transacted cannot be executed in round lot increments.

8. Call features may exist for bonds, which could affect yield. Complete information will be provided upon written request.

9. If this transaction involves an asset-backed security that represents an interest in, or is secured by a pool of receivables or other financial assets that are subject continuously to prepayment, then the actual yield of such security may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning the factors that affect yield (including at a minimum estimated yield, weighted average life, and the prepayment assumptions of underlying yield) will be furnished upon your written request.

10. Zero coupon, Compound Interest and Multiplier Securities are callable below maturity value without notice by mail to holder unless registered.

11. If so noted on the front of the confirmation statement, our affiliate makes a market in this security, i.e., buying or selling for its own account on a continuous basis, and acted as principal in buying from or selling to you. NFC affiliate acting as market maker may discontinue the maintenance of such market at any time without notice. Your IB (if any) acted as your agent, charging you a commission for its service. Where this transaction is listed as executed by an NFC affiliate or a market maker, NFC or its affiliate acted in the capacity of specialist or market maker and filled the order at the inside market without mark-up or down. If average price transaction is indicated on the front of this confirmation statement, your IB or NFC may have acted as principal, agent or both on one or more exchanges. Details available through your IB.

12. NFC or IB receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. Such remuneration is considered compensation for NFC, and the source and amount of any compensation received by NFC in connection with your transaction will be disclosed upon request. Please contact your IB for a break down of any fees listed on this confirmation.

13. If this transaction is not entirely in accordance with Customer's understanding and directions, Customer must report any error or discrepancy within ten (10) days of receipt of this trade acknowledgement (confirmation) by forwarding a copy of this trade acknowledgement to the Compliance Officer at Customer's IB with the error noted. Otherwise, the transaction as stated on this trade acknowledgement shall be forever deemed to be correct and accepted by Customer.

14. Where your IB acted as agent or principal, NFC acted as clearing agent only.

PENNALUNA & COMPANY
121 Sherman Avenue – Suite 203 • Coeur d'Alene, Idaho 83814
(800) 535-5329 (208) 667-7472

# TRANSACTION CONFIRMATION

## SELL

| Brokerage Account Registration | Brokerage Account Information |
|---|---|
| 6DA 0426I813 000548 00000529 001/001 00000257<br>DENI LEONARD<br>100 BUSH ST. #600<br>SAN FRANCISCO CA 94104 | Account # [redacted]600 Office 6DA<br>Rep 1657<br>MARK DILLON |

## BROKERAGE ACCOUNT TRANSACTION DETAIL

You sold 70000 shares of INDIGENOUS GLOBAL DEVELOPMENT CORPORATION BB at a trade reported price of $ .091 per share.

| TRADE AMOUNT | COMMISSION | ST. TAX/INTEREST | FEE | MISC. FEE | PST/HDL | NET AMOUNT |
|---|---|---|---|---|---|---|
| 6,370.00 | | | .27 | | | 6,369.73 |

| Trade Date | Settle Date | Transaction # |
|---|---|---|
| 08/23/2005 | 08/26/2005 | 00061288 |

Additional Comments:

Sufficient shares to cover this sale must be in your brokerage account by settlement date.
This sale will be settled in accordance with your account instructions.

This sell:
* The MARKET in which the transaction was executed: Over The Counter/Multiple Markets
* The CAPACITY in which customer's IB or NFC is acting: As principal and/or making a market in this security, may have received a profit on this transaction.
a. An officer of the IB or NFC may be affiliated with the issuer of the security shown herein.
b. Commissions may be allocated among various corporate and or individual affiliates of the IB or NFC, including registered broker/dealer and registered investment advisor.
* Was unsolicited.

This security:
* Has an assigned industry standard identification number of 4556 W109
* Has a standard trading symbol of IGDC

Additional Information:
* We make a market in this security.
Please remit payment to: NF Clearing, Inc., One Commerce Square, 2005 Market Street, Philadelphia, PA 19103

Special Instructions:

**IT IS AGREED BETWEEN THE CUSTOMER ("CUSTOMER"), HIS/HER/ITS INTRODUCING BROKER ("IB") AND THE IB'S CLEARING FIRM ("NF CLEARING, INC." OR "NFC"):**

1. All transactions are subject to the rules, regulations, customs and usages of the exchange or market (and the clearing agency, if any) where executed and to any association whose rules and regulations govern transactions in that market and your account agreements with the IB and/or NFC. We will furnish, upon written request, the date and time when this transaction took place and the name of the other party to this transaction.

2. Any transaction executed in the over-the-counter market is subject to the Uniform Practice Code of the National Association of Securities Dealers, Inc. The name of the other broker or party and the time of execution will be furnished upon request.

3. Securities purchased on a cash or margin basis are or may be hypothecated under circumstances which will permit the commingling thereof with securities carried for other customers, but such securities, if hypothecated, will be withdrawn from hypothecation as soon as practicable after receipt of payment therefore.

4. If this transaction is a purchase by you in a cash account and sufficient funds are not already in your account with us, it is agreed that you will make full payment for the securities described on the face hereof promptly and not later than settlement date in accordance with the terms of this transaction and that you do not contemplate the sale of such securities prior to making such payment. If this transaction is a sale by you in a cash account and the securities described on the face herof are not already held in your account with us, we are acting upon your representation that you or your principals own such securities, and it is agreed that you will promptly and not later than the settlement date deposit such securities with us. If full payment for the securities purchased by you in the transaction is not received or if the securities sold by you are not delivered in proper form on or after the first trading day after settlement date, we may at our option cancel or otherwise liquidate this transaction without notice to you, and you will be liable for any resulting loss, including without limitation, all expenses, attorney's fees and other costs and interest incurred thereon.

5. If this transaction is a purchase by you in a margin account it is agreed that sufficient cash or acceptable collateral will be deposited on or before settlement date to satisfy applicable margin requirements.

6. Provision of agreements and contracts shall inure to the benefit of your IB, NFC, or to any successor to your IB or NFC.

7. The execution price for this security may reflect an odd-lot differential if the number of shares transacted is less than a round lot or if all of the shares transacted cannot be executed in round lot increments.

8. Call features may exist for bonds, which could affect yield. Complete information will be provided upon written request.

9. If this transaction involves an asset-backed security that represents an interest in, or is secured by a pool of receivables or other financial assets that are subject continuously to prepayment, then the actual yield of such security may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning the factors that affect yield (including at a minimum estimated yield, weighted average life, and the prepayment assumptions of underlying yield) will be furnished upon your written request.

10. Zero coupon, Compound Interest and Multiplier Securities are callable below maturity value without notice by mail to holder unless registered.

11. If so noted on the front of the confirmation statement, our affiliate makes a market in this security, i.e., buying or selling for its own account on a continuous basis, and acted as principal in buying from or selling to you. NFC affiliate acting as market maker may discontinue the maintenance of such market at any time without notice. Your IB (if any) acted as your agent, charging you a commission for its service. Where this transaction is listed as executed by an NFC affiliate or a market maker, NFC or its affiliate acted in the capacity of specialist or market maker and filled the order at the inside market without mark-up or down. If average price transaction is indicated on the front of this confirmation statement, your IB or NFC may have acted as principal, agent or both on one or more exchanges. Details available through your IB.

12. NFC or IB receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. Such remuneration is considered compensation for NFC, and the source and amount of any compensation received by NFC in connection with your transaction will be disclosed upon request. Please contact your IB for a break down of any fees listed on this confirmation.

13. If this transaction is not entirely in accordance with Customer's understanding and directions, Customer must report any error or discrepancy within ten (10) days of receipt of this trade acknowledgement (confirmation) by forwarding a copy of this trade acknowledgement to the Compliance Officer at Customer's IB with the error noted. Otherwise, the transaction as stated on this trade acknowledgement shall be forever deemed to be correct and accepted by Customer.

14. Where your IB acted as agent or principal, NFC acted as clearing agent only.

# PENNALUNA & COMPANY

121 Sherman Avenue • Suite 203 • Coeur d'Alene, Idaho 83814
(800) 535-5329 • (208) 667-7412

## TRANSACTION CONFIRMATION

## SELL

| Brokerage Account Registration | Brokerage Account Information |
|---|---|
| DENI LEONARD<br>100 BUSH ST #600<br>SAN FRANCISCO CA 94104 | Account # [redacted]5606 Office 6DA<br>Rep 1657<br>MARK DILLON<br>REDACTED |

### BROKERAGE ACCOUNT TRANSACTION DETAIL

You sold 14500 shares of INDIGENOUS GLOBAL DEVELOPMENT CORPORATION BB at a trade reported price of $.09 per share

| TRADE AMOUNT | COMMISSION | ST TAX/INTEREST | FEE | MISC. FEE | PST\HDL | NET AMOUNT |
|---|---|---|---|---|---|---|
| 1305.00 | | | .06 | | | 1304.94 |

Trade Date 08/24/2005 Settle Date 08/29/2005 Transaction # 00079209

Additional Comments

Sufficient shares to cover this sale must be in your brokerage account by settlement date.
This sale will be settled in accordance with your account instructions.

This sell:
* The MARKET in which the transaction was executed: Over The Counter/Multiple Markets
* The CAPACITY in which customer's IB or NFC is acting: As principal and/or making a market in this security, may have received a profit on this transaction.
  a. An officer of the IB or NFC may be affiliated with the issuer of the security shown herein.
  b. Commissions may be allocated among various corporate and/or individual affiliates of the IB or NFC including registered broker/dealer and registered investment advisor.
* Was unsolicited

This security:
* Has an assigned industry standard identification number of 45567W109
* Has a standard trading symbol of IGDC

Additional Information:
* We make a market in this security.

Please remit payment to: NF Clearing, Inc., One Commerce Square, 2005 Market Street, Philadelphia, PA 19103

Special Instructions:

**IT IS AGREED BETWEEN THE CUSTOMER ("CUSTOMER"), HIS/HER/ITS INTRODUCING BROKER ("IB") AND THE IB'S CLEARING FIRM ("NF CLEARING, INC." OR "NFC"):**

1. All transactions are subject to the rules, regulations, customs and usages of the exchange or market (and the clearing agency, if any) where executed and to any association whose rules and regulations govern transactions in that market and your account agreements with the IB and/or NFC. We will furnish, upon written request, the date and time when this transaction took place and the name of the other party to this transaction.

2. Any transaction executed in the over-the-counter market is subject to the Uniform Practice Code of the National Association of Securities Dealers, Inc. The name of the other broker or party and the time of execution will be furnished upon request.

3. Securities purchased on a cash or margin basis are or may be hypothecated under circumstances which will permit the commingling thereof with securities carried for other customers, but such securities, if hypothecated, will be withdrawn from hypothecation as soon as practicable after receipt of payment therefore.

4. If this transaction is a purchase by you in a cash account and sufficient funds are not already in your account with us, it is agreed that you will make full payment for the securities described on the face hereof promptly and not later than settlement date in accordance with the terms of this transaction and that you do not contemplate the sale of such securities prior to making such payment. If this transaction is a sale by you in a cash account and the securities described on the face herof are not already held in your account with us, we are acting upon your representation that you or your principals own such securities, and it is agreed that you will promptly and not later than the settlement date deposit such securities with us. If full payment for the securities purchased by you in the transaction is not received or if the securities sold by you are not delivered in proper form on or after the first trading day after settlement date, we may at our option cancel or otherwise liquidate this transaction without notice to you, and you will be liable for any resulting loss, including without limitation, all expenses, attorney's fees and other costs and interest incurred thereon.

5. If this transaction is a purchase by you in a margin account it is agreed that sufficient cash or acceptable collateral will be deposited on or before settlement date to satisfy applicable margin requirements.

6. Provision of agreements and contracts shall inure to the benefit of your IB, NFC, or to any successor to your IB or NFC.

7. The execution price for this security may reflect an odd-lot differential if the number of shares transacted is less than a round lot or if all of the shares transacted cannot be executed in round lot increments.

8. Call features may exist for bonds, which could affect yield. Complete information will be provided upon written request.

9. If this transaction involves an asset-backed security that represents an interest in, or is secured by a pool of receivables or other financial assets that are subject continuously to prepayment, then the actual yield of such security may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning the factors that affect yield (including at a minimum estimated yield, weighted average life, and the prepayment assumptions of underlying yield) will be furnished upon your written request.

10. Zero coupon, Compound Interest and Multiplier Securities are callable below maturity value without notice by mail to holder unless registered.

11. If so noted on the front of the confirmation statement, our affiliate makes a market in this security, i.e., buying or selling for its own account on a continuous basis, and acted as principal in buying from or selling to you. NFC affiliate acting as market maker may discontinue the maintenance of such market at any time without notice. Your IB (if any) acted as your agent, charging you a commission for its service. Where this transaction is listed as executed by an NFC affiliate or a market maker, NFC or its affiliate acted in the capacity of specialist or market maker and filled the order at the inside market without mark-up or down. If average price transaction is indicated on the front of this confirmation statement, your IB or NFC may have acted as principal, agent or both on one or more exchanges, Details available through your IB.

12. NFC or IB receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. Such remuneration is considered compensation for NFC, and the source and amount of any compensation received by NFC in connection with your transaction will be disclosed upon request. Please contact your IB for a break down of any fees listed on this confirmation.

13. If this transaction is not entirely in accordance with Customer's understanding and directions, Customer must report any error or discrepancy within ten (10) days of receipt of this trade acknowledgement (confirmation) by forwarding a copy of this trade acknowledgement to the Compliance Officer at Customer's IB with the error noted. Otherwise, the transaction as stated on this trade acknowledgement shall be forever deemed to be correct and accepted by Customer.

14. Where your IB acted as agent or principal, NFC acted as clearing agent only.

# PENNALUNA & COMPANY

421 Sherman Avenue – Suite 203 • Coeur d'Alene, Idaho 83814
(800) 535-5329 (208) 667-7472

## TRANSACTION CONFIRMATION

## SELL

| Brokerage Account Registration | Brokerage Account Information |
|---|---|
| 60A 04266467 000402 00000392 001/001 00000213<br>DENI LEONARD<br>100 BUSH ST #600<br>SAN FRANCISCO CA 94104 | Account #: [redacted]606 Office 6D<br>Rep 165[illegible]<br>MARK DILLON |

### BROKERAGE ACCOUNT TRANSACTION DETAIL

You sold 10000 shares of INDIGENOUS GLOBAL DEVELOPMENT CORPORATION BB at a trade reported price of $ .075 per share.

| TRADE AMOUNT | COMMISSION | ST. TAX/INTEREST | FEE | MISC. FEE | PST\HDL | NET AMOUNT |
|---|---|---|---|---|---|---|
| 750.00 | | | .04 | | | 749.96 |

| Trade Date: 08/30/2005 | Settle Date: 09/02/2005 | Transaction #: 00099753 |
|---|---|---|

Additional Comments:

Sufficient shares to cover this sale must be in your brokerage account by settlement date.
This sale will be settled in accordance with your account instructions.

This sell:
* The MARKET in which the transaction was executed: Over The Counter/Multiple Markets
* The CAPACITY in which customer's IB or NFC is acting: As principal and/or making a market in this security, may have received a profit on this transaction.
  a. An officer of the IB or NFC may be affiliated with the issuer of the security shown herein.
  b. Commissions may be allocated among various corporate and or individual affiliates of the IB or NFC, including registered broker/dealer and registered investment advisor.
* Was unsolicited.

This security:
* Has an assigned industry standard identification number of 45567W109.
* Has a standard trading symbol of IGDC.

Additional Information:
* We make a market in this security.
Please remit payment to: NF Clearing, Inc., One Commerce Square, 2005 Market Street, Philadelphia, PA 19103

Special Instructions:



Cat # ECSTMT

**IT IS AGREED BETWEEN THE CUSTOMER ("CUSTOMER"), HIS/HER/ITS INTRODUCING BROKER ("IB") AND THE IB'S CLEARING FIRM ("NF CLEARING, INC." OR "NFC"):**

1. All transactions are subject to the rules, regulations, customs and usages of the exchange or market (and the clearing agency, if any) where executed and to any association whose rules and regulations govern transactions in that market and your account agreements with the IB and/or NFC. We will furnish, upon written request, the date and time when this transaction took place and the name of the other party to this transaction.

2. Any transaction executed in the over-the-counter market is subject to the Uniform Practice Code of the National Association of Securities Dealers, Inc. The name of the other broker or party and the time of execution will be furnished upon request.

3. Securities purchased on a cash or margin basis are or may be hypothecated under circumstances which will permit the commingling thereof with securities carried for other customers, but such securities, if hypothecated, will be withdrawn from hypothecation as soon as practicable after receipt of payment therefore.

4. If this transaction is a purchase by you in a cash account and sufficient funds are not already in your account with us, it is agreed that you will make full payment for the securities described on the face hereof promptly and not later than settlement date in accordance with the terms of this transaction and that you do not contemplate the sale of such securities prior to making such payment. If this transaction is a sale by you in a cash account and the securities described on the face herof are not already held in your account with us, we are acting upon your representation that you or your principals own such securities, and it is agreed that you will promptly and not later than the settlement date deposit such securities with us. If full payment for the securities purchased by you in the transaction is not received or if the securities sold by you are not delivered in proper form on or after the first trading day after settlement date, we may at our option cancel or otherwise liquidate this transaction without notice to you, and you will be liable for any resulting loss, including without limitation, all expenses, attorney's fees and other costs and interest incurred thereon.

5. If this transaction is a purchase by you in a margin account it is agreed that sufficient cash or acceptable collateral will be deposited on or before settlement date to satisfy applicable margin requirements.

6. Provision of agreements and contracts shall inure to the benefit of your IB, NFC, or to any successor to your IB or NFC.

7. The execution price for this security may reflect an odd-lot differential if the number of shares transacted is less than a round lot or if all of the shares transacted cannot be executed in round lot increments.

8. Call features may exist for bonds, which could affect yield. Complete information will be provided upon written request.

9. If this transaction involves an asset-backed security that represents an interest in, or is secured by a pool of receivables or other financial assets that are subject continuously to prepayment, then the actual yield of such security may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning the factors that affect yield (including at a minimum estimated yield, weighted average life, and the prepayment assumptions of underlying yield) will be furnished upon your written request.

10. Zero coupon, Compound Interest and Multiplier Securities are callable below maturity value without notice by mail to holder unless registered.

11. If so noted on the front of the confirmation statement, our affiliate makes a market in this security, i.e., buying or selling for its own account on a continuous basis, and acted as principal in buying from or selling to you. NFC affiliate acting as market maker may discontinue the maintenance of such market at any time without notice. Your IB (if any) acted as your agent, charging you a commission for its service. Where this transaction is listed as executed by an NFC affiliate or a market maker, NFC or its affiliate acted in the capacity of specialist or market maker and filled the order at the inside market without mark-up or down. If average price transaction is indicated on the front of this confirmation statement, your IB or NFC may have acted as principal, agent or both on one or more exchanges. Details available through your IB.

12. NFC or IB receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. Such remuneration is considered compensation for NFC, and the source and amount of any compensation received by NFC in connection with your transaction will be disclosed upon request. Please contact your IB for a break down of any fees listed on this confirmation.

13. If this transaction is not entirely in accordance with Customer's understanding and directions, Customer must report any error or discrepancy within ten (10) days of receipt of this trade acknowledgement (confirmation) by forwarding a copy of this trade acknowledgement to the Compliance Officer at Customer's IB with the error noted. Otherwise, the transaction as stated on this trade acknowledgement shall be forever deemed to be correct and accepted by Customer.

14. Where your IB acted as agent or principal, NFC acted as clearing agent only.

# PENNALUNA & COMPANY

421 Sherman Avenue – Suite 203 • Coeur d'Alene, Idaho 83814
(800) 535-5329 (208) 667-7472

## TRANSACTION CONFIRMATION

# SELL

| Brokerage Account Registration | Brokerage Account Information |
|---|---|
| 6DA 04287329 000423 00000408 001/001 00000204<br>DENI LEONARD<br>100 BUSH ST #600<br>SAN FRANCISCO CA 94104 | Account #: [redacted]5606 Office: 6DA Rep: 1657<br>MARK DILLON REDACTED |

## BROKERAGE ACCOUNT TRANSACTION DETAIL

You sold 15600 shares of INDIGENOUS GLOBAL DEVELOPMENT CORPORATION BB at a trade reported price of $ .076 per share.

| TRADE AMOUNT | COMMISSION | ST. TAX/INTEREST | FEE | MISC. FEE | PST\HDL | NET AMOUNT |
|---|---|---|---|---|---|---|
| 1,185.60 | | | .05 | | | 1,185.55 |

| Trade Date: | Settle Date: | Transaction #: |
|---|---|---|
| 08/31/2005 | 09/06/2005 | 00040154 |

Additional Comments:

Sufficient shares to cover this sale must be in your brokerage account by settlement date.
This sale will be settled in accordance with your account instructions.

This sell:
* The MARKET in which the transaction was executed: Over The Counter/Multiple Markets
* The CAPACITY in which customer's IB or NFC is acting: As principal and/or making a market in this security, may have received a profit on this transaction.
  a. An officer of the IB or NFC may be affiliated with the issuer of the security shown herein.
  b. Commissions may be allocated among various corporate and or individual affiliates of the IB or NFC, including registered broker/dealer and registered investment advisor.
* Was unsolicited.

This security:
* Has an assigned industry standard identification number of 45567W109
* Has a standard trading symbol of IGDC

Additional Information:
* We make a market in this security
Please remit payment to: NF Clearing, Inc., One Commerce Square, 2005 Market Street, Philadelphia, PA 19103

Special Instructions:



Cnf # ECSTMT

**IT IS AGREED BETWEEN THE CUSTOMER ("CUSTOMER"), HIS/HER/ITS INTRODUCING BROKER ("IB") AND THE IB'S CLEARING FIRM ("NF CLEARING, INC." OR "NFC"):**

1. All transactions are subject to the rules, regulations, customs and usages of the exchange or market (and the clearing agency, if any) where executed and to any association whose rules and regulations govern transactions in that market and your account agreements with the IB and/or NFC. We will furnish, upon written request, the date and time when this transaction took place and the name of the other party to this transaction.

2. Any transaction executed in the over-the-counter market is subject to the Uniform Practice Code of the National Association of Securities Dealers, Inc. The name of the other broker or party and the time of execution will be furnished upon request.

3. Securities purchased on a cash or margin basis are or may be hypothecated under circumstances which will permit the commingling thereof with securities carried for other customers, but such securities, if hypothecated, will be withdrawn from hypothecation as soon as practicable after receipt of payment therefore.

4. If this transaction is a purchase by you in a cash account and sufficient funds are not already in your account with us, it is agreed that you will make full payment for the securities described on the face hereof promptly and not later than settlement date in accordance with the terms of this transaction and that you do not contemplate the sale of such securities prior to making such payment. If this transaction is a sale by you in a cash account and the securities described on the face herof are not already held in your account with us, we are acting upon your representation that you or your principals own such securities, and it is agreed that you will promptly and not later than the settlement date deposit such securities with us. If full payment for the securities purchased by you in the transaction is not received or if the securities sold by you are not delivered in proper form on or after the first trading day after settlement date, we may at our option cancel or otherwise liquidate this transaction without notice to you, and you will be liable for any resulting loss, including without limitation, all expenses, attorney's fees and other costs and interest incurred thereon.

5. If this transaction is a purchase by you in a margin account it is agreed that sufficient cash or acceptable collateral will be deposited on or before settlement date to satisfy applicable margin requirements.

6. Provision of agreements and contracts shall inure to the benefit of your IB, NFC, or to any successor to your IB or NFC.

7. The execution price for this security may reflect an odd-lot differential if the number of shares transacted is less than a round lot or if all of the shares transacted cannot be executed in round lot increments.

8. Call features may exist for bonds, which could affect yield. Complete information will be provided upon written request.

9. If this transaction involves an asset-backed security that represents an interest in, or is secured by a pool of receivables or other financial assets that are subject continuously to prepayment, then the actual yield of such security may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning the factors that affect yield (including at a minimum estimated yield, weighted average life, and the prepayment assumptions of underlying yield) will be furnished upon your written request.

10. Zero coupon, Compound Interest and Multiplier Securities are callable below maturity value without notice by mail to holder unless registered.

11. If so noted on the front of the confirmation statement, our affiliate makes a market in this security, i.e., buying or selling for its own account on a continuous basis, and acted as principal in buying from or selling to you. NFC affiliate acting as market maker may discontinue the maintenance of such market at any time without notice. Your IB (if any) acted as your agent, charging you a commission for its service. Where this transaction is listed as executed by an NFC affiliate or a market maker, NFC or its affiliate acted in the capacity of specialist or market maker and filled the order at the inside market without mark-up or down. If average price transaction is indicated on the front of this confirmation statement, your IB or NFC may have acted as principal, agent or both on one or more exchanges. Details available through your IB.

12. NFC or IB receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. Such remuneration is considered compensation for NFC, and the source and amount of any compensation received by NFC in connection with your transaction will be disclosed upon request. Please contact your IB for a break down of any fees listed on this confirmation.

13. If this transaction is not entirely in accordance with Customer's understanding and directions, Customer must report any error or discrepancy within ten (10) days of receipt of this trade acknowledgement (confirmation) by forwarding a copy of this trade acknowledgement to the Compliance Officer at Customer's IB with the error noted. Otherwise, the transaction as stated on this trade acknowledgement shall be forever deemed to be correct and accepted by Customer.

14. Where your IB acted as agent or principal, NFC acted as clearing agent only.

PENNALUNA & COMPANY
421 Sherman Avenue — Suite 203 • Coeur d'Alene, Idaho 83814
(800) 535-5329 (208) 667-7472

# TRANSACTION CONFIRMATION

# SELL

**Brokerage Account Registration**

6DA 04277764 000406 00000399 001/001 00000239
DENI LEONARD
100 BUSH ST #600
SAN FRANCISCO CA 94104

**Brokerage Account Information**

Account #: [redacted]5606 Office: 6DA
Rep: 1657
MARK DILLON

## BROKERAGE ACCOUNT TRANSACTION DETAIL

You sold 24000 shares of INDIGENOUS GLOBAL DEVELOPMENT CORPORATION BB at a trade reported price of $ .07 per share.

| TRADE AMOUNT | COMMISSION | ST. TAX/INTEREST | FEE | MISC. FEE | PST\HDL | NET AMOUNT |
|---|---|---|---|---|---|---|
| 1,680.00 | | | .08 | | | 1,679.92 |

| Trade Date | 09/14/2005 | Settle Date | 09/19/2005 | Transaction # | 00043109 |
|---|---|---|---|---|---|

Additional Comments: RPT PX 0.07 MRK UP/DN 0 NON-RE

Sufficient shares to cover this sale must be in your brokerage account by settlement date.
This sale will be settled in accordance with your account instructions.

This sell:
* The MARKET in which the transaction was executed:
  Over The Counter/Multiple Markets
* The CAPACITY in which customer's IB or NFC is acting:
  As principal and/or making a market in this security, may have received a profit on this transaction.
  a. An officer of the IB or NFC may be affiliated with the issuer of the security shown herein.
  b. Commissions may be allocated among various corporate and or individual affiliates of the IB or NFC, including registered broker/dealer and registered investment advisor.
* Was unsolicited.

This security:
* Has an assigned industry standard identification number of 45567W109
* Has a standard trading symbol of IGDC

Additional Information:
* We make a market in this security.

Please remit payment to: NF Clearing, Inc., One Commerce Square, 2005 Market Street, Philadelphia, PA 19103

Special Instructions:



CM # ECSTMT

**IT IS AGREED BETWEEN THE CUSTOMER ("CUSTOMER"), HIS/HER/ITS INTRODUCING BROKER ("IB") AND THE IB'S CLEARING FIRM ("NF CLEARING, INC." OR "NFC"):**

1. All transactions are subject to the rules, regulations, customs and usages of the exchange or market (and the clearing agency, if any) where executed and to any association whose rules and regulations govern transactions in that market and your account agreements with the IB and/or NFC. We will furnish, upon written request, the date and time when this transaction took place and the name of the other party to this transaction.

2. Any transaction executed in the over-the-counter market is subject to the Uniform Practice Code of the National Association of Securities Dealers, Inc. The name of the other broker or party and the time of execution will be furnished upon request.

3. Securities purchased on a cash or margin basis are or may be hypothecated under circumstances which will permit the commingling thereof with securities carried for other customers, but such securities, if hypothecated, will be withdrawn from hypothecation as soon as practicable after receipt of payment therefore.

4. If this transaction is a purchase by you in a cash account and sufficient funds are not already in your account with us, it is agreed that you will make full payment for the securities described on the face hereof promptly and not later than settlement date in accordance with the terms of this transaction and that you do not contemplate the sale of such securities prior to making such payment. If this transaction is a sale by you in a cash account and the securities described on the face herof are not already held in your account with us, we are acting upon your representation that you or your principals own such securities, and it is agreed that you will promptly and not later than the settlement date deposit such securities with us. If full payment for the securities purchased by you in the transaction is not received or if the securities sold by you are not delivered in proper form on or after the first trading day after settlement date, we may at our option cancel or otherwise liquidate this transaction without notice to you, and you will be liable for any resulting loss, including without limitation, all expenses, attorney's fees and other costs and interest incurred thereon.

5. If this transaction is a purchase by you in a margin account it is agreed that sufficient cash or acceptable collateral will be deposited on or before settlement date to satisfy applicable margin requirements.

6. Provision of agreements and contracts shall inure to the benefit of your IB, NFC, or to any successor to your IB or NFC.

7. The execution price for this security may reflect an odd-lot differential if the number of shares transacted is less than a round lot or if all of the shares transacted cannot be executed in round lot increments.

8. Call features may exist for bonds, which could affect yield. Complete information will be provided upon written request.

9. If this transaction involves an asset-backed security that represents an interest in, or is secured by a pool of receivables or other financial assets that are subject continuously to prepayment, then the actual yield of such security may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning the factors that affect yield (including at a minimum estimated yield, weighted average life, and the prepayment assumptions of underlying yield) will be furnished upon your written request.

10. Zero coupon, Compound Interest and Multiplier Securities are callable below maturity value without notice by mail to holder unless registered.

11. If so noted on the front of the confirmation statement, our affiliate makes a market in this security, i.e., buying or selling for its own account on a continuous basis, and acted as principal in buying from or selling to you. NFC affiliate acting as market maker may discontinue the maintenance of such market at any time without notice. Your IB (if any) acted as your agent, charging you a commission for its service. Where this transaction is listed as executed by an NFC affiliate or a market maker, NFC or its affiliate acted in the capacity of specialist or market maker and filled the order at the inside market without mark-up or down. If average price transaction is indicated on the front of this confirmation statement, your IB or NFC may have acted as principal, agent or both on one or more exchanges. Details available through your IB.

12. NFC or IB receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. Such remuneration is considered compensation for NFC, and the source and amount of any compensation received by NFC in connection with your transaction will be disclosed upon request. Please contact your IB for a break down of any fees listed on this confirmation.

13. If this transaction is not entirely in accordance with Customer's understanding and directions, Customer must report any error or discrepancy within ten (10) days of receipt of this trade acknowledgement (confirmation) by forwarding a copy of this trade acknowledgement to the Compliance Officer at Customer's IB with the error noted. Otherwise, the transaction as stated on this trade acknowledgement shall be forever deemed to be correct and accepted by Customer.

14. Where your IB acted as agent or principal, NFC acted as clearing agent only.